**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| VITALIJ VANUSANIK, | : |
| Plaintiff, | : |
| v. | : Case No. _____ |
| PRICEWATERHOUSE COOPERS LLP AND EXPRESS SCRIPTS, INC., | : **COMPLAINT** |
| Defendants. | : |

Plaintiff Vitalij Vanusanik ("Mr. Vanusanik") hereby files this Complaint against Defendants PricewaterhouseCoopers LLP ("PWC" or the "Plan Sponsor") and Express Scripts, Inc. ("ESI"), seeking relief, and in support thereof avers as follows:

**INTRODUCTION**

1.      This action involves the Plan Sponsor and its agent, ESI, and their denial of health benefits owed to Mr. Vanusanik, as a Plan participant ("member" or "participant") in breach of the policy documents (the "Policy") controlling the PricewaterhouseCoopers Staff Medical Plan (the "Health Plan"). The Policy summary plan description is attached hereto as **Exhibit A**.

2.      Mr. Vanusanik suffers from severe Hemophilia A disease, which is a life-long chronic bleeding disorder. Individuals suffering from hemophilia lack a blood-clotting factor that is naturally present in the blood to stop bleeding. The lack of such factor in hemophiliacs causes "bleeds." "Bleeds," especially internal bleeds, can be life-threatening and lead to permanent damage to joint, muscles and organs, to the extent that they are not properly

controlled. Thus, it is absolutely crucial that hemophiliacs who experience spontaneous bleeds—like Mr. Vanusanik—are able to access a pharmacist who specializes in hemophilia and obtain the guidance on hemophilia complications, side effects and medication they need to prevent and/or stop these bleeds in an efficient and timely fashion.

3.      The Policy at issue requires "a variety of different services to help you and your covered family members receive appropriate medical care." *See* **Exhibit A** at p. 23. Despite this requirement, the Plan Sponsor and ESI have directed Mr. Vanusanik to obtain his hemophilia medication, also known as factor medication, through the ESI-owned pharmacy, Accredo.

4.      By requiring that Mr. Vanusanik rely upon Accredo, the Plan Sponsor and ESI bear responsibility to ensure that Plan participants, such as Mr. Vanusanik, receive adequate care through its designated provider. However, both the Plan Sponsor and its agent, ESI, have repeatedly failed to comply with the Policy requirements. Accredo, has repeatedly failed to provide Mr. Vanusanik timely deliveries of hemophilia medication and the correct dosage of such medication. It also has repeatedly failed to provide any assistance to him regarding complications he has experienced with his medication, thus breaching Mr. Vanusanik's rights under the Policy to "receive appropriate medical care."

5.      Having repeatedly denied Mr. Vanusanik "appropriate medical care," as required by the Policy, Mr. Vanusanik was required to seek appropriate care and medication from another pharmacy, which is an in-network pharmacy provider with ESI.

6.      According to PWC's agent, ESI, Mr. Vanusanik's Policy allows a Plan participant to obtain medications from a pharmacy other than Accredo so long as that

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

pharmacy is willing to provide medications at a "cost lower than through the ESI pharmacy [i.e. Accredo]." *See* ESI Benefits Determination, March 24, 2020, attached hereto as **Exhibit B**.

7.      Nevertheless, in violation of his rights under the Policy, the Plan Sponsor and ESI have required that Mr. Vanusanik obtain his hemophilia medication from Accredo. Neither the Plan Sponsor nor ESI have provided an explanation for refusing to allow an override permitting Mr. Vanusanik to use his pharmacy of choice despite that pharmacy's agreement to fill his medication at a "cost lower than through the ESI Pharmacy" and numerous inquiries seeking such an explanation. *See* examples of communications to both the Plan Sponsor and ESI requesting an explanation as to why ESI has stated that so long as a pharmacy is willing to provide medication at a "cost lower than through the ESI Pharmacy" that pharmacy can fill the medication, copies of which are attached hereto as **Exhibit C**.

8.      In addition to repeatedly breaching the terms of the Plan documents, Accredo has also revealed Mr. Vanusanik's protected health information without his permission in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). As detailed below, Mr. Vanusanik has experienced numerous, traumatic issues with the Plan Sponsor, ESI and the ESI-owned pharmacy, Accredo, being unable to timely, accurately and completely fill his prescriptions.

9.      In short, the Plan Sponsor and its agent, ESI, have failed to provide Mr. Vanusanik the benefits to which he is entitled under the Health Plan in violation of the Employee Retirement Income Security Act ("ERISA"), violated HIPAA and, by its actions, repeatedly put his life at risk.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

## PARTIES

10.     Mr. Vanusanik is a resident of Florida residing in Tampa, Florida.

11.      Mr. Vanusanik is a participant in the PricewaterhouseCoopers Staff Medical Plan, which is administered by non-party UnitedHealthcare, Inc.

12.     PricewaterhouseCoopers LLP is a professional partnership whose registered address is in New York, New York.

13.     The Plan Sponsor uses the pharmacy benefit manager ("PBM"), ESI, to administer pharmacy benefits to its member-insureds under the Health Plan. Upon information and belief, ESI is a Delaware corporation and a subsidiary of Express Scripts Holding Company. At all relevant times ESI was acting as PWC's agent. "For purposes of claims administration of the prescription drug Benefits, the Plan [Sponsor] has assigned fiduciary responsibility for claim determinations to Express Scripts." *See* **Exhibit A** at 147.

14.     Non-party Accredo Health Group, Inc. ("Accredo") is a specialty and mail order pharmacy that is wholly-owned by Express Scripts Holding Company with headquarters in Memphis, Tennessee.

## JURISDICTION AND VENUE

15.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution, laws, or treaties of the United States.

16.     The Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(f), which grants the District Courts of the United States jurisdiction to grant the relief provided for in § 1132(a) regarding a beneficiary's action "to recover benefits due to him under the

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

17.     Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) as this action may be brought "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]" Mr. Vanusanik resides in the Middle District of Florida, and the Health Plan was administered within the Middle District of Florida.

## FACTUAL BACKGROUND

## I.     PHARMACY BENEFIT MANAGERS' ROLES WITH HEALTH INSURERS

18.     Pharmacy benefit managers ("PBMs"), including Defendant ESI, are engaged by health insurers and self-funded employers, such as Defendant PWC, as their agents, to administer and manage prescription drug plans.

19.     Contracts between plan sponsors and PBMs afford the PBMs, as agents of the plan sponsor, substantial discretion to make decisions affecting the way in which the health plan will be administered. For example, PBMs control administrative aspects of the prescription drug plan portion of the health plan including, but not limited to, pharmacy network design, network-pharmacy claims processing, benefit-design consultation, drug utilization review, formulary management, medication and drug data analysis services and setting reimbursement rates that pharmacies receive for providing medications, comprehensive patient case support services to plan beneficiaries and, importantly, drug benefit coverage determinations.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

20.     The PBM market is highly concentrated with three PBMs (CVS Caremark, ESI and OptumRx) controlling 85% of the market share for PBM services.  *See* "The White House Council of Economic Advisors, White Paper, Reforming Biopharmaceutical Pricing at Home and Abroad" (February 2018). The White House Council of Economic Advisors determined that the "big three" PBMs' control of the PBM market "allows them to exercise undue market power against manufacturers and against health plans and beneficiaries they are supposed to be representing, thus generating outsized profits for themselves." *Id*.

21.     The largest PBMs own their own specialty and mail order pharmacies. As such, it is not uncommon for PBMs to enter into agreements with plan sponsors requiring that their beneficiaries be required under certain circumstances to use their own affiliated mail-order pharmacies instead of retail brick and mortar pharmacies, and financially penalize plan beneficiaries if they do not obtain their medications from the PBM's affiliated pharmacy.

22.     Accredo is a specialty and mail order pharmacy that is wholly owned by Express Scripts Holding Company. ESI benefits financially from every prescription dispensed by Accredo.

23.     At all relevant times, PWC engaged ESI as its agent to administer its prescription drug plan as part of the Health Plan.

24.     Upon information and belief, the agreement between PWC and ESI at issue here provides that there are certain circumstances in which a plan beneficiary cannot be forced to rely upon Accredo to obtain his/her medications. Accordingly, the Plan Sponsor

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

and ESI previously permitted Mr. Vanusanik to obtain his hemophilia medication from another pharmacy for over a year while he was a Plan participant.

## II.   MR. VANUSANIK'S TRAUMATIC HISTORY WITH PWC, ESI AND ACCREDO

25.     On or around July 1, 2018, Mr. Vanusanik became a participant of the Health Plan.

26.     Upon enrolling in the Health Plan, Mr. Vanusanik was required by the Plan Sponsor to change his pharmacy and utilize Accredo to obtain his hemophilia medication. The Policy provides that specialty medications (medications "that are used to treat complex conditions") (*See* **Exhibit A** at 168), such as hemophilia, must be obtained by Plan participants from ESI-owned pharmacy, Accredo.  By attempting to force participants to rely upon Accredo for specialty medications PWC and ESI bear responsibility to ensure adequate care is provided by Accredo to participants.

27.     However, despite this Policy requirement, ESI on behalf of PWC has repeatedly told Mr. Vanusanik that he can utilize in-network pharmacies of his choice when those pharmacies provide medications at a "cost lower than through the ESI pharmacy."

28.     Immediately after being required to transfer his hemophilia medication to Accredo, Mr. Vanusanik experienced significant and life-threatening problems with Accredo. He received no personalized assistance as mandated by the Plan. Further, Accredo repeatedly failed to timely and accurately fill and deliver his medication.

29.     Initially, in July 2018, it took almost a week of Mr. Vanusanik speaking daily with Accredo representatives to determine whether Accredo would accept copayment

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

assistance, which Mr. Vanusanik is both entitled to and relies upon. This delayed Accredo's filling of his medication for two (2) to three (3) weeks after he was due for a refill. For an individual who experiences spontaneous bleeds, and therefore cannot miss a dose without risking catastrophic consequences, this delay genuinely put Mr. Vanusanik's life at risk.

30.     During this delay, Mr. Vanusanik repeatedly sought assistance from individuals employed by Accredo who had experience dealing with hemophiliacs and could expedite providing his medication. However, despite being guaranteed "personal health support," (**Exhibit A** at p. 23) Accredo refused to connect him with someone who understood that his hemophilia medication regimen could not be interrupted. Instead, Accredo would only allow him to speak to a general customer service representative from a call center who knew nothing specific about hemophilia despite the Policy's requirement of "personal health support." Accredo, being a specialty pharmacy, should have been, and is certainly aware of the extraordinary care that hemophiliacs require, including the need for timely receipt of initial fills and refills of life-sustaining medication.

31.     In July 2018, while Mr. Vanusanik was waiting for his medication to be filled and delivered by Accredo, he ran out of his hemophilia medication. Mr. Vanusanik made clear to Accredo that its delay in confirming that it would accept copayment assistance would lead to him running out of medication. Yet, it cavalierly allowed him to do so. And, as expected, the failure to have his medication resulted in Mr. Vanusanik suffering a bleed. This bleed led to joint swelling leaving him in immense pain, unable to eat and sleep, to the point that he was required to take opioid pain medication in an attempt to ease his excruciating pain.

8

32.     When Mr. Vanusanik realized that he would be without his medication for entirely too long, he was actually forced to contact the manufacturer of his medication in a desperate attempt to obtain directly from the manufacturer an emergency supply of his medication. Thankfully, the manufacturer agreed to provide an emergency dosage of his medication until PWC and ESI dispensed the medication.

33.     Upon information and belief, because of the significant and often life-threatening health risks of hemophiliacs going without medication to control bleeds, many drug manufacturers will supply small, emergency doses to individuals registered with their copayment assistance programs in the instance of insurance coverage gaps.

34.     The following month, in August 2018, Mr. Vanusanik contacted Accredo to obtain the refill of his medication. At the time he requested his refill, Mr. Vanusanik was again told that there would be a delay in delivering his medication. Mr. Vanusanik was simply told by a general customer service representative of Accredo that his medication was out of stock and would be out of stock for two (2) weeks! Again, Accredo (as well as PWC and ESI) clearly knew that a failure to timely refill his medication put Mr. Vanusanik's life at risk. Yet, it offered no assistance for him to timely receive his refills.

35.     Approximately two (2) weeks after his hemophilia medication refill was due, Mr. Vanusanik finally received his refill. However, he simultaneously, received a totally inaccurate invoice from Accredo for almost ***$100,000*** for the medication that unquestionably was covered by his Plan. Mr. Vanusanik is an individual with limited financial means, and this invoice understandably caused him to suffer severe emotional distress. It took weeks of phone calls with Accredo representatives, which included requiring that he establish that all

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

of his deductibles and out-of-pocket costs had been satisfied, for Mr. Vanusanik to convince

Accredo of its obvious error and cancel the erroneous bill.

36.     Despite all of this effort and the hours of time spent addressing this issue, the

very next month, in September 2018, Accredo again inaccurately invoiced him for almost

$100,000 in connection with a refill of his medication. Again, it took a week of daily phone

calls with Accredo representatives for Mr. Vanusanik to convince Accredo to properly

withdraw the erroneous bill that caused significant distress to Mr. Vanusanik.

37.     Because of Accredo's repeated and consistent failure to provide any support

to Mr. Vanusanik, failure to timely provide his life-sustaining medication and inaccurate

billings falsely representing hundreds of thousands of dollars in money owed by Mr.

Vanusanik, in September 2018 Mr. Vanusanik called Accredo at least a week prior to when

his medication was again due for a refill to ensure that his medication would arrive before he

ran out of his current month's supply. During that call, he was assured by an Accredo

representative that his medication would be received the next day. However, Mr. Vanusanik

did not receive his medication for over a week without any explanation whatsoever from

Accredo for the delay.  Once again, PWC and ESI failed to abide by the requirements under

the Policy to provide adequate care for Plan participants.

38.     In October 2018, again anticipating delays in receiving refills of his

medication, Mr. Vanusanik contacted Accredo weeks ahead of when he was due for a refill.

While Accredo refilled his medication within ten (10) days, this time Accredo sent the wrong

dosage. Mr. Vanusanik's prescription called for two vials of 3,000 assay units of Novoeight

to be infused and injected every other day, for a total dose of 6,000 assay units.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

39.     Instead, Accredo sent Mr. Vanusanik 4,500 assay units per dose, approximately 1,500 assay units short of his prescribed dosage.  Had Mr. Vanusanik been less diligent in his self-care, such an error could have been catastrophic to Mr. Vanusanik's health. For example, not having sufficient medication would ultimately have led to a bleed, followed by likely hospitalization and days of incapacitation.

40.     During this time period, Mr. Vanusanik requested emergency doses of his medication because he was suffering bleeds. On these occasions, it would take Accredo too long to process and send the emergency doses of his medication. As a result, and as anticipated with the wrong dosage of medication, Mr. Vanusanik was forced to go to a local hospital on multiple occasions.

41.     From August 2018 to September 2018, Accredo also informed Mr. Vanusanik that his medication was not in stock and that Accredo needed to order the medication from its supplier before it could be shipped to Mr. Vanusanik. Mr. Vanusanik's refills were repeatedly delayed. These delays, from a specialty pharmacy assigned exclusively to Plan participants, is unacceptable and obviously represents a substandard level of care guaranteed by the Policy.

42.     Between July and October 2018, when Mr. Vanusanik received medication from Accredo, no representative of Accredo ever called or otherwise contacted him to see how he was doing. It is common-place for pharmacies servicing hemophiliacs to keep in regular contact with these patients as they need continual monitoring and consistent treatment regimens. Such contact ensures that, among other things, the patient's supply of medication

11

is sufficient, the dispensed medication appears to be effective, and the patient has no adverse reaction to the medication.

43.     Mr. Vanusanik experienced this level of service from every pharmacy he has ever utilized to obtain his hemophilia medication with the exception of Accredo. The Policy explicitly provides for such support by way of a Personal Health Support Nurse for participants "living with a chronic condition or dealing with complex health care needs." **Exhibit A** at 23. The Personal Health Support Nurse is required to "provide a variety of different services to help you and your covered family member receive appropriate medical care."  However, at no point in time did the Plan Sponsor and ESI provide Mr. Vanusanik with any of the promised "appropriate medical care."

## III.     THE HEALTH PLAN ALLOWS MR. VANUSANIK TO USE AN IN-NETWORK PHARMACY OTHER THAN ACCREDO

44.     Recognizing its inability to properly care for Mr. Vanusanik, from November 2018 through February 2020, ESI agreed to allow Mr. Vanusanik to fill his prescriptions from an in-network pharmacy other than Accredo.

45.     In November 2018, Mr. Vanusanik transferred his hemophilia prescription to Factor One Source Pharmacy d/b/a InfuCareRx ("InfuCare").

46.     InfuCare is an in-network retail and specialty pharmacy with ESI.  InfuCare is a pharmacy accredited by the two largest independent pharmacy accreditation bodies – URAC (previously known as Utilization Review Accreditation Commission) and Accreditation Commission for Health Care. Such accreditations are only awarded to the most reliable and prestigious pharmacies which "demonstrate the highest value in delivering enhanced clinical services." *See*, URAC, Long-Lasting Benefits, available at urac.org.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

47.     InfuCare also specializes in home infusion of blood clotting factor and intravenous immunoglobulin medications for its patients suffering from hemophilia and other bleeding disorders. InfuCare is a Florida-licensed pharmacy.

48.     Most importantly, InfuCare provides Mr. Vanusanik with a team of dedicated professionals to assist him in his hemophilia treatment. These professionals include pharmacists, nurses, and social workers with whom Mr. Vanusanik has long-standing relationships. InfuCare's team of professionals guides its patients through each step of their treatment processes and has dedicated case coordinators and nurses so the patients always have a dedicated individual they can call with any and all questions and issues. Because InfuCare is a pharmacy dedicated to hemophilia treatment, its procurement and handling of hemophilia medications is far superior to other pharmacies that do not specially focus on hemophilia treatment. Accordingly, InfuCare has always provided Mr. Vanusanik with his medication in a timely manner and offers staff support to Mr. Vanusanik twenty-four (24) hours a day, seven (7) days per week.

49.     Accredo does not provide any of the services provided by InfuCare and they were never offered to Mr. Vanusanik. The absence of these services is a breach of the Policy's requirement to provide all participants with access to "appropriate medical care."

50.     In light of Accredo's inability to timely provide life-sustaining medication to Mr. Vanusanik, providing him the wrong dosages of such medications, mailing him erroneous bills and providing absolutely no clinical support, in February 2019 Mr. Vanusanik appealed to PWC's agent, ESI, for the ability to continue obtaining his medication from InfuCare. Recognizing Accredo's inability to properly service Mr. Vanusanik, the Plan

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

Sponsor and ESI allowed Mr. Vanusanik to obtain his medication from InfuCare for a period

of one year, between February 2019 and February 2020, in order to access the Health Plan

benefits to which he is entitled.

51.     Mr. Vanusanik was not made aware of any changes to the pharmacy benefit

plan design portion of the Health Plan throughout his participation in the Health Plan. Hence,

there is no factual or legal reason why he cannot continue to receive his hemophilia

medication from InfuCare.

**IV.    THE HEALTH PLAN AGAIN REQUIRES MR. VANUSANIK TO OBTAIN
         MEDICATION FROM ACCREDO, WHICH VIOLATES THE POLICY AND
         MR. VANUSANIK'S PRIVACY RIGHTS**

52.     In March 2020, when InfuCare attempted to refill Mr. Vanusanik's monthly

medication, it encountered a denial by ESI of its ability to refill Mr. Vanusanik's medication.

Mr. Vanusanik and InfuCare contacted ESI, requesting that InfuCare be permitted to

continue to fill his medication. By the time these requests were denied, Mr. Vanusanik was

again out of his medication.

53.     On or around March 17, 2020, Mr. Vanusanik, through his physician

Christopher Walsh, M.D., submitted a formal appeal of ESI's denial.

54.     On March 24, 2020, Mr. Vanusanik received a denial of his appeal on the sole

basis that his "plan's benefit only allows retail refills beyond the limit in situations where a

member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI

Pharmacy." *See* **Exhibit B**.

55.     At that time, InfuCare was ready, willing, and able to fill Mr. Vanusanik's

medication "for a lower cost than through the ESI Pharmacy."

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

56.     During this March 2020 period, while Mr. Vanusanik was appealing to ESI seeking a permanent override to obtain his medication from his preferred pharmacy, InfuCare, Mr. Vanusanik was required by the Plan Sponsor and ESI again to obtain his medication through Accredo.

57.     Upon learning of the denials to fill his medication with InfuCare, Mr. Vanusanik called Accredo to place a prescription order. Accredo stated that the ***earliest*** it would be able to deliver his medication ***would be seven (7) days later***— again, leaving Mr. Vanusanik without his medication and at risk of a bleed. When Mr. Vanusanik asked if Accredo was aware that its actions could result in him having a bleed, the only response Mr. Vanusanik received from a general customer service representative was that until the medication was in stock, there was nothing Accredo could do for him. After Mr. Vanusanik pled with ESI to allow InfuCare to provide him a refill of his out of stock medication, ESI allowed another override for Mr. Vanusanik to obtain his monthly medication from InfuCare in March 2020 while his appeal was pending.

58.     In April 2020, Mr. Vanusanik's hematologist's office called and asked him if he authorized the doctor to send his prescription to Accredo because Accredo called the doctor's office and requested it. Mr. Vanusanik never provided Accredo permission to contact his doctor.  On April 14, 2020, Mr. Vanusanik called Accredo which admitted it did not have express permission to contact Mr. Vanusanik's doctor.

59.     Specifically, during this conversation, Accredo asked Mr. Vanusanik if there was any other individual with whom Accredo could discuss his health information. Mr. Vanusanik said there was not, that he was the only one with whom Accredo could speak

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

about his health information, and that his phone number was the only number that they should have in his file.

60.     On this call, despite its admission that it called Mr. Vanusanik's doctor without Mr. Vanusanik's express permission, Accredo insisted on taking the order for Mr. Vanusanik's April medication refill. Reluctantly, Mr. Vanusanik authorized the prescription order, but during the order process, Accredo informed Mr. Vanusanik that the medication, again, would be delayed and not arrive for at least seven (7) to ten (10) days as Accredo, again, did not have his medication in stock.  Because of an immediate need to have medication in his possession in case of a bleed, he was once again permitted an override and InfuCare filled the medication.

61.     Despite the override permitted for April 2020, again in attempts to avoid having to go through the ordeal of placing an order with Accredo only to learn that Accredo lacks the ability to properly service him, on April 15, 2020, Mr. Vanusanik submitted another appeal to ESI explicitly stating that he was seeking to have his preferred pharmacy, InfuCare, refill the medication and do so at a lower cost than the ESI-owned pharmacy, Accredo.

62.     On April 16, 2020, ESI, again, denied Mr. Vanusanik's appeal stating his "plan's benefit only allows retail refills beyond the limit in situations where a member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI Pharmacy." A copy of the appeal denial is attached hereto as **<u>Exhibit D</u>**. ESI's response to both appeals is unquestionably wrong. InfuCare and Mr. Vanusanik have advised ESI that InfuCare is ready, willing and able to fill Mr. Vanusanik's medication for a cost less than ESI's pharmacy, Accredo.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

63.     Despite ESI's repeated statement that Mr. Vanusanik's "plan's benefit only allows retail refills beyond the limit in situations where a member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI Pharmacy," and despite at least a dozen requests to both the Plan Sponsor and ESI, Mr. Vanusanik has yet to be provided an explanation as to why he must use Accredo when InfuCare is ready, willing and able to fill his medication for a "lower cost than through the ESI Pharmacy."

64.     On May 6, 2020, Mr. Vanusanik submitted an **URGENT** appeal for external review, again reemphasizing InfuCare's willingness to timely and accurately dispense Mr. Vanusanik's medication and at a cost less than the amount charged by ESI's pharmacy, Accredo. That appeal was also denied.

65.     Additionally, in May 2020, Mr. Vanusanik learned that Accredo violated Mr. Vanusanik's rights under HIPAA and the Policy's guarantee of confidentiality of protected health information.

66.     Specifically, despite the explicit conversation in April 2020 in which Mr. Vanusanik stated that Accredo was not at liberty to discuss his personal health information with any person other than Mr. Vanusanik, an Accredo representative called Mr. Vanusanik's wife's cell phone number without verifying it was the correct number for *Mr.* Vanusanik. Indeed, the only authorized phone number Mr. Vanusanik provided to Accredo was his personal cell phone. The representative left a voicemail message with Mr. Vanusanik's diagnosis and other personal health information on his wife's phone, which number was on file with the Health Plan as the primary beneficiary of the Policy. However, his wife's phone, at the time of this call, was not in Mr. Vanusanik's wife's possession but was held by her

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

acquaintance, who heard the information left on the voicemail, and to whom Mr. Vanusanik had not, and would not, reveal any of his personal health information. Mr. Vanusanik never authorized Accredo to call any phone number, let alone to leave personal, protected health information on a phone other than his own.

67.     Mr. Vanusanik now has no choice but to disclose the above and his underlying health condition in this Complaint in order to protect his health.

68.     In June 2020, Mr. Vanusanik attempted to seek another override to obtain his medication from InfuCare. At this point, Mr. Vanusanik was told he would not be afforded any further overrides. However, rather than being told that Accredo did not have his medication in stock, Accredo shipped a smaller dosage of his prescription, only affording him enough medication for approximately one week. Ordinarily, one dosage of Mr. Vanusanik's medication is contained in two vials.  This partial shipment consisted of five (5) vials per dose. Not only was this shipment incomplete, but the increased number of vials required that Mr. Vanusanik increase his frequency of self-injections, causing additional pain and discomfort.

69.     The more vials that are dispensed, the more injections that are required, again causing potential health risks to the patient. In the case of Mr. Vanusanik, his veins, from injecting medication so often, are fragile. The more medication he is required to inject, the more risk is posed to Mr. Vanusanik in the form of clogged or ruptured veins.

70.     When Mr. Vanusanik called Accredo to seek the additional medication required by his prescription, he was told that the complete prescription could not be filled at that time and was actually asked if he would be willing to switch his medication – an

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

inappropriate request to which Mr. Vanusanik would not be qualified to decide absent physician consultation.

71.     Mr. Vanusanik understandably declined to engage in a discussion with a general customer service representative about switching his life-sustaining medication. He then asked for an override to allow InfuCare, again, to properly and completely dispense his medication.  He was explicitly told he would not receive any additional overrides. When he asked Accredo if he did not have sufficient medication what he should do in case of a bleed, Accredo callously told him, "go to the emergency room."

72.     In fact, Mr. Vanusanik did experience a major bleed in June 2020 due to the shortage of medication provided by Accredo.  This bleed led to severe swelling in his knee joints leaving Mr. Vanusanik incapacitated, unable to walk for seven (7) days, and unable to properly work, eat, or sleep. And, again, he experienced such unbearable pain necessitating opioid pain killers until he obtained his next shipment of factor medication.

73.     Unfortunately, the actions of Accredo and the failure to timely deliver medication and to provide the correct dose, are not inconsequential. Accredo's inexplicable misconduct in filling Mr. Vanusanik's medication could literally threaten Mr. Vanusanik's life.

74.     Had the Plan Sponsor and its agent, ESI, complied with the Policy and provided Mr. Vanusanik his benefit of access to a dedicated Personal Health Support Nurse, these occurrences would have been avoided.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

75.     Despite the fact that InfuCare has confirmed to ESI, on numerous occasions, that it is willing to charge less than the amount charged by "the ESI Pharmacy [Accredo]," ESI has continued to deny Mr. Vanusanik's appeals and allow InfuCare to fill his medication.

## V.     THE HEALTH PLAN POLICY GUARANTEES SPECIFIC BENEFITS

### A.     The Health Plan's Policy Entitles Mr. Vanusanik To "Appropriate Medical Care"

76.      A health plan's policy documents, including the summary plan description and the summary of benefits and coverage, explain to plan beneficiaries what the plan provides and how it operates. These documents also include information regarding the benefits and coverage under the applicable plan. If a plan is changed, participants must be informed, either through a revised summary plan description, or through a summary of material modifications.

77.     The Health Plan's Policy assures existing and prospective participants that, among other things, they are entitled to a "variety of different services to help you and your covered family members receive appropriate medical care." Ex. A at 23.

78.     Specifically, this benefit is guaranteed through a Policy provision entitled "Personal Health Support."  The Personal Health Support program provides participants living with a chronic condition or dealing with complex health care needs, such as hemophilia, a Personal Health Support Nurse to guide the participant through their treatment.

79.     The Policy additionally provides for, as part of this program, risk management services, which according to the Policy, includes access to medical specialists, medication information, and coordination of equipment and supplies. The Policy further provides that

20

participants may receive a phone call from a primary medical contact to discuss important health care information related to the participant's specific chronic or complex condition.

80.     Hemophilia is a condition that requires an extraordinary level of care—more than a pharmacy simply putting pills in a bottle. Among other things, it requires continuous monitoring to ensure the individual does not have spontaneous bleeds, analysis of medication dosages to ensure sufficient clotting factor is being received, and the ability to provide emergency medication in the event of a bleed.

81.      Despite his chronic condition and the availability of support services under the Policy, Mr. Vanusanik was never provided such support. At no point in time, was Mr. Vanusanik contacted by the Plan, ESI or Accredo to determine if extra support services were needed due to his chronic condition. Nor was Mr. Vanusanik offered a dedicated medical contact or Personal Health Support Nurse with whom he could discuss his condition and treatment regimen. Mr. Vanusanik repeatedly requested this support, but it was never provided.

82.     When Mr. Vanusanik contacted Accredo about obtaining his hemophilia medication, which requires a sophisticated understanding of the correct dosage amounts, drug interactions, blood clotting concerns and the amount of injections of medication that can only be administered intravenously, he was always connected to a general customer service representative who had no knowledge of hemophilia medication requirements and risk factors.

83.     Accredo, being a pharmacy that dispenses specialty medications for complex and chronic conditions, undoubtedly recognizes that extraordinary care is required for

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

hemophiliacs, yet it failed to provide such services to Mr. Vanusanik. The Policy goes out of the way to promise its participants "appropriate medical care," but requires participants who are prescribed medication for chronic and complex health conditions to use a pharmacy that is unable to provide appropriate services.

84.     Mr. Vanusanik has been denied the specific benefit of receipt of "appropriate medical care" guaranteed under the Health Plan.

**B.      The Health Plan's Policy Provides Mr. Vanusanik The Right To Obtain His Medication From An In-Network Pharmacy Provider**

85.     In addition to the above guarantee, the Health Plan's Policy assures existing and prospective participants that prescription medication will be covered by the Plan and that such prescriptions will be appropriately and timely filled by pharmacies in the network. The Policy provides for coverage of such prescription medication at in-network pharmacies. It additionally provides for protections against disclosure of protected health information.

86.     Specifically, among other things, the Health Plan's Policy provides the following:

    a.   Allowance for Covered drugs up to a "30-day supply . . . [as] Covered drugs include . . . drugs that require a prescription by law." *Id.* at 174.

    b.   "Prescription drug coverage provides up to a 30-day supply of medication when filled through a participating retail pharmacy." *Id.* at 170.

    c.   "[Insureds] may refill [their] prescription at a retail pharmacy when [they] have used 75% of the medication since [their] last fill (for example, [they] may refill a 30 day supply of medication after 23 days have passed since [their] last fill)." *Id.*

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

    d.   "If [insureds] use long-term medications for a chronic condition . . . [they] ***can*** have [their] prescriptions filled through the Express Scripts Pharmacy home delivery service." *Id.* at 172 (emphasis added) (making clear that there is no requirement to have the prescriptions filled through Accredo under the Plan).

    e.   "The Plans and their business associates have developed reasonable and appropriate safeguards to protect the privacy and security of [insureds'] health information. These individuals are trained on appropriate protections for [insureds'] information. **[The Plan and Plan Sponsor] restrict access to [insureds'] [Personal Health Information ("PHI")] to authorized individuals who need that information for specific permitted purposes. [The Plan and Plan Sponsor] maintain technical, physical and administrative safeguards to ensure the privacy of your PHI.**" *Id.* at 155 (emphasis added).

87.    Contrary to repeated representations in the Policy documents that insureds can count on the Health Plan and pharmacies in the ESI network, the Plan Sponsor and ESI have failed to abide by their obligations under the Policy by attempting to limit Mr. Vanusanik to obtaining his medication only from Accredo.

88.    Accordingly, Mr. Vanusanik has been denied benefits under the Health Plan and seeks to enforce his rights under the terms of the Health Plan.  Mr. Vanusanik also wishes to clarify his rights to future benefits under the terms of the Health Plan.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

**COUNT I**
**29 U.S.C. § 1132(A)(1)(B)**
**DENIAL OF BENEFITS AND ENFORCEMENT AND CLARIFICATION OF**
**RIGHTS UNDER THE HEALTH PLAN**
**(PLAINTIFF V. PWC AND ESI)**

89.     Mr. Vanusanik restates and realleges paragraphs 1-88 as if set forth in full

herein.

90.     In his appeals and letters to the Plan Sponsor, Mr. Vanusanik properly made a

claim for benefits under the terms of the Policy and under ERISA.

91.     Mr. Vanusanik has exhausted all of his internal, administrative appeals

processes due to the Health Plan's persistent failure to provide for and describe such

processes in response to Mr. Vanusanik's claims for benefits.

92.     Mr. Vanusanik has been improperly denied benefits under the Policy to which

he is entitled by the Health Plan through the Plan Sponsor, counter to the explicit terms of the

Policy.

**COUNT II**
**29 U.S.C. § 1104(A)(1)(D) AND 29 U.S.C. § 1109**
**BREACH OF FIDUCIARY DUTY – DUTY TO ACT IN ACCORDANCE WITH**
**PLAN DOCUMENTS**
**(PLAINTIFF V. PWC AND ESI)**

93.     Mr. Vanusanik restates and realleges paragraphs 1-88 as if set forth in full

herein.

94.     Pursuant to 29 U.S.C. § 1104(a)(1)(D), fiduciaries of qualifying employee

benefits plans are required to act "in accordance with the documents and instruments

governing the plan" insofar as the documents are consistent with ERISA.

95.     The Health Plan is a qualifying employee benefits plan.

24

96.     The Plan Sponsor is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A).

97.     ESI is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A).

98.     The Plan Sponsor and ESI are subject to the requirements of 29 U.S.C.
§ 1104(a)(1)(D).

99.     The Plan Sponsor and ESI breached their duty to act in accordance with the
terms of the Policy by requiring Mr. Vanusanik to obtain his medication only from the ESI-
owned pharmacy, Accredo, which did not properly provide benefits to Mr. Vanusanik, and
by not allowing Mr. Vanusanik to fill his prescriptions with pharmacies in ESI's network,
such as InfuCare.

100.    This breach of fiduciary duty is a direct and proximate cause of Mr.
Vanusanik's injuries.

101.    As a result, Mr. Vanusanik has been wrongly denied benefits.


**COUNT III**
**29 U.S.C. § 1105 AND 29 U.S.C. § 1109**
**BREACH OF FIDUCIARY DUTY – FAILURE TO MONITOR; CO-FIDUCIARY**
**LIABILITY**
**(PLAINTIFF V. PWC AND ESI)**

102.    Mr. Vanusanik restates and realleges paragraphs 1-88 as if set forth in full
herein.

103.    The Plan Sponsor breached its fiduciary duty by failing to abide by the
Policy's terms.

104.    The Plan Sponsor has a duty to monitor the activities of co-fiduciaries to the
Policy pursuant to 29 U.S.C. § 1104(a)(1)(A)-(B).

25

105.     The Plan Sponsor failed to prudently monitor the activities of ESI, which served the role as Prescription Drug Benefits Administrator.

106.     The Plan Sponsor's failure is a breach of fiduciary duty and enabled the co-fiduciary, ESI, to commit a breach of its fiduciary duty by failing to provide benefits to Mr. Vanusanik provided for under the Policy.

107.     This breach is the direct and proximate cause of Mr. Vanusanik's injuries.

108.     As a result of the Plan Sponsor's and ESI's breach, Mr. Vanusanik has been wrongly denied benefits.

## COUNT IV
## DECLARATORY JUDGMENT
## (PLAINTIFF V. PWC AND ESI)

109.     Mr. Vanusanik restates and realleges paragraphs 1-88 as if set forth in full herein.

110.     The Plan Sponsor has claimed that Mr. Vanusanik must obtain his medication only from ESI-owed pharmacy, Accredo, despite documentation from its agent, ESI, that he can obtain medication from another pharmacy at a "cost lower than through the ESI pharmacy."

111.     An actual, present and justiciable controversy has arisen between the Plan Sponsor, its agent ESI and Mr. Vanusanik regarding Mr. Vanusanik's right to obtain his medication from another pharmacy.

112.     Mr. Vanusanik seeks a declaratory judgment from this Court that he can obtain his medication from a pharmacy other than Accredo so long as that medication can be obtained at a "cost lower than through the ESI pharmacy."

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Vitalij Vanusanik respectfully demands judgment in his

favor and against Defendants PricewaterhouseCoopers LLP and Express Scripts, Inc. and

respectfully requests the following relief:

A.   Permanent injunctive relief prohibiting the Plan Sponsor and any of its agents including, but not limited to ESI, from, directly or indirectly, requiring Mr. Vanusanik to obtain his medication from ESI-owned pharmacy, Accredo, and preventing him from using the ESI in-network pharmacy of his choice to obtain his medication;

B.   Declaring that, pursuant to the Policy, Mr. Vanusanik is permitted to obtain his medication from any pharmacy in ESI's network, including, specifically, InfuCare;

C.   Awarding Mr. Vanusanik his benefits wrongfully denied by permitting him to obtain his medication from any pharmacy in ESI's network, including, specifically, InfuCare;

D.   Awarding Mr. Vanusanik his attorneys' fees and costs pursuant to 29 U.S.C. §1132(g) and any such other and further relief as the Court deems just and equitable.

Respectfully submitted this 2nd day of December, 2020,

**DUANE MORRIS LLP**

/s/ Harvey W. Gurland, Jr.
Harvey W. Gurland, Jr. – Trial Counsel
Florida Bar No.:  284033
Morgan L. Swing
Florida Bar No.: 17092
201 South Biscayne Boulevard, #3400
Miami, Florida 33131
Telephone: (305) 960-2200
Facsimile:  (305) 397-1874
hwgurland@duanemorris.com
mlswing@duanemorris.com

*Counsel for Plaintiff Vitalij Vanusanik*

DM1\11595375.2

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200