**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| VITALIJ VANUSANIK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:20-cv-02839-CEH-TGW |
| | ) | |
| v. | ) | Hon. Charlene Edwards Honeywell |
| | ) | |
| PRICEWATERHOUSE COOPERS LLP AND EXPRESS SCRIPTS, INC., | ) | Dispositive Motion |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Defendant PricewaterhouseCoopers LLP ("PwC"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), hereby moves this Court to dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction.

## I. Introduction

Plaintiff Vitalij Vanusanik ("Plaintiff") alleges that he is a participant in PwC's health plan, the Staff Medical Plan (the "Plan"). He has brought this lawsuit seeking a benefit to which he is not entitled under that Plan—namely, the ability to fill his prescriptions for Specialty medications at any "in-network" pharmacy of his choosing. Under the terms of the Plan, however, Plaintiff is required to obtain Specialty medications from a designated specialty pharmacy, Accredo. As a result, and as demonstrated below, all of Plaintiff's claims fail as a matter of law.

*First*, Plaintiff's claim for benefits under the Plan pursuant to ERISA § 502(a)(1)(B) fails because Plaintiff does not and cannot identify the "the specific plan terms that confer the benefits sought," as is required. *RMP Enters., LLC v. Connecticut Gen. Life Ins. Co.*, 2018 WL 6110998,

at *6 (S.D. Fla. Nov. 21, 2018). To the contrary, the Plan does *not* confer the benefit Plaintiff seeks, namely coverage for his Specialty medications obtained from a pharmacy of his choice other than Accredo. Because a benefit provided by a plan is the exclusive relief available under this cause of action, Count I fails as a matter of law.

*Second*, Plaintiff's Counts II and III for breach of fiduciary duty to act in accordance with Plan documents, failure to monitor, and co-fiduciary liability fail for multiple reasons, including because these claims are impermissibly duplicative; Plaintiff has failed to plausibly allege any breach of fiduciary duty by PwC; and Plaintiff has not put forth adequate factual allegations that PwC failed to monitor co-defendant Express Scripts, Inc. ("ESI") or that ESI committed a breach for which PwC may be held liable as a co-fiduciary.

*Third*, Plaintiff's Count IV for declaratory relief should be dismissed because declaratory relief is a remedy, not cognizable as a stand-alone claim, and upon the dismissal of Counts I, II, and III, there will be no actual controversy between PwC and Plaintiff, as is required to support relief under the Declaratory Judgment Act.

For the foregoing reasons, and as set forth below, Plaintiff's claims should be dismissed with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

## II. Summary of Plaintiff's Allegations[1] and Relevant Plan Terms

Plaintiff alleges he is a participant in the Plan. Compl., ¶ 1. The medical benefits under the Plan are administered by non-party UnitedHealthcare, Inc. Compl., ¶ 11. However, Defendant ESI administers the Plan's prescription drug benefits as its pharmacy benefit manager ("PBM"). Compl., ¶¶ 13, 18, 23. Non-party Accredo Health Group, Inc. ("Accredo") is a specialty pharmacy owned by ESI. Compl., ¶¶ 14, 22.

[1] These facts, which exclude Plaintiff's legal conclusions, are presumed to be true for purposes of PwC's Motion to Dismiss only.

### A. The Plan requires Specialty medications be obtained only at Accredo

Plaintiff attaches the Plan's summary plan description (the "SPD") as Exhibit A to his Complaint, *see* Compl., ¶ 1 and Ex. A, and thus the Court may consider the contents of that document on a motion to dismiss. *See Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, 1058 (S.D. Fla. 1997) (in determining whether to grant a Rule 12(b)(6) motion, court may consider exhibits attached to the complaint).[2] The SPD states: "For purposes of claims administration of the prescription drug Benefits, the Plan Administrator has assigned fiduciary responsibility for claim determinations to Express Scripts." SPD, p. 147; *see also* Compl., ¶ 13.

Prescription drugs are divided into four categories in the SPD: generic, preferred brand, non-preferred brand, and Specialty. SPD, p. 167. The SPD defines "Specialty medications" to include those medications used to treat hemophilia (applicable here), SPD, p. 168, and provides:

> When you purchase the first 30-day supply of a Specialty medication at a participating retail pharmacy, you will be responsible for the Deductible/coinsurance, as applicable under the plan option in which you participate. After the first fill, you are required to use Accredo, Express Scripts' Specialty pharmacy . . . . You will be responsible for the entire cost of Specialty medications if you continue to purchase them at a retail pharmacy after the first purchase. Further, if you do not use Accredo after the first fill, charges will not apply toward your Annual Deductible or your Out-of-Pocket Maximum. To avoid paying more for these medications, use Accredo.

SPD, p. 168; *see also* Compl., ¶ 26.

Notwithstanding the definition in the SPD of Specialty medications as including prescription drugs for the treatment of "complex conditions" including the hemophilia from which Plaintiff suffers, SPD, p. 168, Plaintiff nonetheless incorrectly alleges that "there is no requirement to have the prescriptions filled through Accredo . . . ." Compl., ¶ 86 (citing SPD, p. 170, 172, 174).

---

[2] The SPD describes the terms, conditions, and benefits available to participants under the PwC Staff Medical Plan and "together with the SPDs of each other component benefit of the Health & Welfare Benefits Plan, serves as the Plan document for the Health & Welfare Benefits Plan." SPD, p. 1. In his Complaint, Plaintiff uses the word "Policy" to refer to policy documents "controlling" the Staff Medical Plan. Compl., ¶ 1.

However, the SPD provisions Plaintiff cites do *not* address Specialty medications, *see* SPD, p. 170, 172, 174, but, rather, other types of non-Specialty medications, and the SPD requires that Specialty medications be filled at Accredo. *Id*. p. 168.

**B. Plaintiff demands benefits that are not provided under the Plan as administered by ESI**

Upon becoming a Plan participant on or around July 1, 2018, Plaintiff was required to utilize Accredo to obtain his hemophilia-related Specialty medication. Compl., ¶¶ 25-26. Plaintiff alleges that Accredo "repeatedly failed to timely and accurately fill and deliver his medication," including delivering late, partial, and/or incorrect dosages of his medication; that Accredo initially invoiced him incorrectly for his medication (although he does not contend that he ever paid any incorrect or excessive amounts); that Plaintiff suffered bleeds in July 2018 and June 2020; and that Plaintiff "was forced to go to a local hospital on multiple occasions." *See, e.g.*, Compl., ¶¶ 28-41, 68, 72. From November 2018 through February 2020, and again in March and April 2020, Plaintiff alleges that ESI allowed him to fill his prescriptions from a pharmacy other than Accredo, and during this time Plaintiff obtained his medications through InfuCare, which Plaintiff describes as an in-network retail and specialty pharmacy. Compl., ¶¶ 44-46, 57, 60.

Plaintiff also alleges that, under the SPD, he is entitled to a Personal Health Support Nurse (Compl., ¶ 43 (citing SPD, p. 23)), and complains that "no representative of Accredo ever called or otherwise contacted him to see how he was doing" and that when he called Accredo, he was "connected to a general customer service representative who had no knowledge of hemophilia medication requirements and risk factors." Compl., ¶¶ 42, 82. Plaintiff alleges that as a result, he was denied "appropriate medical care," and he quotes the Plan as promising such "appropriate medical care." Compl., ¶¶ 3, 84. However, the Plan provisions cited by Plaintiff that describe "appropriate medical care" and Personal Health Support Nurses (Compl., ¶¶ 3, 43), are part of the

medical benefits program administered by UnitedHealthcare, Inc., not ESI. *See* SPD, p. 23. A participant who does not receive a call from a Personal Health Support Nurse but feels he would benefit from such a service is directed to call UnitedHealthcare at a designated phone number. *See id.* at 24. Plaintiff does not allege in the Complaint that he made such a call.

Plaintiff further alleges that ESI issued him appeal denial letters which stated: "Your plan's benefit only allows retail refills beyond the limit in situations where a member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI Pharmacy." Compl., ¶¶ 54, 62, Ex. B, D. Plaintiff does not identify any SPD provision permitting him to obtain Specialty medications from any pharmacy other than Accredo. *See generally* Compl.; SPD.[3]

In his Prayer for Relief, Plaintiff seeks injunctive relief allowing him to obtain his Specialty medications from an "in-network" pharmacy of his choice, a declaration that he is entitled to obtain his Specialty medication from an "in-network" pharmacy of his choice (including, specifically, InfuCare), and "[a]warding [him] his benefits wrongfully denied by permitting him to obtain his medication from any pharmacy in ESI's network, including, specifically, InfuCare." Compl., p. 27. These benefits are not available under the Plan. Plaintiff also seeks an award of attorneys' fees and costs. *Id.*

## III. Applicable Legal Standards

Compliance with Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that provides "labels and conclusions"

[3] Plaintiff also alleges that Accredo improperly disclosed his medical information in violation of HIPAA. Compl., ¶¶ 65-66. Plaintiff does not allege that PwC had any involvement in the purported disclosure, nor does he appear to base any of his claims on these allegations. *See also Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010) ("HIPAA contains no express provision creating a private cause of action. We decline to hold that HIPAA creates a private cause of action . . . .").

or "a formulaic recitation of the elements of a cause of action" is not adequate to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555. Rather, "[t]o survive . . . a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1337 (11th Cir. 2012). Furthermore, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must allege both a cognizable legal theory and sufficient facts to support it." *Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1378 (S.D. Fla. 2011). Additionally, absent a true case or controversy, Plaintiff's claim for declaratory relief lacks subject matter jurisdiction under Rule 12(b)(1). *FedEx Corp. Servs., Inc. v. Eclipse IP LLC*, 15 F. Supp. 3d 1346, 1347-48 (N.D. Ga. 2013).

## IV. Argument

### A. Count I for Denial of Benefits Fails to State a Claim Because Plaintiff Seeks a Benefit Not Covered Under the Plan

Plaintiff's Count I for denial of benefits and clarification of rights under ERISA Section 502(a)(1)(B) fails as a matter of law because under the clear terms of the Plan, Plaintiff is not entitled to the benefit he seeks—namely, the ability to obtain his Specialty medications from InfuCare or any pharmacy other than Accredo. *See* Compl., p. 27, Prayer for Relief.

Section 502(a)(1)(B) allows a participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). "The law is clear that 'benefits payable under an ERISA plan are limited to the benefits specified in the plan.'" *Living Tree Labs., LLC v. United Healthcare Servs., Inc.*, 2018 WL 1536609, at *2 (S.D. Fla. Mar. 29, 2018) (quoting *Sanctuary Surgical Centre, Inc. v. UnitedHealth Group, Inc.*,

2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013)). Indeed, the Supreme Court has emphasized that the relevant "statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (emphasis in original). "To state a plausible claim under ERISA, then, a plaintiff must provide the court with enough factual information to determine whether the services were indeed covered services under the plan. A plaintiff must identify a specific term of the plan that covers the services at issue and must provide facts sufficient to show that the services meet whatever requirements the plan imposes for coverage." *H.H. v. Aetna Ins. Co.*, 342 F. Supp. 3d 1311, 1316 (S.D. Fla. 2018) (internal citations and punctuation omitted). A court may not go outside the four corners of a plan document to award a benefit not provided under the plan by making judgments on what should have been covered. *See, e.g.*, *Floyd Med. Ctr. v. Warehouse Home Furnishings Distributors, Inc*., 2012 WL 1438470, at *6 (M.D. Ga. Apr. 25, 2012) (rejecting "novel" argument that "the Court should go beyond the Plan requirements and make a *de novo* decision that what the Plan covered was not 'reasonable,'" and observing that "accepting such an argument would be entirely inconsistent with, and inappropriately disruptive to, the ERISA statutory framework.").

**1. Plaintiff is not entitled to the benefit of obtaining Specialty medications at a pharmacy of his choice because the Plan does not provide for such a benefit**

Count I fails because Plaintiff seeks the ability "to obtain his medication from any pharmacy in ESI's network, including, specifically, InfuCare . . . ." Compl., p. 27. But Plaintiff has not identified any specific Plan term that confers this benefit, and in fact, the SPD makes clear that this benefit is *not* covered under the Plan. *See* SPD, p. 168 (requiring that Specialty medications be obtained from Accredo or the participant bears the full cost of the Specialty medication). Because Plaintiff is not entitled to the benefit sought under the terms of the Plan, he

fails to state a claim under Section 502(a)(1)(B). *See also Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 850 (11th Cir. 2013) (affirming Rule 12(b)(6) dismissal of Section 502(a)(1)(B) claim where plaintiffs failed to plead specific facts creating a plausible inference that the medical services at issue were covered benefits); *Coles v. Bert Belle/Pete Rozelle NFL Player Ret. Plan*, 2014 WL 12617587, at *3 (M.D. Fla. June 18, 2014) (plaintiff did not state a plausible claim because he did not allege facts sufficient to show that he was entitled to benefits under the identified provision of the plan); *RMP Enters.*, 2018 WL 6110998, at *6 ("To state a claim for benefits under ERISA, a plaintiff must plead facts showing that there are 'benefits due' to them 'under the terms of' an ERISA plan. This means Plaintiffs are required to identify the specific plan terms that confer the benefits sought.") (citations omitted).

Indeed, the Ninth Circuit recently affirmed the dismissal of a similar claim in *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020). There, plaintiffs were participants of employer-sponsored health plans who were required, under the terms of the plans, to obtain their HIV/AIDS specialty medications from a designated specialty pharmacy. Plaintiffs brought an ERISA denial-of-benefits claim under Section 502(a)(1)(B), alleging that they were wrongfully denied the benefit under their health plan to obtain their specialty medications at any in-network community pharmacies. *Id.* at 1213. The district court dismissed this claim on the ground that plaintiffs "failed to identify a specific term in their health care plan that conferred the benefits they claim they were denied." *Id.* The Ninth Circuit affirmed, noting that plaintiffs "have not identified any provision in their plans conferring" the benefit plaintiffs sought, namely the right to obtain their specialty medications from pharmacies other than that designated in the plan. *Id.*

The same result should apply here, where Plaintiff has failed to identify any Plan provision entitling him to obtain his Specialty medications from a pharmacy other than Accredo. Count I fails as a matter of law.

**2. Plaintiff's references to extra-Plan documents and conduct cannot save Count I**

Impliedly recognizing the futility of his request that this Court award him a benefit not provided in the Plan, Plaintiff suggests in his Complaint that language in the letters from ESI denying his claim and appeal (Compl. ¶¶ 54, 62, Exhs. B, D) allow him to obtain his Specialty medications at an "in-network" pharmacy of his choice. But that allegation does not – and cannot – establish a viable claim under ERISA Section 502(a)(1)(B). First, the SPD itself states that "[i]f there is a conflict between this SPD and any benefit summaries (other than Summaries of Material Modifications) provided to you, this SPD will control." SPD, p. 5. Additionally, however, Exhibits B and D are mere claims determinations, which are *not* plan documents. *See, e.g., Alday v. Container Corp. of Am.*, 906 F.2d 660, 665-66 (11th Cir. 1990) (letters sent to employees, summary booklet, and documents accompanying retirement seminars did not constitute plan documents); *Potter v. Blue Shield of California Life & Health Ins. Co.*, 2017 WL 1334289, at *6 (C.D. Cal. Apr. 7, 2017) (stating that "the initial denial letter is not a Plan document"). Such communications cannot amend the unambiguous terms of a written plan document, which must be enforced as written. *See In re Fairchild Indus., Inc. & GMF Investments, Inc., ERISA Litig.*, 768 F. Supp. 1528, 1533 (N.D. Fla. 1990) ("[A] written plan must be given effect according to its terms, and cannot ordinarily be amended informally . . . . Because ERISA prohibits the amendment of an employee benefit plan through informal written documents, or by any other means except as specified in the plan documents themselves pursuant to ERISA, the Purchase Agreement could not legally operate to amend the plan documents."). The Eleventh Circuit similarly found when it

rejected a litigant's efforts to rely on communications outside the plan documents to contradict and indeed override the SPD's provisions. *Alday*, 906 F.2d at 665-66 (finding "no need to refer to other communications between the parties to determine the parties' intent" because "there was an SPD which clearly functioned as the plan document required by ERISA" and "the SPD unambiguously set out the rights of the parties").

For the same reasons, Plaintiff's allegations regarding other, non-Plan documents are insufficient to save Count I. Plaintiff asserts "[u]pon information and belief" that certain unidentified contracts between PwC and ESI allow participants in certain situations to obtain Specialty medications from a pharmacy other than Accredo. Compl. ¶ 24. Even if such vague allegations satisfied Plaintiff's pleading burden – which they do not, *see Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) ("[F]or purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief.'") (citations omitted) – a contract cannot contradict the provisions of the SPD which, here, "serves as the Plan document[.]" SPD, p. 1; *In re Fairchild Indus.*, 768 F. Supp. at 1533 (finding non-plan documents like Purchase Agreement could not amend plan documents); *see also Alday*, 906 F.2d at 665-66.

Nor can a course of conduct be the basis for amending a Plan, ignoring Plan terms, or awarding a benefit under Section 502(a)(1)(B). Plaintiff cites prior incidents of receiving what he calls an "override" of Plan terms, but to the extent such overrides are not based on the terms of the Plan, they cannot salvage Count I. *See Lott v. Hertz Custom Ben. Program*, 961 F.2d 220, at *2 (10th Cir. 1992) (unpublished) ("[D]efendants' course of conduct cannot amend or modify the terms of this ERISA-governed employee benefit plan."); *In re Fairchild*, 768 F. Supp. at 1533 ("[A] written plan must be given effect according to its terms, and cannot ordinarily be amended informally . . . . ERISA prohibits the amendment of an employee benefit plan through informal

written documents, or by any other means except as specified in the plan documents themselves pursuant to ERISA . . . .").

Finally, to the extent Plaintiff wants the Court to "reform" the Plan to offer a benefit it does not currently offer, such relief is fundamentally inconsistent with a claim for benefits under Section 502(a)(1)(B). *See, e.g.*, *Marquez v. Flextronics Am., LLC*, 2013 WL 5448072, at *7 (S.D. Fla. Sept. 30, 2013) ("Reformation is not available to Marquez under claim 5 because he bases this claim on ERISA § 502(a)(1)(B) and the Supreme Court has held that this section—which 'speaks of "enforcing" the "terms of the plan," not of changing them'—does not authorize a court to reform a plan.") (quoting *Amara*, 131 S.Ct. 1866; ERISA § 502(a)(1)(B)). Instead, under ERISA Section 502(a)(1)(B), a plaintiff may only enforce the Plan's unambiguous terms as written.

Here, Plaintiff has not identified any SPD provision permitting him to obtain Specialty medications from a pharmacy other than Accredo. *See generally* Compl.; SPD. That fact is determinative and requires that Count I be dismissed.

**3. Plaintiff cannot base Count I on any of the other benefits referenced throughout the Complaint**

Throughout the Complaint, Plaintiff references both "appropriate medical care" as an allegedly denied benefit, *see, e.g.*, Compl., ¶¶ 3-5, 83, 84, as well as the alleged failure to provide a Personal Health Support Nurse, despite his requests. *See, e.g.*, Compl., ¶¶ 74, 81. Neither of these purported Plan benefits can properly found Count I. First, Plaintiff plainly does not seek an award of such alleged benefits, as evidenced in the Prayer for Relief, which focuses exclusively on his request to obtain Specialty medications at a pharmacy of his choice. Second, neither the "appropriate medical care" nor the Personal Health Support Nurse are benefits administered by ESI or available as part of the prescription drug coverage under the Plan. Instead, both are part of a program that UnitedHealthcare, which is not a party here, can make available in its discretion

to a Plan participant. SPD, p. 23. Plaintiff does not allege that he ever sought these benefits from UnitedHealthcare, as required by the Plan (SPD, p. 24) or that UnitedHealthcare, to which PwC delegated fiduciary responsibility for deciding medical claims, denied any such request. *Id.* p. 147.

Moreover, the Personal Health Support Nurse and the "appropriate medical care" that Plaintiff quotes have nothing to do with Plaintiff's Specialty medications or the pharmacy from which he is permitted to obtain such medications under Plan terms. Plaintiff cannot bootstrap himself into a Section 502(a)(1)(B) claim by quoting the Plan out of context or citing programs unrelated the benefit he claims to have been denied. *See, e.g.*, *Stidham v. Solutia, Inc.*, 215 F. Supp. 2d 1268, 1272 (N.D. Ala. 2002) (criticizing argument as "misplaced" where plaintiff "takes the attachment [to the SPD] out of context and ignores the other language of the SPD.").

Based on the allegations in the Complaint, Count I fails and must be dismissed.

### B. Count II Fails to State a Claim for Breach of Fiduciary Duty

Count II alleges that PwC breached its fiduciary duty "to act in accordance with plan documents." Compl., p. 24. Specifically, Plaintiff alleges:

> The Plan Sponsor and ESI breached their duty to act in accordance with the terms of the Policy by requiring Mr. Vanusanik to obtain his medication only from the ESI-owned pharmacy, Accredo, which did not properly provide benefits to Mr. Vanusanik, and by not allowing Mr. Vanusanik to fill his prescriptions with pharmacies in ESI's network, such as InfuCare.

Compl., ¶ 99. It appears that Plaintiff is attempting to assert this claim under Section 502(a)(3), which provides: "A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to

enforce any provisions of this subchapter or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3).[4] This claim fails as a matter of law for several reasons.

First, Plaintiff's Count II for breach of fiduciary duty is impermissibly duplicative of his Count I for denial of benefits, as both claims seek the same remedy based on the same set of factual allegations. Plaintiff does not seek any remedy for breach of fiduciary duty, other than the alleged benefits purportedly denied (the right to obtain Specialty medications at a pharmacy of his choosing). As such, Count II is merely a repackaged claim for benefits, and Plaintiff may not simultaneously seek the same remedy for an alleged breach of fiduciary duty that he seeks in Count I under Section 502(a)(1)(B). *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (Section 502(a)(3) is a "catchall" or "safety net" designed to "offer[] appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy"); *Stewart v. Hartford Life & Accident Ins. Co.*, 2018 WL 2431344, at *2 (N.D. Ala. May 30, 2018) ("If the claims are based on *different* factual allegations, a plaintiff may raise both a § 502(a)(1)(B) claim for recovery of benefits and a § 502(a)(3) claim for equitable relief, as long as no other section of ERISA provides an adequate remedy for the facts supporting the § 502(a)(3) claim. But a plaintiff may not raise both a § 502(a)(1)(B) and a § 502(a)(3) claim based on the same factual allegations, even as alternatives to each other.") (citations omitted; emphasis in original); *Morrison v. Life Ins. Co. of*

---

[4] A claim for breach of fiduciary duty may be brought under either Section 502(a)(2) or Section 502(a)(3) of ERISA. In Count II, Plaintiff does not specify which section he invokes, although he does reference Section 409 (29 U.S.C. § 1109). Compl., p. 24. "However, the cause of action authorized under ERISA § 502(a)(2) for breach of a fiduciary of duty outlined in § 409 only authorizes remedies inuring to the benefit and integrity of the plan, not relief provided directly to individual beneficiaries." *Scoggins v. Life Ins. Co. of N. Am.*, 2009 WL 10704315, at *2 (N.D. Ala. Feb. 23, 2009) (citations omitted). Therefore, where—as here—a plaintiff has not brought suit on behalf of a plan, and instead his complaint "plainly seeks payment of benefits (and perhaps otherwise unspecified relief) to be awarded directly to him, not the plan," he fails to state a claim under Section 502(a)(2). *Scroggins*, 2009 WL 10704315, at *2 (granting motion to dismiss Section 502(a)(2) claim). Accordingly, PwC assumes Plaintiff is attempting to assert a claim under Section 502(a)(3). *See also Hembree ex rel. Hembree v. Provident Life & Acc. Ins. Co.*, 127 F. Supp. 2d 1265, 1273 (N.D. Ga. 2000) ("Although not expressly averred in the Complaint, the court assumes that this claim was brought pursuant to 29 U.S.C. § 1132(a)(3), the appropriate statutory mechanism to bring a breach of fiduciary duty claim under ERISA.").

*N. Am.*, 2008 WL 11425362, at *7 (N.D. Ala. June 17, 2008) (granting Rule 12(b)(6) motion to dismiss Section 502(a)(3) claim where that claim and Section 502(a)(1)(B) claim were both "based on the same allegations of misconduct, specifically, the denial of benefits.").

Second, even if Count II could be viewed as distinct from Count I, it would still fail as a matter of law. To state a claim under ERISA § 502(a)(3), Plaintiffs must allege a substantive violation of the Plan or ERISA itself. *See* 29 U.S.C. § 1132(a)(3) (authorizing lawsuits to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief … to redress such violations"); *see also Moore v. Am. Fed'n of Television & Radio Artists*, 216 F.3d 1236, 1247 (11th Cir. 2000) (affirming dismissal of § 502(a)(3) claim that "contains no allegation, within the four corners of that count, that the [defendants] violated a substantive provision of ERISA or the terms of the [plan]"). Here, Plaintiff alleges that he was not permitted to obtain Specialty medications from a pharmacy other than Accredo, even though the Plan requires Plaintiff to obtain his Specialty medications only from Accredo. In other words, Plaintiff complains that the fiduciary followed the Plan documents and denied him a benefit not permitted under the Plan. That cannot be the basis of a breach of fiduciary duty claim. *See Heffner v. Blue Cross Blue Shield of Alabama, Inc.*, 2009 WL 10727576, at *4 n.4 (M.D. Ala. Mar. 13, 2009) ("[T]here can be no breach of fiduciary obligation when Blue Cross did not [sic] nothing more than follow and apply the governing provisions of the Plan."), *aff'd*, 366 F. App'x 975 (11th Cir. 2010).

Third, the remedy sought by Plaintiff is unavailable under ERISA. In particular, in his Prayer for Relief, Plaintiff seeks "permanent injunctive relief prohibiting the Plan Sponsor and any of its agents including, but not limited to ESI, from, directly or indirectly, requiring Mr. Vanusanik to obtain his medication from ESI-owned pharmacy, Accredo, and preventing him from using the

ESI in-network pharmacy of his choice to obtain his medication." Compl., p. 27. But under ERISA, PwC may amend or terminate the Plan at any time. *See, e.g.*, *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("[E]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.") (citations omitted); *Mohalley v. Kendall Health Care Prod. Co*., 903 F. Supp. 1530, 1537 (M.D. Ga. 1995) ("A company retains the right under ERISA to amend or terminate a welfare benefits plan."). The Plan specifically provides that it may be amended or terminated at any time for any reason. SPD, p. 4 (stating that PwC "reserves the right, in its sole discretion, to modify, change, revise, amend or terminate the Plan at any time, for any reason, and without prior notice."). The permanent injunction that Plaintiff seeks would effectively deny PwC the ability to amend the Plan, and thus it is inconsistent with ERISA. For all of these reasons, Count II fails as a matter of law.

### C. Count III Fails to State a Breach of Fiduciary Duty Claim Based Upon Failure to Monitor or Co-Fiduciary Liability

In Count III, Plaintiff asserts a breach of fiduciary duty claim based on PwC's alleged failure to monitor ESI and PwC's alleged co-fiduciary liability for ESI's purported breach.

With respect to co-fiduciary liability, 29 U.S.C. § 1105(a) provides that a fiduciary shall be liable for a breach of fiduciary responsibility of another fiduciary:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

With respect to the duty to monitor, Plaintiff alleges that PwC "has a duty to monitor the activities of co-fiduciaries to the Policy pursuant to 29 U.S.C. § 1104(a)(1)(A)-(B)." Compl., ¶ 104. Count III fails as a matter of law for multiple reasons.

First, as set forth in Section IV.B above, Plaintiff's Section 502(a)(3) fiduciary duty claim in Count III is impermissibly duplicative and redundant of Plaintiff's Section 502(a)(1)(B) claim in Count I and should be dismissed on that ground. *See* Section IV.B *supra*.

Second, Count III fails because in order to sustain a claim for either co-fiduciary liability or breach of the duty to monitor, there must be an underlying breach of fiduciary duty. *See, e.g.*, *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1351-52 (N.D. Ga. 2010) (dismissing co-fiduciary liability claim and stating: "A primary breach must exist in order for there to be any liability under ERISA's co-fiduciary provision. Because plaintiffs have failed to state a claim of any underlying breach, the attempt to impose co-fiduciary liability fails.") (citations and internal punctuation omitted); *Cervantes v. Invesco Holding Co. (US), Inc.*, 2019 WL 5067202, at *7 (N.D. Ga. Sept. 25, 2019) (granting motion to dismiss claims for failure to monitor and co-fiduciary liability because plaintiff did not sufficiently allege a claim for the underlying breaches of fiduciary duty); *Spear v. Fenkell*, 2015 WL 3643571, at *22 (E.D. Pa. June 12, 2015) ("if there is no fiduciary violation, there is no failure to monitor claim."); *In re Nokia Erisa Litig.*, 2011 WL 7310321, at *5 (S.D.N.Y. Sept. 6, 2011) (granting motion to dismiss failure-to-monitor claim and stating: "Having failed to sufficiently allege an antecedent breach of a fiduciary duty by the monitored parties in this case, Plaintiffs necessarily fail to state a plausible claim for breach of the duty to monitor."). Here, Plaintiff alleges in Count III that PwC "failed to prudently monitor" ESI, which in turn allegedly breached the Plan by denying benefits to Plaintiff. Compl., ¶¶ 104-06. However, as explained herein, *see supra*, Plaintiff fails to state plausible fiduciary duty breach

claims against either defendant. In particular, ESI did not breach any fiduciary duty by following Plan documents and denying Plaintiff a benefit to which Plaintiff is not entitled under the Plan. *See supra*. Rather, in requiring Plaintiff to obtain his Specialty medications from Accredo, ESI followed the terms of the Plan. *See* SPD, p. 168; *see also* ESI Motion to Dismiss. Because ESI did not breach its fiduciary duty, PwC cannot be liable as co-fiduciary, nor can it be held liable for any failure to monitor.

Third, even if Plaintiff did adequately allege that ESI breached its fiduciary duty—which he does not—any claim for co-fiduciary liability fails because there are no factual allegations supporting any assertion that PwC knowingly participated in or knowingly concealed ESI's breach, or knew about ESI's alleged breach and did nothing, as required by Section 1105(a)(1) or (3). Nor does Plaintiff state a claim under Section 1105(a)(2) based on PwC's delegation to ESI of the fiduciary responsibility to make claims decisions; indeed, Plaintiff admits that ESI has the requisite experience (*see, e.g.*, Compl., ¶ 20, alleging that ESI is one of the "big three" PBMs who together have 85% of market share). Plaintiff also fails to provide any factual allegations demonstrating that the delegation itself was a breach of fiduciary duty. Plaintiff's conclusory assertion that PwC is liable as a co-fiduciary lacks adequate factual allegations and fails as a matter of law. *See, e.g.*, *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 988 (C.D. Cal. 2004) (dismissing co-fiduciary claim because plaintiffs alleged "no facts to support" allegations that "Defendants knew of the breaches, participated in the breaches, or made no effort to remedy them"); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1230-31 (D. Kan. 2004) (dismissing co-fiduciary claim as too "conclusory" where plaintiffs "simply parrot[ed] the language of the co-fiduciary liability statute"); *Herrington v. Household Int'l, Inc.*, 2004 WL 719355, at *10 (N.D. Ill. Mar. 31, 2004) (dismissing as too "conclusory" co-fiduciary claim that opaquely alleged defendants "knowingly undert[ook]

to conceal Household's failure to loyally and prudently manage Plan assets"); *Stein v. Smith*, 270 F. Supp. 2d 157, 175 (D. Mass. 2003) (co-fiduciary claims dismissed in view of inadequately pled allegations regarding defendants' knowledge).

Finally, with respect to PwC's alleged failure to monitor ESI, there are no factual allegations whatsoever establishing that PwC failed to review ESI's activities or describing how PwC's monitoring system was deficient. Consequently, Plaintiff has failed to provide the requisite factual allegations necessary to "nudge [] [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and his failure-to-monitor claim must be dismissed. *See, e.g.*, *Guididas v. Cmty. Nat. Bank Corp.*, 2012 WL 1656771, at *5 (M.D. Fla. May 10, 2012) (granting motion to dismiss failure-to-monitor claim where court concluded that it "does not contain sufficient factual allegations to comply with *Iqbal*."); *Romero v. Nokia, Inc.*, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (granting motion to dismiss failure-to-monitor claim where "Plaintiff does not present any specific facts regarding the monitoring process or how it was deficient.").

### D. Count IV Fails to State a Claim for Declaratory Relief

Finally, Plaintiff's Count IV for declaratory relief should also be dismissed with prejudice. A declaratory judgment is a remedy, not a stand-alone cause of action. *Griffin v. Lee Cty. Bd. of Educ.*, 2019 WL 1338896, at *6 (M.D. Ala. Mar. 25, 2019). *See also Feingold v. Budner*, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) (because declaratory judgment is remedy, not a cause of action, a "plaintiff must prevail on an underlying claim in order to be entitled" to this form of relief); *Cellemetry, LLC v. Mobile Star GPS, LLC*, 2008 WL 11417231, at *2 (N.D. Ga. Sept. 12, 2008) ("A declaratory judgment is a remedy, not an independent cause of action."). Furthermore, the "operation of the Declaratory Judgment Act is procedural only," *Aetna v. Haworth*, 300 U.S. 227, 240 (1937), and does not give rise to a cause of action. Here, Plaintiff's Counts I, II, and III

fail as a matter of law for the reasons set forth above. Because Plaintiff's substantive claims fail, so, too, does his claim for a declaratory judgment.

Additionally, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, provides that "[i]n a case of actual controversy within its jurisdiction," any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201(a). A court has jurisdiction to entertain a claim for declaratory relief only if an "actual controversy" exists. *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (emphasizing that the "actual controversy" requirement is "jurisdictional" and a "threshold question in an action for declaratory relief") (citation and internal punctuation omitted). Without an actual controversy, a court's declaration of the rights and obligations of parties would violate the Constitution's prohibition on advisory opinions. *See, e.g.*, *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions . . . . This is as true of declaratory judgments as any other field."). Here, if the Court dismisses Counts I-III against PwC, no other claims against PwC will exist other than Count IV, which then must be dismissed due to the absence of a "case of actual controversy" between Plaintiff and PwC. *See, e.g.*, *Taylor v. Opteum Fin. Servs., LLC*, 2018 WL 6726056, at *7 (N.D. Ga. Oct. 25, 2018) ("Plaintiff's request for declaratory judgment is subject to dismissal because her underlying substantive claims fail . . . . Because the facts alleged in the complaint fail to state a claim for relief, they also fail to show that there is a substantial controversy between the parties, and Plaintiff is not entitled to declaratory relief.").

## V. Conclusion

For the foregoing reasons, PwC respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety. Because the Complaint defects identified herein are incurable, the dismissal should be with prejudice.

Dated: January 15, 2021

Respectfully submitted,

By: */s/ Peter W. Zinober*

Peter W. Zinober
Florida Bar No. 121750
S. Kathleen Massing
Florida Bar No. 722219
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.
100 N Tampa Street, Suite 3600
Tampa, Florida 33602-5867
Telephone: (813) 289-1247
Facsimile: (813) 289-6530
peter.zinober@ogletree.com
kathleen.massing@ogletreedeakins.com

Stephen Sheinfeld (*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
ssheinfe@winston.com

Aviva Grumet-Morris *(pro hac vice pending)*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
agmorris@winston.com

*Attorneys for PricewaterhouseCoopers LLP*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 15, 2021, the foregoing was filed with the Clerk of Court via CM/ECF which will send notice of electronic filing to:

Harvey W. Gurland, Jr.
Morgan Swing
Duane Morris, LLP
201 S Biscayne Blvd. Suite 3400
Miami, Florida 33131-2318

Shari Gerson
GrayRobinson, P.A.
401 East Las Olas Blvd., Suite 1000
Fort Lauderdale, Florida 33301

*/s/ Peter W. Zinober*______________
Attorney

45645156.1