UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VITALIJ VANUSANIK,

Plaintiff,

v. Case No.: 8:20-cv-02839-CEH-TGW

PRICEWATERHOUSE COOPERS LLP AND
EXPRESS SCRIPTS, INC.,

Defendants.
_______________________________________/

**EXPRESS SCRIPTS, INC.'S RULE 12(B)(6) MOTION TO DISMISS**

Express Scripts, Inc., by and through its undersigned counsel, moves to dismiss this lawsuit under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Introduction & Background Allegations**

Mr. Vanusanik filed this lawsuit under the Employee Retirement Income Security Act of 1974 ("ERISA"), which allows plan participants to sue to enforce their rights to benefits provided under an employee benefit plan. Mr. Vanusanik, however, has not identified any benefit under the Plan to which he is entitled. His claim that he can have his prescription filled at any pharmacy of his choice is belied by the express terms of the Plan. Thus, Mr. Vanusanik has not stated any claim for which relief can be granted, so his Complaint should be dismissed.

* * *

Express Scripts is a pharmacy benefits manager, and its clients include third-party payors and health plan administrators, including insurers, HMOs, and

employers. *See* Compl. ¶¶ 13, 18. As a pharmacy benefits manager, Express Scripts facilitates for its clients the delivery of prescription drugs to health plan participants or other beneficiaries. *See id.* PricewaterhouseCoopers ("PwC") is an Express Scripts client and Mr. Vanusanik is covered by PwC's health plan ("the Plan"). *Id.* ¶¶ 1, 13, 18.

The Plan contains provisions for prescription drug coverage in the "following classes: generic, preferred brand, non-preferred brand and Specialty medications." ECF 1-1, at 176.[1] The Plan defines "Specialty medications" as "ones that are used to treat complex conditions; examples include, but are not limited to: cancer, growth hormone deficiency, hemophilia . . ." ECF 1-1 at 176-177. Mr. Vanusanik has hemophilia, Compl. ¶ 2, so his prescriptions to treat that condition are Specialty medications as defined under the Plan. When it comes to filling prescriptions for Specialty medications, the Plan unambiguously provides: "After the first fill, you are required to use Accredo, Express Scripts' Specialty pharmacy." *Id.*

Mr. Vanusanik does not want to fill his prescriptions at Accredo. He spends much of the Complaint attacking Accredo, an entity he has not sued. But the claims he asserts against Express Scripts (and PwC) are legally flawed. The essence of each of his causes of action—alleged denial of benefits, breach of fiduciary duty, and declaratory judgment—is the same. Invoking documents *outside* the Plan, Mr. Vanusanik believes that—as a Plan "benefit"—he can use a pharmacy besides Accredo

[1] The page numbering that Express Scripts uses in this motion for docket citations is the page numbering that the ECF system inserts onto documents.

"so long as that pharmacy is willing to provide medications at a cost lower" than Accredo. Compl. ¶ 6.

But the "benefit" Mr. Vanusanik seeks is not allowed by the Plan, as the Plan's plain language requires Mr. Vanusanik to fill his prescriptions for Specialty medications at Accredo. Under well-established law, the Plan's plain language governs the Plan benefits available to a Plan participant. Mr. Vanusanik wants the Court to rewrite the Plan, but settled law prevents the Court from doing so. Simply put, the Plan does not entitle Mr. Vanusanik to the relief he seeks. Mr. Vanusanik has failed to state a claim on any of his four causes of action, requiring dismissal under Rule 12(b)(6).

## Legal Standard

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Argument

### I. Count I fails to state a claim because the Plan does not offer the benefits that Mr. Vanusanik believes were denied.

Mr. Vanusanik asserts Count I under 29 U.S.C. § 1132(a)(1)(b), which provides: "A civil action may be brought . . . by a participant or beneficiary . . . [1] to recover benefits due to him under the terms of his plan, [2] to enforce his rights under the terms of the plan, or [3] to clarify his rights to future benefits under the terms of the plan." Mr. Vanusanik pleads that he "has been improperly denied benefits under the Policy to which he is entitled by the Health Plan[2] through the Plan Sponsor, counter to the explicit terms of the Policy." Compl. ¶ 92. The Plan's Summary Plan Description ("SPD"), which Mr. Vanusanik has attached to his Complaint as Exhibit A, is the controlling Plan document. *See* SPD, at p. 1, ECF 1-1 at 10 (stating that the SPD "serves as the Plan document for the Health & Welfare Benefits Plan").[3]

To state a claim for benefits under § 1132(a)(1)(B), Mr. Vanusanik must plausibly plead that the Plan's terms entitle him to the specific benefits that he believes were denied. "Benefits payable under an ERISA plan are limited to the benefits specified in the plan. Accordingly, a plaintiff who brings a claim for benefits under

[2] As exemplified by the statute's plain language, a § 1132(a)(1)(b) claim revolves around "the terms of the plan." Mr. Vanusanik frames Count I around a "Policy," but he appears to be using the term "Policy" interchangeably with the terms "plan" and "summary plan description." Mr. Vanusanik asserts that his action arises under "the policy documents (the 'Policy') controlling the PricewaterhouseCoopers Staff Medical Plan (the 'Health Plan'). The Policy summary plan description is attached hereto as Exhibit A." Compl. ¶ 1. The document he attaches as Exhibit A is, in fact, the summary plan description ("SPD"). As will be discussed below, the SPD is the plan document. To the extent Mr. Vanusanik is pleading that he has been denied benefits guaranteed by a source besides the SPD —which is the Plan here—he cannot invoke § 1132(a)(1)(b) and has failed to state a claim.

[3] "[W]here a plan has an SPD but no separate written instrument, the SPD can serve as the plan's written instrument." *Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 345 (5th Cir. 2017); *see also Publix Super Mkt., Inc. v. Figareau*, No. 8:19-CV-545-T-27AEP, 2019 WL 2635747, at *1 (M.D. Fla. June 27, 2019) (citing *Rhea* for same).

ERISA ***must identify a specific plan term that confers the benefit in question***." *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, No. 10-81589-CIV, 2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013) (citation and quotations omitted) (emphasis added); *see also Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1203 (11th Cir. 2020) (citation omitted) ("The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself."); *Sanctuary Surgical Ctr., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 11-80800-CV, 2012 WL 28263, at *2 (S.D. Fla. Jan. 5, 2012) ("To state a claim under [§ 1132(a)(1)(B)], a plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits.") (citation omitted).

Mr. Vanusanik has not pleaded any term of the Plan that entitles him to the purported benefits that he seeks. Count I is bare, containing only four paragraphs that do not explain what benefits Mr. Vanusanik believes have been "improperly denied." Mr. Vanusanik merely incorporates by reference all preceding paragraphs, expecting this Court to scour through those paragraphs to determine what exactly he is asserting in Count I. This Court's role, however, is not to "scour the Complaint for facts to support each claim." *Foster v. Select Med. Corp.*, No. 6:11-CV-1234-J-37GJK, 2012 WL 1415499, at *11 (M.D. Fla. Apr. 24, 2012); *see also Erickson v. Merck & Co.*, No. 5:17-CV-562-OC-30PRL, 2017 WL 9938491, at *2 (M.D. Fla. Dec. 8, 2017) (dismissing a complaint for "impermissible shotgun pleading" because the counts were "not so informative for the Court to determine whether they state a claim without having to search through the other allegations in the Complaint.").

Although Count I does not identify any Plan term at issue or any benefit to which Mr. Vanusanik alleges he is entitled, the Complaint's Prayer for Relief makes clear the purported "benefit" that Mr. Vanusanik is seeking: a declaration that he is "permitted to obtain his medication from any pharmacy in [Express Scripts'] network, including, specifically, InfuCare." *See* Compl. at p. 27. But the SPD's plain language forecloses any argument that Mr. Vanusanik is entitled to this alleged "benefit."

**1. The Plan does not offer the benefits that Mr. Vanusanik believes were denied, as the Plan only covers the cost of Specialty medications filled at Accredo.**

According to Mr. Vanusanik, PwC and Express Scripts "have failed to abide by their obligations under the Policy by attempting to limit Mr. Vanusanik to obtaining his medication only from Accredo." Compl. ¶ 87. He believes that he can use a pharmacy other than Accredo "so long as that pharmacy is willing to provide medications at a cost lower" than Accredo. Compl. ¶ 6. Mr. Vanusanik, however, does not identify any "obligation" or provision under the Plan that provides him this supposed benefit. Rather, the Plan specifically provides the opposite.

The Plan contains specific provisions relating to the dispensation of "Specialty medications," which are defined as medications "that are used to treat complex conditions" that "include, but are not limited to . . . hemophilia." ECF 1-1, at 177. Mr. Vanusanik's prescription medication is used to treat hemophilia, and so is a Specialty medication subject to these provisions. *Id.* at ¶ 3. The SPD unambiguously explains that Specialty medications are only covered after the first fill if they are dispensed by Accredo:

> After the first fill, you are required to use Accredo, Express Scripts' Specialty pharmacy. . . . You will be responsible for the entire cost of Specialty medications if you continue to purchase them at a retail pharmacy after the first purchase.

ECF 1-1 at p. 177.

It is well-established that "[t]he award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." *Crowder*, 963 F.3d at 1203. "Borrowing from state contracts law, federal courts have further developed rules of contract interpretation in construing ERISA plans, including that [courts] first look to the plain and ordinary meaning of the policy terms to interpret the contract." *Id.* (citation and internal quotation marks omitted). "[C]ourts also are without license to alter an express, unambiguous provision[.]" *Bryant v. Cmty. Bankshares, Inc.*, 265 F. Supp. 3d 1307, 1329 (M.D. Ala. 2017) (internal quotation marks omitted), *aff'd*, 736 F. App'x 841 (11th Cir. 2018); *see also Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997) ("We must uphold a plan interpretation even if we disagree with it[.]").

Mr. Vanusanik is asking this Court to ignore the Plan's plain language. This Court cannot do so. Mr. Vanusanik cannot state a § 1132(a)(1)(B) claim for Plan benefits for a Specialty medication dispensed from a pharmacy besides Accredo, when the Plan itself expressly requires that he obtain that medication from only Accredo for it to be covered.

### 2. None of the other provisions Mr. Vanusanik cites in his Complaint override the plain Plan terms.

Again, Count I does not identify any Plan term allowing Mr. Vanusanik to obtain his Specialty medication from another pharmacy; because no such provision exists, Count I should be dismissed for that reason alone. *Sanctuary Surgical,* 2013 WL 149356, at *3. If the Court is inclined to scour Paragraphs 1-88 to identify the benefits to which Mr. Vanusanik alleges he has been "improperly denied," Mr. Vanusanik appears to be referencing a heading on page 20 of the Complaint that reads, "The Health Plan Policy Guarantees Specific Benefits," and the two subheadings on pages 20 and 22 that read: (a) "The Health Plan's Policy Entitled Mr. Vanusanik to 'Appropriate Medical Care,'" and (b) "The Health Plan's Policy Provides Mr. Vanusanik The Right To Obtain His Medication From An In-Network Pharmacy Provider" of his choice.

As discussed below, the allegations contained under these headings do not state a plausible claim for the purported benefits Mr. Vanusanik seeks.

#### *a. Mr. Vanusanik has twisted the SPD's discussion of UnitedHealthcare's Personal Health Support program, which is inapplicable to his prescription claim.*

Mr. Vanusanik purports to invoke an isolated and inapplicable sentence from the SPD to argue that PwC and Express Scripts have denied him the Plan's purported "guarantee[]" of "the specific benefit of receipt of 'appropriate medical care.'" Compl. ¶ 84; *see also id.* ¶¶ 3-5, 43, 49, 76-84. Mr. Vanusanik bases that assertion on Section 4

of the SPD. *Id.* ¶ 3. Mr. Vanusanik has entirely misread Section 4, which has no application to Express Scripts or the prescription drug benefits under the Plan.[4]

Section 4 of the SPD concerns a program offered by UnitedHealthcare, not Express Scripts. The first line of that Section provides: "UnitedHealthcare provides a program called Personal Health Support designed to encourage personalized, efficient care for you and your covered Dependents." *Id.* at p. 23. The SPD explains that PwC has delegated to UnitedHealthcare—a nonparty here—responsibility as the Claims Administrator for the *medical* portion of the plan. ECF 1-1 at 137. Express Scripts is only the Claims Administrator for the Prescription Drug Benefits, which is set forth in a separate Addendum to the Plan and covered by the provisions of that Addendum. ECF 1-1 at 176-202. As summarized on Page 1 of the Plan, UnitedHealthcare is responsible for medical claims, including Personal Health Support, while Express Scripts is responsible for prescription claims. ECF 1-1 at 10, 156.

Section 4 of the SPD—which Mr. Vanusanik boldly alleges guarantees him "appropriate medical care"—explains that, under UnitedHealthcare's Personal Health Support program, UnitedHealthcare can assign nurses to Plan participants: "If you are living with a chronic condition or dealing with complex health care needs, UnitedHealthcare may assign to you a primary nurse, referred to as a Personal Health Support Nurse to guide you through your treatment." ECF 1-1 at 32. Mr. Vanusanik has latched onto a sentence in Section 5: "Personal Health Support Nurses will

[4] Although Section 4 of the SPD uses the term "appropriate medical care," it does *not* use the term "guarantee," which Mr. Vanusanik gratuitously uses throughout his Complaint.

provide a variety of different services to help you and your covered family members receive appropriate medical care." *Id.* But the rest of that paragraph explains the type of "care" that the Personal Health Support Nurse will provide, which includes admission counseling, inpatient care management, readmission management, and risk management. ECF 1-1 at 32.

Thus, the "care" referred to in Section 4 means the case management services provided by Personal Health Support Nurses assigned by UnitedHealthcare under the medical plan. That language does not mean that the Plan has guaranteed, as a statutory ERISA-plan "benefit," that participants will receive a certain level of "appropriate medical care" from healthcare providers. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *47 (N.D. Cal. May 27, 2016) ("ERISA's statutory text does not define the term 'benefit.' However, several statutory subsections suggest that benefits must concern payments for healthcare-related services."). Further, this term regarding the nurses' provision of support services has nothing to do with which provider confers the underlying healthcare service, and cannot override the Plan terms that specifically require Specialty medications to be dispensed by the designated Specialty pharmacy. *See United States v. Pielago*, 135 F.3d 703, 710 (11th Cir. 1998) ("When two contract terms appear to conflict, the specific term controls over the general one.").

Mr. Vanusanik's focus on the Personal Health Support program cannot change the SPD's unambiguous terms, which govern a § 1132(a)(1)(B) denial-of-benefits

claim.[5] Simply put, the language he cites does not apply to Express Scripts or prescription drug coverage, does not guarantee as a benefit "appropriate medical care," and does not override the Plan's specific terms that Specialty medications can only be filled at the designated Specialty pharmacy. Mr. Vanusanik cannot base a § 1132(a)(1)(B) denial-of-benefits claim on that language.

*b. The SPD does not allow the use of another pharmacy to dispense Specialty medications.*

Mr. Vanusanik also points to the SPD's provision that reads: "If you use long-term medications for a chronic condition, such as high blood pressure or diabetes, you can have your prescriptions filled through the Express Scripts Pharmacy home delivery service." ECF 1-1 at 181. In his Complaint, Mr. Vanusanik believes the "Express Scripts Pharmacy home delivery service" means "Accredo," deletes the words "such as high blood pressure or diabetes," and then argues that the word "can" in that provision means "that there is no requirement to have the prescriptions filled through Accredo under the Plan." Compl. ¶ 86(d).

Once again, Mr. Vanusanik relies upon provisions that have nothing to do with his Specialty medication and misreads their plain terms. As the SPD makes clear, for "Specialty medications" that are "used to treat complex conditions" specifically

[5] Mr. Vanusanik alleges that Accredo violated HIPAA by revealing his personal health information. Compl. ¶¶ 65-67. Even if Accredo were a party to Count I, "of the numerous mentions of the term 'benefit' in ERISA, none suggest that protecting customer [participant personal and health information] should be considered an ERISA benefit." *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *47.

including "hemophilia," participants are "required to use Accredo, Express Scripts' Specialty pharmacy" after the first fill. ECF 1-1 at 176-177.

On the other hand, "Express Scripts Pharmacy" is a different entity than Accredo. Express Scripts Pharmacy is a "home delivery service" that delivers "long-term medications" for "a chronic condition, such as high blood pressure or diabetes." *Id.* at 181. Under the Plan, if a member is taking long-term medication for a chronic condition, then instead of going to a retail pharmacy every 30 days to refill their prescription, they can have the prescription delivered to them by mail, every 90 days. As the Plan explains "This service normally features better negotiated prices than are available at a retail pharmacy, and it allows larger supplies (up to 90 days) than when purchased at a retail pharmacy (up to a 30-day supply)." *Id.* at 181. Thus, the "long-term medications" provision cited by Mr. Vanusanik allows members who take the same long-term medication on an ongoing basis to receive refills in the mail every 90 days. ECF 1-1 at 181. The "long-term medications" provision makes no reference to hemophilia or other "complex" conditions that are treated by Specialty medications.

In contrast, the provision regarding Specialty medications specifically calls out hemophilia. "When two contract terms conflict, the specific term controls over the general one." *Pielago*, 135 F.3d at 710. If there is any conflict between the "Specialty medication" provision and the general provision for "long-term medications," the Specialty medication provision controls here because it specifically references hemophilia, the condition at issue. Thus, the Plan provision allowing receipt of "long-

term medications" in general through home delivery does not change the requirement that Specialty medications must be dispensed by the Specialty Pharmacy.

Finally, even if this provision had any applicability, it would not support Mr. Vanusanik's argument that he can fill his prescription at *any* retail pharmacy. Compl. ¶ 86(d). To the contrary, this provision says: "The Plan provides no Benefits for using a home delivery service other than the Express Scripts Pharmacy." *Id.* at 182. So the *most* that Mr. Vanusanik could possibly argue under this provision is that he could have his prescription filled by Express Scripts Pharmacy. There is nothing in this provision, or anywhere else in the Plan, that would allow Mr. Vanusanik to have his Specialty mediations dispensed by any pharmacy of his choice.

**3. None of the alleged documents or conduct Mr. Vanusanik alleges can override the Plan terms.**

In light of the clear Plan terms requiring Specialty medications to be filled at Accredo, none of the other allegations in the Complaint can give rise to a plausible inference that the Plan allows Mr. Vanusanik to fill his hemophilia medication at a different pharmacy. Mr. Vanusanik first relies upon a communication sent to him by Express Scripts (attached as Exhibit B to the Complaint) to argue that he should be allowed to obtain Specialty medications from another provider. Exhibit B is titled "Notice of Internal Level One Appeal Adverse Benefit Determination" and notes: "Your plan's benefit only allows retail refills beyond the limit in situations where a member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI Pharmacy." ECF 1-2 at 2. According to Mr. Vanusanik, this language means

that his "Policy allows a Plan participant to obtain medications from a pharmacy other than Accredo so long as that pharmacy is willing to provide medications at a" cost lower than Accredo. Compl. ¶ 6.

But Exhibit B is simply a benefits determination notification that cannot alter the unambiguous terms of the Plan. Indeed, "[i]n general, benefits determination notices are themselves not plan documents." *Montoya v. Reliance Standard Life Ins. Co.*, No. 14-CV-02740-WHO, 2015 WL 884643, at *4 (N.D. Cal. Mar. 2, 2015); *see also Potter v. Blue Shield of California Life & Health Ins. Co.*, No. SACV140837DOCKESX, 2017 WL 1334289, at *6 (C.D. Cal. Apr. 7, 2017) ("the initial denial letter is not a Plan document"). The SPD specifically informs participants—under the heading "How To Use This SPD"—that the SPD will control over any benefit summaries, stating: "If there is a conflict between this SPD and any benefit summaries (other than Summaries of Material Modifications) provided to you, this SPD will control." ECF 1-1 at 14.

In *Alday v. Container Corporation of America*, the Eleventh Circuit ruled that communications from the Plan do not modify the Plan itself. 906 F.2d 660 (11th Cir. 1990). There, the plaintiff argued "that certain communications between [the plaintiff] and its employees contradicted the SPD's language and that those communications are controlling." *Id.* at 665. The Eleventh Circuit disagreed, explaining that "Congress expressly prohibited informal *written* amendments of ERISA plans under 29 U.S.C. § 1102(b)(3)," in addition to how "oral representations or promises cannot modify the clear terms of an employee benefit plan." *Id.* (emphasis in original). Thus, the court

concluded that there was "no need to refer to other communications between the parties to determine the parties' intent" because "there was an SPD which clearly functioned as the plan document required by ERISA" and "the SPD unambiguously set out the rights of the parties." *Id.* at 666; *see also Snyder v. Fed.-Mogul Corp.*, 996 F. Supp. 2d 1253, 1266 (M.D. Fla. 2014) (quoiting *Alday* to conclude: "[W]here there is a Summary Plan Description that unambiguously sets out the rights of the parties . . . it is the law of this Circuit that 'there is no need to refer to other communications between the parties to determine the parties' intent. . . . [T]he terms of the [Summary Plan Description] are controlling and other documents must be ignored.").

So too here. The SPD functions as the Plan document required by ERISA. ECF 1-1 at 12. And the SPD unambiguously says, "After the first fill, you are required to use Accredo, Express Scripts' Specialty pharmacy." ECF 1-1 at 177. Thus, under the SPD's unambiguous language, Mr. Vanusanik can only obtain Specialty medications from Accredo.

In any event, Exhibit B cannot control because Express Scripts is not the Plan sponsor. The SPD explains that "PricewaterhouseCoopers LLP is the Plan Sponsor and Plan Administrator of the PricewaterhouseCoopers LLP Health & Welfare Benefits Plan" and "[f]or purposes of claims administration of the prescription drug Benefits, the Plan Administrator has assigned fiduciary responsibility for claim determinations to Express Scripts." ECF 1-1 at 156. So at best, Express Scripts is a limited Claims Administrator.

But "an administrator lacks discretion to rewrite the Plan." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996). Although a "plan administrator may have discretion when interpreting the terms of the plan," the administrator's "interpretation may not controvert the plain language of the document." *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997); *see also Brown v. Blue Cross and Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1571 n.17 (11th Cir. 1990) (explaining that plan administrators "must adopt interpretations of plan provisions which are consistent with the *written* terms of the plan. [The plan administrator] may not justify a plan interpretation on its consistency with actual practice when the interpretation is inconsistent with the written terms concerning the practice."), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *see also* ECF 1-1 at 13 (explaining that only PwC "reserves the right, in its sole discretion, to modify, change, revise, amend or terminate the Plan at any time, for any reason, and without prior notice."). Thus, the reasons that Express Scripts lists for a denial of benefits cannot amend the Plan, and any statements Express Scripts might make do not control over Plan provisions that contradict those statements.

Because the SPD is unambiguous and because Express Scripts cannot alter the SPD's terms, Mr. Vanusanik resorts to alleging—"[u]pon information and belief"—that "the agreement between PWC and [Express Scripts] at issue here provides that there are certain circumstances in which a plan beneficiary cannot be forced to rely upon Accredo to obtain his/her medications. Accordingly the Plan Sponsor and [Express Scripts] previously permitted Mr. Vanusanik to obtain his hemophilia

medication from another pharmacy for over a year while he was a Plan participant." Compl. ¶ 24. Even if the contract between PwC and Express Scripts did say that (it does not), that contract is not the Plan, as the SPD explains that only the SPD "serves as the Plan document[.]" ECF 1-1 at 12; *see also Snyder*, 996 F. Supp. 2d at 1263 (M.D. Fla. 2014) (ruling that a settlement agreement and other non-Plan documents "are not ERISA-governed benefit plan documents, and therefore under the law of this Circuit, cannot operate to create vested health benefits.").

Finally, if Mr. Vanusanik is alleging that he was previously allowed various "overrides" to use his pharmacy of choice so he is now entitled to use his pharmacy of choice so long as that pharmacy charges less than Accredo, this claim also fails. An alleged "course of conduct cannot supersede the written provisions of a plan" because "ERISA's written instrument requirement 'essentially operates as a strong integration clause, statutorily inserted in every plan document.'" *Cummings v. City of New York*, 302 F. Supp. 3d 511, 523 (S.D.N.Y. 2017), *quoting Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002).

* * *

The Plan does not entitle Mr. Vanusanik to the benefits that he claims were denied. Thus, Mr. Vanusanik cannot state a denial-of-benefits claim under § 1132(a)(1)(B).

## II. In addition to failing to state a claim for the same reasons as Count I, Count II also fails because it has not been brought under ERISA's civil enforcement provision.

In Count II, Mr. Vanusanik asserts that PwC and Express Scripts breached their alleged fiduciary duty "to act in accordance with the terms of the Policy by requiring Mr. Vanusanik to obtain his medication only from the [Express Scripts] owned pharmacy, Accredo, which did not properly provide benefits to Mr. Vanusanik, and by not allowing Mr. Vanusanik to fill his prescriptions with pharmacies in [Express Scripts'] network, such as InfuCare." Compl. ¶ 99. In other words, Count II reasserts Count I's allegation that the Plan allows Mr. Vanusanik to use a pharmacy besides Accredo so long as that pharmacy is willing to provide medications at a cost lower than Accredo. Count II must fail, for at least three independent reasons.

***First***, while Plaintiff purports to bring Count II to enforce defendants' alleged "duty to act in accordance with the terms of the Policy (Complaint, ¶ 99), PwC and Express Scripts acted in accordance with the terms of the Plan, as set forth above. The SPD unequivocally provides that for Specialty medications, "[a]fter the first fill, you are required to use Accredo, Express Scripts' Specialty pharmacy." ECF 1-1 at 177. Thus, Express Scripts' arguments as to why Count I fails to state a claim apply equally to Count II.

***Second***, Count II is entirely duplicative of Count I. In *Harrison v. Digital Health Plan*, the Eleventh Circuit affirmed the district court's "dismissal of plaintiff's claim for breach of fiduciary duty as duplicative of Count I for recovery of medical benefits under 29 U.S.C. § 1132(a)(1)(B)." 183 F.3d 1235, 1237 n.1. "*Harrison* is by no means an outlier." *Griffin v. Blue Cross & Blue Shield Healthcare Plan of Georgia, Inc.*, 157 F. Supp. 3d 1255, 1258 (N.D. Ga. 2015) (collecting cases). The entire basis of Count II,

and the only relief sought therein, is Mr. Vanusanik's claim that he is entitled to use any provider he chooses, which he alleges is allowed under his interpretation of the Plan. Thus, Count II should be dismissed because it is duplicative of Count I and the same allegations and relief underlying a claim for benefits cannot also form the basis of a breach of fiduciary duty claim.

***Third***, although Mr. Vanusanik invokes ERISA in Count II's caption, he does not assert any claim under 29 U.S.C. § 1132(a), which is ERISA's civil enforcement provision. A private party raising an ERISA claim must do so under § 1132(a). *See Lee Mem'l Health Sys. v. Blue Cross & Blue Shield of Fla., Inc.*, 248 F. Supp. 3d 1304, 1311 (M.D. Fla. 2017) ("To bring a claim under ERISA, a plaintiff must have statutory standing, meaning the plaintiff has the right to make a claim under section [1132(a)].") (citation and internal quotation marks omitted); *see also Crowder*, 963 F.3d at 1207 ("The only parties that have standing to sue under ERISA are those listed in the civil enforcement provision of ERISA, codified at 29 U.S.C. § 1132(a).").

Here, Count II does not mention any of the permissible civil suits noted in § 1132(a). Count II does, however, mention 29 U.S.C. § 1109. Thus, Mr. Vanusanik might be trying to invoke § 1132(a)(2), which reads: "A civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." In turn, § 1109 provides: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to *the plan* resulting from each such breach . . . ." (emphasis added.). The

italicized portions of § 1109 are fatal to Count II. "Courts have consistently read the italicized language as requiring that a plaintiff pursuing § [1132](a)(2) relief do so on behalf of the plan itself, and not on behalf of an individual recipient or recipients." *Woods v. S. Co.*, 396 F. Supp. 2d 1351, 1360-61 (N.D. Ga. 2005) (collecting cases). Count II does not allege that Mr. Vanusanik is seeking to recover losses to the Plan on behalf of the Plan itself. Rather, he seeks only to recover *individual* benefits he alleges are due to *him*, which is not allowed under § 1109.

For each of these reasons, this Court should dismiss Count II.

## III. Count III is not directed at Express Scripts.

Although Count III lists in the caption that it is directed at PwC and Express Scripts, the allegations within that count are only directed at the "Plan Sponsor"—that is, PwC—for "fail[ing] to prudently monitor the activities of" Express Scripts. Compl. ¶ 103-106. The SPD makes clear that the "Plan Sponsor" is "PricewaterhouseCoopers LLP." at ECF 1-1 at 151, 156. Thus, Express Scripts is not the subject of Count III, meaning it should be dismissed as to Express Scripts. Even if Count III were directed at Express Scripts, Count III is based on Count II. Thus, Count III suffers from the same deficiencies as Count II (and in turn Count I), requiring dismissal.

## IV. Count IV fails to state a claim because it asks this Court to impermissibly rewrite the SPD.

Count IV is more of the same, seeking "a declaratory judgment from this Court that [Mr. Vanusanik] can obtain his medication from a pharmacy other than Accredo so long as that medication can be obtained at a 'cost lower than through the ESI

pharmacy.'" Compl. ¶ 112. Yet again, Mr. Vanusanik ignores settled principles of ERISA plan interpretation.

In particular, "[j]ust as the Plan administrator cannot override specific, mandatory terms, courts also are without license to alter an express, unambiguous provision[.]" , 265 F. Supp. 3d at 1329 (internal quotation marks omitted), *aff'd*, 736 F. App'x 841 (11th Cir. 2018); *see also Dewitt*, 106 F.3d at 520 (3d Cir. 1997) ("We must uphold a plan interpretation even if we disagree with it[.]"). Again, the SPD defines hemophilia as a "complex condition" and deems a medication used to treat hemophilia a "Specialty medication." ECF 1-1 at 177. The SPD explains that for Specialty medications: "After the first fill, you are required to use Accredo, Express Scripts' Specialty pharmacy." *Id.* This language is unambiguous, and the Court cannot rewrite it. *See Bryant*, 265 F. Supp. 3d at 1329. Thus, Count IV must be dismissed because, under ERISA, the Court cannot provide the relief that Mr. Vanusanik seeks.

What's more, Mr. Vanusanik has not explained whether he is asserting a state law declaratory judgment action or he is invoking the Federal Declaratory Judgment Act. Either way, Count IV fails to state a claim. If he is asserting a state law declaratory judgment action, any such action is preempted. *See Larsen v. Connecticut Gen. Life Ins. Co.*, No. 06-60949-CIV, 2006 WL 8431548, at *2 (S.D. Fla. Sept. 28, 2006) ("this Court and the Eleventh Circuit have consistently held that ERISA preempts state law declaratory judgment actions[.]") (collecting cases). If he is invoking the Federal Declaratory Judgment Act, Count IV is barred because it is

duplicative of Count I. *See Publix Super Markets, Inc. v. Figareau*, No. 8:19-CV-545-T-27AEP, 2019 WL 6311160, at *3 (M.D. Fla. Nov. 25, 2019) ("even if a declaratory judgment is available in an ERISA action, the claim is duplicative and unnecessary."); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-CV-6551 TPG, 2014 WL 4058321, at *5 (S.D.N.Y. Aug. 15, 2014) ("the court finds that plaintiffs' declaratory judgment claim is duplicative of its claim for benefits under ERISA § 502 (a)(1)(B). Defendants' motion to dismiss the declaratory judgment claims is granted.").

**Conclusion**

Express Scripts respectfully requests that this Court dismiss the Complaint.

Dated: January 15, 2021

*/s/ Shari Gerson*
SHARI GERSON, ESQ., FL Bar No. 17035
Shari.gerson@gray-robinson.com
GrayRobinson, P.A,
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Telephone: (954) 761-8111
Facsimile: (954) 761-8112

Kyle P. Seelbach (motion for admission *pro hac vice forthcoming*)
Mohsen Pasha (motion for admission *pro hac vice forthcoming*)
HUSCH BLACKWELL
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
kyle.seelbach@huschblackwell.com
mohsen.pasha@huschblackwell.com

*Attorneys for Defendant*
*Express Scripts, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day via transmission of Notices of Electronic filing generated by CM/ECF on: Harvey W. Gurland, Jr. and Morgan L. Swing, Duante Morris LLP, 201 South Biscayne Boulevard, #3400, Miami, Florida 33131, Tel: 305-960-2200, Fax 305-397-1874, Email hwgurland@dunemorris.com, mlswing@duanemorris.com, *counsel for Plaintiff;* Peter W. Zinober and S. Kathleen Massing, Ogletree, Deakins, Nash, et al., 100 N. Tampa Street, Suite 3600, Tampa, Florida 33602, Tel: 813-289-1247, Fax: 813-289-6530, Email: peter.zinober@ogletree.com, kathleen.massing@ogletreedeakins.com, *counsel for Defendant PricewaterhouseCoopers, LLC.*

**GRAYROBINSON, P.A.**

*/s/ Shari Gerson*
SHARI GERSON, ESQ.