**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CASE NO. 8:20-cv-2839-CEH-TGW

|  |  |  |
|---|---|---|
| VITALIJ VANUSANIK, | : | |
| Plaintiff, | : | |
| v. | : | |
| PRICEWATERHOUSE COOPERS LLP AND EXPRESS SCRIPTS, INC., | : | **AMENDED COMPLAINT** |
| Defendants. | : | |

Plaintiff Vitalij Vanusanik ("Mr. Vanusanik") files this Amended Complaint against

Defendants Pricewaterhouse Coopers LLP ("PWC" or the "Plan Sponsor") and Express

Scripts, Inc. ("ESI"), seeking relief, and in support thereof avers as follows:

**<u>INTRODUCTION</u>**

1.      This action arises out of (a) breaches of the Pricewaterhouse Coopers Staff

Medical Plan (the "Plan" or "Health Plan") by PWC and its agent, ESI, by denying benefits

owed under the Plan to Mr. Vanusanik as a Plan participant ("member" or "participant"); (b)

breaches of fiduciary duties owed to Mr. Vanusanik by PWC and ESI, co-Plan

administrators; and, (c) discrimination by PWC and ESI against Mr. Vanusanik based on his

disability. The Health Plan policy summary plan description ("Policy SPD"), which has been

provided to Mr. Vanusanik by PWC, is attached hereto as **<u>Exhibit A</u>**.

2.      Mr. Vanusanik suffers from the disability of severe Hemophilia A disease,

which is a life-long chronic bleeding disorder. Individuals suffering from hemophilia lack a

blood-clotting factor that is naturally present in the blood to stop bleeding. The lack of such factor in hemophiliacs causes "bleeds." "Bleeds," especially internal bleeds, can be life-threatening and lead to permanent damage to joints, muscles and organs, to the extent that they are not properly controlled. Thus, it is absolutely crucial that hemophiliacs, like Mr. Vanusanik, who experience spontaneous bleeds are able to access a pharmacist who specializes in hemophilia and obtain guidance on hemophilia complications, side effects, and medication they need to prevent and/or stop these bleeds in an efficient and timely manner.

3.      Mr. Vanusanik is entitled to receive the benefits authorized to him as a participant in the Plan.  The Plan allows participants to receive specialty medications. Hemophilia is a condition designated by PWC and ESI as requiring "specialty medication." While the Policy SPD provides that specialty medications should be obtained from ESI-owned pharmacy, Accredo, Accredo has repeatedly failed and refused to provide such medications to Mr. Vanusanik in breach of the Policy SPD.

4.      Unable or unwilling to provide Mr. Vanusanik with his hemophilia medication, PWC and ESI advised Mr. Vanusanik that he was allowed to obtain his hemophilia medication from a pharmacy of his choice other than Accredo. PWC and ESI advised Mr. Vanusanik repeatedly by telephone that his Plan would allow for overrides allowing him to have his hemophilia medication filled by a pharmacy that specialized in and was far more capable to care for his hemophilia disability. Additionally, ESI reiterated in writing to Mr. Vanusanik that his Health Plan allows a participant to obtain medications from his pharmacy of choice, other than Accredo, so long as that pharmacy is willing to provide medications at a "cost lower than through the ESI pharmacy [i.e. Accredo]." *See* ESI

2

Benefits Determination, March 24, 2020 and ESI Benefits Determination, April 16, 2020, attached hereto as **Exhibits B and C, respectively**.

5.      In accordance with their representations to Mr. Vanusanik that his Plan allowed him to obtain his medications from a pharmacy other than Accredo, Mr. Vanusanik, for over a year, obtained his medication from a pharmacy specializing in patients with hemophilia. However, on or about March 2020, ESI and PWC refused to allow Mr. Vanusanik to continue to obtain his hemophilia medication from his pharmacy of choice, which had filled it without issue or interruption for approximately a year. PWC and ESI advised Mr. Vanusanik that he could only obtain his hemophilia medication from ESI-owned pharmacy, Accredo.

6.      Representations by ESI and PWC that Mr. Vanusanik's Plan, as of March 2020, required that he obtain mediations from Accredo were false. Having allowed him to obtain his medications from his pharmacy of choice for over a year, and having confirmed his right to do so, both by telephone and in writing on multiple occasions, the representation by both PWC and ESI that the Plan required he utilize Accredo were materially false.

7.      PWC and ESI have, by their own conduct, conversations with Mr. Vanusanik and in writing to him, interpreted the Health Plan as providing a benefit to Mr. Vanusanik in which he is permitted to obtain his hemophilia medication from a pharmacy other than Accredo. By now refusing to allow Mr. Vanusanik to continue obtaining his hemophilia medication from his pharmacy of choice, PWC and ESI have violated the Employee Retirement Income Security Act of 1974 ("ERISA")  by denying Mr. Vanusanik the benefits owed to him under the Health Plan.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

8.      Additionally, as co-administrators of the Plan, PWC and ESI bear fiduciary responsibilities to ensure that Plan participants, such as Mr. Vanusanik, receive adequate medical care. However, both the Plan Sponsor and its agent, co-Plan Administrator ESI, as co-fiduciaries under the Health Plan, have repeatedly failed to comply with their obligations owed to Mr. Vanusanik.  PWC and ESI have repeatedly failed to ensure that Mr. Vanusanik's hemophilia was in stock with Accredo, timely delivered, and delivered in the correct dosage amount. Moreover, despite previously allowing another pharmacy to fill his medications, and providing in writing that he was permitted to do so, ESI now refuses to allow Mr. Vanusanik to continue the use of a pharmacy other than Accredo. Further, PWC and ESI have repeatedly failed to provide appropriate assistance regarding complications he has experienced with his hemophilia medication to Mr. Vanusanik. And both, despite owing fiduciary responsibilities to Mr. Vanusanik, have even failed to notify him of benefits to which he is entitled under the Health Plan to address these complications, likewise breaching the fiduciary duties they owe to him.

9.      Further, by now denying Mr. Vanusanik the ability to obtain medications from his pharmacy of choice, after repeatedly allowing him to do so under the Plan, PWC and ESI are discriminating against Mr. Vanusanik. Requiring that he now obtain his hemophilia medication from Accredo, while not requiring that Plan members not suffering from hemophilia obtain medication from their pharmacy of choice denies Mr. Vanusanik meaningful access to the hemophilia medication to which Mr. Vanusanik is legally entitled under the Plan. While Mr. Vanusanik, a patient who requires timely prescriptions and consultation from knowledgeable health professionals to obtain medication and guidance for

4

his life-threatening condition is now required to use Accredo, plan beneficiaries who do not take what ESI has deemed a "specialty" medication are allowed to obtain their prescriptions from any pharmacy of their choice within the ESI network.

10.     Therefore, PWC and its agent and co-Plan administrator, ESI, have (a) failed to provide Mr. Vanusanik the benefits to which he is entitled under the Health Plan in violation of ERISA; (b) repeatedly breached fiduciary duties owed to Mr. Vanusanik; (c) discriminated against Mr. Vanusanik in violation of federal law; and, (d) repeatedly put his life at risk.

## PARTIES

11.     Mr. Vanusanik is a resident of Florida, residing in Tampa, Florida.

12.      Mr. Vanusanik is a participant in the Pricewaterhouse Coopers Staff Medical Plan, which is administered by non-party United Healthcare, Inc.

13.     Pricewaterhouse Coopers LLP is a professional partnership whose registered address is in New York, New York.

14.     In connection with the Plan, Pricewaterhouse Coopers LLP has engaged the pharmacy benefit manager ("PBM"), ESI, to administer pharmacy benefits to member-insureds. Upon information and belief, ESI is a Delaware corporation and a subsidiary of Express Scripts Holding Company. At all relevant times, ESI was acting as PWC's co-Plan administrator and agent and "[f]or purposes of claims administration of the prescription drug Benefits, the Plan [Sponsor] has assigned fiduciary responsibility for claim determinations to Express Scripts." *See* **Exhibit A** at 147.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

15.     Non-party Accredo Health Group, Inc. ("Accredo") is a specialty and mail order pharmacy that is wholly-owned by Express Scripts Holding Company with headquarters in Memphis, Tennessee.

## JURISDICTION AND VENUE

16.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution, laws, or treaties of the United States.

17.     The Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(f), which grants the District Courts of the United States jurisdiction to grant the relief provided for in § 1132(a) regarding a beneficiary's action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

18.     Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) as this action may be brought "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]" Mr. Vanusanik resides in the Middle District of Florida, and the Health Plan was administered within the Middle District of Florida.

## FACTUAL BACKGROUND

### I.     PHARMACY BENEFIT MANAGERS' ROLES WITH HEALTH INSURERS

19.     Pharmacy benefit managers ("PBMs"), including Defendant ESI, are engaged by health insurers and self-funded employers, such as Defendant PWC, as their agents, to administer and manage prescription drug plans.

6

20.     Contracts between plan sponsors and PBMs afford PBMs, as agents of the plan sponsor, substantial discretion to make decisions affecting the way in which the health plan will be administered. For example, PBMs control administrative aspects of the prescription drug plan portion of the health plan including, but not limited to, pharmacy network design, network-pharmacy claims processing, benefit-design consultation, drug utilization review, formulary management, medication and drug data analysis services, setting reimbursement rates that pharmacies receive for providing medications, comprehensive patient case support services to plan beneficiaries and, importantly, drug benefit coverage determinations.

21.     The PBM market is highly concentrated with three PBMs (CVS Caremark, ESI and OptumRx) controlling 85% of the market share for PBM services.  *See* "The White House Council of Economic Advisors, White Paper, Reforming Biopharmaceutical Pricing at Home and Abroad" (February 2018). The White House Council of Economic Advisors determined that the "big three" PBMs' control of the PBM market "allows them to exercise undue market power against manufacturers and against health plans and beneficiaries they are supposed to be representing, thus generating outsized profits for themselves." *Id*.

22.     The largest PBMs own their own specialty and mail order pharmacies. As such, it is not uncommon for PBMs to enter into agreements with plan sponsors requiring that their beneficiaries be required under certain circumstances to use their own affiliated mail-order pharmacies instead of other, independent pharmacies, and financially penalize plan beneficiaries if they do not obtain their medications from the PBM's affiliated pharmacy.

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

23.     Accredo is a specialty and mail order pharmacy that is wholly-owned by Express Scripts Holding Company. ESI benefits financially from every prescription dispensed by Accredo.

24.     At all relevant times, PWC engaged ESI as its agent to administer its prescription drug plan as part of the Health Plan.

25.     As implemented by PWC and ESI, the Health Plan provides for certain circumstances in which a plan beneficiary cannot be forced to rely upon Accredo to obtain his/her specialty medications. While these circumstances are not indicated in the Policy SPD provided to Mr. Vanusanik, both PWC and ESI have repeatedly represented to Mr. Vanusanik by phone and in writing that he can obtain his hemophilia medication at a pharmacy other than Accredo. Accordingly, consistent with this benefit, the Plan Sponsor and ESI previously permitted Mr. Vanusanik to obtain his hemophilia medication from another pharmacy for over a year while he was a Plan participant.

## II.     MR. VANUSANIK'S TRAUMATIC HISTORY WITH PWC, ESI, AND ACCREDO

26.     On or about July 1, 2018, Mr. Vanusanik became a participant of the Health Plan.

27.     Upon enrolling in the Health Plan, Mr. Vanusanik was advised by PWC and ESI that he could no longer utilize the pharmacy of choice to fill his hemophilia medications and was required to utilize Accredo for such fills. The Policy SPD provided to Mr. Vanusanik states that specialty medications (medications "that are used to treat complex

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

conditions") (*See* **Exhibit A** at 168), such as hemophilia, must be obtained by Plan participants from ESI-owned pharmacy, Accredo.

28.     While this Policy SPD purports to require that specialty medications be obtained from Accredo, both ESI and PWC repeatedly advised Mr. Vanusanik that the Plan did not require such limitations. On the contrary, both PWC and ESI repeatedly told Mr. Vanusanik, verbally and in writing, that he can utilize any in-network pharmacy of his choice so long as that pharmacy will provide his hemophilia medication at a "cost lower than through the ESI pharmacy." *See, e.g.*, **Exhibit B**.

29.     Immediately after being required to transfer his hemophilia medication to Accredo, Mr. Vanusanik experienced significant and life-threatening problems due to Accredo's total inability to, and incompetence in, filling his medication. Accredo failed to timely and accurately fill and deliver his medication, repeatedly triggering life-threatening complications for Mr. Vanusanik.

30.     Initially, in July 2018, it took almost a week of Mr. Vanusanik speaking daily with Accredo representatives to determine whether Accredo would accept copayment assistance, to which Mr. Vanusanik is both entitled and relies upon. This delayed Accredo's filling of his medication for two to three weeks after he was due for a refill. For an individual who experiences spontaneous bleeds, and therefore cannot miss a dose without risking catastrophic, disabling consequences, this delay genuinely put Mr. Vanusanik's life at risk.

31.     During this delay, Mr. Vanusanik repeatedly sought assistance from individuals employed by Accredo who had experience dealing with hemophiliacs and could expedite providing his medication. However, despite being guaranteed "personal health

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

support," (**Exhibit A** at p. 23) Accredo refused to connect him with someone who understood that his hemophilia medication regimen could not be interrupted. Instead, Accredo would only allow him to speak to a general customer service representative from a call center who knew nothing at all about hemophilia despite the Policy SPD's requirement of "personal health support." Accredo, being a specialty pharmacy, should have been aware of the extraordinary care that hemophiliacs require, including the need for timely receipt of initial fills and refills of life-sustaining medication.

32.     PWC, which is a Plan Sponsor and responsible for the acts of its agents, also should have been aware that Mr. Vanusanik was not receiving the necessary support provided for in the Policy SPD. Mr. Vanusanik's request for assistance, which included communications about how his health was at risk should he not timely receive his medication, certainly placed PWC and ESI on notice that he was in need of "personal health support." Yet, neither fiduciary ever advised Mr. Vanusanik of his entitlement under the Plan to have personal health support for participant "living with a chronic condition or dealing with complex health care needs."

33.     In July 2018, Mr. Vanusanik ran out of his hemophilia medication while he was waiting for it to be filled and delivered by Accredo. Mr. Vanusanik contacted Accredo, making clear that its delay in confirming that it would accept copayment assistance would lead to him running out of medication. Yet, it callously allowed that to happen telling him that if he had any issues with its inability to timely provide his medication to "just go to the E.R.". And, as expected, the failure to have his medication refilled in a timely manner resulted in Mr. Vanusanik suffering a life-threatening event. He experienced a bleed, leading

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

to joint swelling and leaving him in immense pain, unable to eat and sleep, to the point that

he was required to take opioid pain medication in an attempt to ease his excruciating pain.

34.     When Mr. Vanusanik realized that Accredo would fail to timely deliver his

refill, he was actually forced to contact the manufacturer of his medication in a desperate

attempt to obtain directly from the manufacturer an emergency supply of his medication.

Thankfully, the manufacturer agreed to provide an emergency dosage of his medication until

Accredo, PWC and ESI's designated pharmacy, dispensed the medication.

35.     Upon information and belief, because of the significant and often life-

threatening health risks of hemophiliacs going without medication to control bleeds, many

drug manufacturers will supply small, emergency doses to individuals registered with their

copayment assistance programs in the instance of insurance coverage gaps.

36.     The following month, in August 2018, Mr. Vanusanik contacted Accredo to

obtain another refill of his medication. At the time he requested this refill, Mr. Vanusanik

was again told that there would be yet another delay delivering his medication. Mr.

Vanusanik was simply told by a general customer service representative of Accredo that his

medication was out of stock and would be out of stock for two (2) weeks! Again, Accredo (as

well as PWC and ESI) clearly knew that a failure to timely refill his medication put Mr.

Vanusanik's life at risk. Yet, neither ESI nor PWC offered any assistance for him to timely

receive his refills.

37.     Approximately two (2) weeks after his hemophilia medication refill was due,

Mr. Vanusanik finally received his refill. However, he simultaneously received a totally

inaccurate invoice from ESI-owned pharmacy, Accredo for almost *$100,000* for the

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

medication that unquestionably was covered by his Plan. Mr. Vanusanik is an individual with limited financial means, and this invoice understandably caused him to suffer severe emotional distress. It took weeks of phone calls with Accredo representatives, which included requiring that he establish that all of his deductibles and out-of-pocket costs had been satisfied, for Mr. Vanusanik to convince Accredo of its obvious error and cancel the erroneous bill.

38.     Despite all of this effort and the hours of time spent addressing this issue, the very next month, in September 2018, Accredo again inaccurately invoiced him for almost $100,000 in connection with a refill of his medication. Again, it took a week of daily phone calls with Accredo representatives for Mr. Vanusanik to convince Accredo to properly withdraw the erroneous bill that caused significant distress to Mr. Vanusanik.

39.     PWC and ESI's designated pharmacy repeatedly and consistently failed to provide any support to Mr. Vanusanik, failed to timely provide his life-sustaining medication, and inaccurately billed him by falsely representing that he owed hundreds of thousands of dollars for the medications covered by the Health Plan.

40.     As a precaution, in September 2018 Mr. Vanusanik called Accredo at least a week prior to when his medication was again due for a refill to ensure that his medication would arrive before he ran out of his current month's supply. During that call, he was assured by an Accredo representative that his medication would be received the next day. However, that representation was likewise false. Mr. Vanusanik did not receive his medication for over a week after that call without any explanation whatsoever from Accredo for the delay.  Once

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

again, PWC and ESI failed to abide by the requirements under the Policy to provide medications in a timely manner.

41.     In October 2018, again fearing delays in receiving refills of his medication, Mr. Vanusanik contacted Accredo weeks ahead of when he was due for a refill.  While Accredo refilled his medication Accredo's refill was the wrong dosage. Mr. Vanusanik's prescription called for two vials of 3,000 assay units of Novoeight to be infused and injected every other day, for a total dose of 6,000 assay units.

42.     Instead, Accredo sent Mr. Vanusanik 4,500 assay units per dose, approximately 1,500 assay units short of his prescribed dosage.  Had Mr. Vanusanik been less diligent in his self-care, such an error could have been catastrophic to Mr. Vanusanik's health. For example, not having sufficient medication would ultimately have led to a bleed, followed by likely hospitalization and days of incapacitation.

43.     During this time period, Mr. Vanusanik requested emergency doses of his medication because he was suffering bleeds. On these occasions, it would take Accredo too long to process and send the emergency doses of his medication. As a result, and as anticipated with the wrong dosage of medication, Mr. Vanusanik was forced to go to a local hospital on multiple occasions.

44.     From August 2018 to September 2018, Accredo also informed Mr. Vanusanik that his medication was not in stock and that Accredo needed to order the medication from its supplier before it could be shipped to Mr. Vanusanik. Mr. Vanusanik's refills were repeatedly delayed. These delays, from a specialty pharmacy assigned exclusively to Plan participants by PWC and ESI, is unacceptable and obviously represents a breach of the

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

Plan's obligations to timely and appropriately provide medications to Plan participants and a level of care far below what is guaranteed by the Policy SPD.

45.     Between July and October 2018, when Mr. Vanusanik received medication from Accredo, no representative of Accredo ever called or otherwise contacted him to see how he was doing. It is common-place for pharmacies servicing hemophiliacs to keep in regular contact with these patients as they need continual monitoring and consistent treatment regimens. Such contact ensures that, among other things, the patient's supply of medication is sufficient, the dispensed medication appears to be effective, and the patient has no adverse reaction to the medication.

46.     Mr. Vanusanik experienced this level of service from every pharmacy he has ever utilized to obtain his hemophilia medication with the exception of Accredo. The Policy SPD explicitly provides for such support by way of a Personal Health Support Nurse for participants "living with a chronic condition or dealing with complex health care needs." **Exhibit A** at 23. The Personal Health Support Nurse is required to "provide a variety of different services to help you and your covered family member receive appropriate medical care." However, at no point in time did either PWC or ESI, although fully aware of Mr. Vanusanik's fragile health condition and need for additional support, and which are responsible for ensuring the administration of benefits under the Health Plan and as Mr. Vanusanik's fiduciaries, provide Mr. Vanusanik with any of the promised "appropriate medical care." Further, PWC and ESI did not advise him that such benefits were available under the Policy SPD, regardless of whether Mr. Vanusanik had the Policy SPD in his possession.

14

### III.   THE HEALTH PLAN ALLOWS MR. VANUSANIK TO USE AN IN-NETWORK PHARMACY OTHER THAN ACCREDO

47.     Recognizing its inability to properly care for Mr. Vanusanik, from November 2018 through February 2020, ESI and PWC advised Mr. Vanusanik that his Health Plan allows him to fill his prescriptions from an in-network pharmacy other than Accredo.

48.     Upon information and belief, the full Health Plan provides for certain circumstances in which Plan participants may obtain specialty medications from pharmacy providers other than Accredo. Accordingly, despite a statement in the Policy SPD that specialty medications must be obtained only from Accredo, ESI and PWC, for over a year, interpreted and implemented the Health Plan to permit Mr. Vanusanik to obtain his specialty drugs from pharmacies other than Accredo.

49.     In November 2018, ESI and PWC deviated from the statement in the Policy SPD advising Mr. Vanusanik that the Plan allowed him to transfer his hemophilia prescription from Accredo to another pharmacy –  Factor One Source Pharmacy d/b/a InfuCareRx ("InfuCare").

50.     InfuCare is an in-network retail and specialty pharmacy with ESI.  InfuCare is a pharmacy accredited by the two largest independent pharmacy accreditation bodies – URAC (previously known as Utilization Review Accreditation Commission) and Accreditation Commission for Health Care. Such accreditations are only awarded to the most reliable and prestigious pharmacies which "demonstrate the highest value in delivering enhanced clinical services." *See*, URAC, Long-Lasting Benefits, available at urac.org.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

51.     InfuCare also specializes in home infusion of blood clotting factor and intravenous immunoglobulin medications for its patients suffering from hemophilia and other bleeding disorders. InfuCare is a Florida-licensed pharmacy.

52.     Most importantly, InfuCare provides Mr. Vanusanik with a team of dedicated professionals to assist him in his hemophilia treatment. These professionals include pharmacists, nurses, and social workers with whom Mr. Vanusanik has long-standing relationships. InfuCare's team of professionals guides its patients through each step of their treatment processes and has dedicated case coordinators and nurses so the patients always have a dedicated individual they can call with any and all questions and issues. Because InfuCare is a pharmacy dedicated to hemophilia treatment, its procurement and handling of hemophilia medications is far superior to other pharmacies that do not specially focus on hemophilia treatment. Accordingly, InfuCare has always provided Mr. Vanusanik with his medication in a timely manner and offers staff support to Mr. Vanusanik twenty-four (24) hours a day, seven (7) days per week.

53.     Accredo does not provide any of the services provided by InfuCare and they were never offered to Mr. Vanusanik. However, the Policy SPD does. The Policy SPD allows for benefits on the medical side and administered by United Healthcare. Despite fiduciary duties owed by PWC and ESI to notify Mr. Vanusanik of available support to obtain "appropriate medical care," both failed to advise him of this benefit. And the absence of these services is a breach of the Policy's requirement to provide all participants with access to "appropriate medical care."

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

54.     In light of Accredo's inability to timely provide life-sustaining medication to Mr. Vanusanik, providing him the wrong dosages of such medications, mailing him erroneous bills, and providing absolutely no clinical support, in February 2019 Mr. Vanusanik requested that PWC's agent and co-Plan Administrator, ESI, allow his medication to continue to be filled by InfuCare. The Plan Sponsor and ESI allowed Mr. Vanusanik, under the Plan to obtain his medication from InfuCare **for a period of one year, between February 2019 and February 2020**, in order to access the Health Plan benefits to which he is entitled.

## IV.     THE HEALTH PLAN AGAIN REQUIRES MR. VANUSANIK TO OBTAIN MEDICATION FROM ACCREDO, WHICH VIOLATES THE POLICY, AND MR. VANUSANIK'S PRIVACY RIGHTS HAVE ALSO BEEN VIOLATED

55.     At no point in time has either PWC or ESI claimed that any changes have been made to the pharmacy benefit plan design portion of the Health Plan throughout Mr. Vanusanik's participation in the Plan.

56.     Nevertheless, in March 2020, when InfuCare attempted to refill Mr. Vanusanik's monthly medication, ESI denied InfuCare's request to refill Mr. Vanusanik's medication. Mr. Vanusanik and InfuCare contacted ESI, requesting that InfuCare be permitted to continue to fill his medication. By the time these requests were denied, Mr. Vanusanik was again out of his medication. No explanation was provided by either ESI or PWC for this denial.

57.     On or around March 17, 2020, Mr. Vanusanik, through his physician Christopher Walsh, M.D., submitted a formal appeal of ESI's denial.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

58.     On March 24, 2020, Mr. Vanusanik received a denial of his appeal on the sole basis that his "plan's benefit only allows retail refills beyond the limit in situations where a member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI Pharmacy." *See* **Exhibit B**.

59.     At that time, InfuCare was ready, willing, and able to fill Mr. Vanusanik's medication "for a lower cost than through the ESI Pharmacy."

60.     During this March 2020 period, while Mr. Vanusanik was appealing to ESI seeking an override to obtain his medication from his preferred pharmacy, InfuCare, Mr. Vanusanik was advised, for the first time in over a year that the Plan required that he obtain his medication through Accredo. ESI and PWC took this position despite previously advising that his Plan allowed him to obtain his medication from a pharmacy other than Accredo and approved another pharmacy to fill his medication for over a year.

61.     Upon learning of the denials to refill his medication with InfuCare, Mr. Vanusanik called Accredo to place a prescription order. Accredo stated that the ***earliest*** it would be able to deliver his medication ***would be seven days later***— again, leaving Mr. Vanusanik without his medication and at risk of a bleed. When Mr. Vanusanik asked if Accredo was aware that its actions could result in him having a bleed, the only response Mr. Vanusanik received from a general customer service representative was that until the medication was in stock, there was nothing Accredo could do for him.

62.     After Mr. Vanusanik pled with ESI to allow InfuCare to provide him a refill of his out of stock medication, ESI, knowing that it failed to provide Mr. Vanusanik with the

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

Plan benefit, allowed another override for Mr. Vanusanik to obtain his monthly medication from InfuCare in March 2020 while his appeal was pending.

63.     In April 2020, Mr. Vanusanik's hematologist's office called and asked him if he authorized the doctor to send his prescription to Accredo because Accredo called the doctor's office and requested it. Mr. Vanusanik never provided Accredo permission to contact his doctor.  On April 14, 2020, Mr. Vanusanik called Accredo which admitted it did not have express permission to contact Mr. Vanusanik's doctor.

64.     Specifically, during this conversation, Accredo asked Mr. Vanusanik if there was any other individual with whom Accredo could discuss his health information. Mr. Vanusanik said there was not, that he was the only one with whom Accredo could speak about his health information, and that his phone number was the only number that they should have in his file.

65.     On this call, despite its admission that it called Mr. Vanusanik's doctor without Mr. Vanusanik's express permission, Accredo insisted on taking the order for Mr. Vanusanik's April medication refill. Reluctantly, Mr. Vanusanik authorized the prescription order, but during the order process, Accredo informed Mr. Vanusanik that the medication, again, would be delayed and not arrive for at least seven to ten days as Accredo, again, did not have his medication in stock.  Because of an immediate need to have medication in his possession in case of a bleed, and recognizing that once again ESI was unable to provide the Plan benefit, he was once again permitted an override and InfuCare filled the prescription.

66.     Despite the override permitted for April 2020, again in attempts to avoid having to go through the ordeal of placing an order with Accredo only to learn that Accredo

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

lacks the ability to properly service him, on April 15, 2020, Mr. Vanusanik submitted another appeal to ESI explicitly stating that he was seeking to have his preferred pharmacy, InfuCare, refill the medication and do so at a lower cost than the ESI-owned pharmacy, Accredo, as was previously requested by Mr. Vanusanik and repeatedly allowed by ESI and PWC as a benefit under his Plan.

67.     However, on April 16, 2020, ESI, denied Mr. Vanusanik's appeal stating his "plan's benefit only allows retail refills beyond the limit in situations where a member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI Pharmacy." A copy of the appeal denial is attached hereto as **Exhibit C**. ESI's response to both appeals is unquestionably wrong.  InfuCare and Mr. Vanusanik have advised ESI that InfuCare is ready, willing and able to fill Mr. Vanusanik's medication for a cost less than ESI's pharmacy, Accredo.

68.     Despite ESI's repeated statement that Mr. Vanusanik's "plan's benefit only allows retail refills beyond the limit in situations where a member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI Pharmacy," ESI and PWC claim that this statement was not true. For over a year, both ESI and PWC allowed Mr. Vanusanik to obtain his hemophilia medication from his pharmacy of choice. Neither ESI nor PWC have yet explained why, in light of over a year of overrides and explicitly stating in writing that Mr. Vanusanik's Plan permits the use of a pharmacy other than Accredo, his Policy SPD requires that he only use Accredo, particularly when InfuCare is ready, willing and able to fill his medication for a "lower cost than through the ESI Pharmacy[,]" despite numerous requests for such information.  *See* **Exhibit D**.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

69.     ESI's insistence that Mr. Vanusanik now use only Accredo to obtain his hemophilia medications, when Accredo is incapable of doing so, and after it was repeatedly represented that Mr. Vanusanik could utilize another pharmacy was an intentionally misleading representation.  On information and belief this was done to steer Mr. Vanusanik to the ESI-owned pharmacy, from which ESI would profit, thereby putting its own financial interest ahead of the duty of loyalty owed to Mr. Vanusanik as a Plan participant.

70.     On May 6, 2020, Mr. Vanusanik submitted an **URGENT** appeal for external review, again reemphasizing InfuCare's willingness to timely and accurately dispense Mr. Vanusanik's medication and at a cost less than the amount charged by ESI's pharmacy, Accredo. That appeal was also denied.

71.     Additionally, in May 2020, Mr. Vanusanik learned that Accredo violated Mr. Vanusanik's rights under HIPAA and the Policy's guarantee of confidentiality of protected health information.

72.     Specifically, despite the explicit conversation in April 2020 in which Mr. Vanusanik stated that Accredo was not at liberty to discuss his personal health information with any person other than Mr. Vanusanik, an Accredo representative called Mr. Vanusanik's wife's cell phone number without verifying it was the correct number for *Mr.* Vanusanik. Indeed, the only authorized phone number Mr. Vanusanik provided to Accredo was his personal cell phone. The representative left a voicemail message with Mr. Vanusanik's diagnosis and other personal health information on his wife's phone, which number was on file with the Health Plan as the primary beneficiary of the Policy. However, his wife's phone, at the time of this call, was not in Mr. Vanusanik's wife's possession but was held by her

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

acquaintance, who heard the information left on the voicemail, and to whom Mr. Vanusanik had not, and would not, reveal any of his personal health information. Mr. Vanusanik never authorized Accredo to call any phone number, let alone to leave personal, protected health information on a phone other than his own.

73.     Mr. Vanusanik now has no choice but to disclose the above and his underlying health condition in this Complaint in order to protect his health.

74.     In June 2020, Mr. Vanusanik attempted to seek another override to obtain his medication from InfuCare. At this point, Mr. Vanusanik was told he would not be afforded any further overrides. However, rather than being told that Accredo did not have his medication in stock, Accredo shipped a smaller dosage of his prescription, only affording him enough medication for approximately one week. Ordinarily, one dosage of Mr. Vanusanik's medication is contained in two vials.  This partial shipment consisted of five (5) vials per dose. Not only was this shipment incomplete, but the increased number of vials required that Mr. Vanusanik increase his frequency of self-injections, causing additional pain and discomfort.

75.     The more vials that are dispensed, the more injections that are required, again causing potential health risks to the patient. In the case of Mr. Vanusanik, his veins, from injecting medication so often, are fragile. The more medication he is required to inject, the more risk is posed to Mr. Vanusanik in the form of clogged or ruptured veins.

76.     When Mr. Vanusanik called Accredo to seek the additional medication required by his prescription, he was told that the complete prescription could not be filled at that time and was actually asked if he would be willing to switch his medication – a

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

completely inappropriate request from a pharmacy helpdesk employee who, on information and belief, has no medical training and was acting in violation of state or federal law by attempting to offer a medical opinion on Mr. Vanusanik's health condition.

77.     Mr. Vanusanik understandably declined to engage in a discussion with a general customer service representative about switching his life-sustaining medication. He then asked for an override to allow InfuCare, again, to properly and completely dispense his medication.  He was explicitly told he would not receive any additional overrides. When he asked Accredo if he did not have sufficient medication what he should do in case of a bleed, Accredo callously told him, "go to the emergency room."

78.     In fact, Mr. Vanusanik did experience a major bleed in June 2020 due to the shortage of medication provided by Accredo.  This bleed led to severe swelling in his knee joints leaving Mr. Vanusanik incapacitated, unable to walk for seven (7) days, and unable to properly work, eat, or sleep. And, again, he experienced such unbearable pain necessitating opioid pain killers until he obtained his next shipment of factor medication.

79.     Unfortunately, the actions of Accredo and the failure to timely deliver medication and to provide the correct dose, are not inconsequential. Accredo's inexplicable misconduct in filling Mr. Vanusanik's medication to treat his disability could literally threaten Mr. Vanusanik's life.

80.     Had the co-Plan Administrator and the Plan Sponsor complied with the Policy and provided Mr. Vanusanik his benefit of access to a dedicated Personal Health Support Nurse, these occurrences would have been avoided.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

81.     Had the Plan Sponsor and its co-Plan Administrator, ESI, permitted Mr. Vanusanik to obtain his medication from another network provider as was represented to him by ESI as a benefit option, these life-threatening occurrences would have been avoided.

82.     Despite the fact that InfuCare has confirmed to ESI, on numerous occasions, that it is willing to charge less than the amount charged by "the ESI Pharmacy [Accredo]," ESI has continued to deny Mr. Vanusanik's appeals and refused to allow InfuCare to fill his prescriptions.

## V.     THE HEALTH PLAN POLICY GUARANTEES SPECIFIC BENEFITS

### A.     The Health Plan's Policy Entitles Mr. Vanusanik To "Appropriate Medical Care"

83.      A health plan's policy documents, including the summary plan description and the summary of benefits and coverage, explain to plan beneficiaries, generally, what the plan provides and how it operates. If a plan is changed, participants must be informed, either through a revised summary plan description, or through a summary of material modifications.

84.     The Health Plan's Policy SPD assures existing and prospective participants that, among other things, they are entitled to a "variety of different services to help you and your covered family members receive appropriate medical care." Ex. A at 23.

85.     Specifically, this benefit is provided through a Policy SPD provision entitled "Personal Health Support."  The Personal Health Support program provides participants living with a chronic condition or dealing with complex health care needs, such as hemophilia, a Personal Health Support Nurse to guide the participant through their treatment.

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

86.     The Policy SPD additionally provides for, as part of this program, risk management services, which according to the Policy SPD, includes access to medical specialists, medication information, and coordination of equipment and supplies. The Policy SPD further provides that participants may receive a phone call from a primary medical contact to discuss important health care information related to the participant's specific chronic or complex condition.

87.     Hemophilia is a disabling condition that requires an extraordinary level of care—more than a pharmacy simply putting pills in a bottle. Among other things, it requires continuous monitoring to ensure the individual does not have spontaneous bleeds, analysis of medication dosages to ensure sufficient clotting factor is being received, and the ability to provide emergency medication in the event of a bleed.

88.      Despite his chronic condition and the availability of support services under the Policy SPD, Mr. Vanusanik was never provided such support. At no point in time, was Mr. Vanusanik contacted by ESI or PWC to determine if extra support services were needed due to his chronic condition. Nor was Mr. Vanusanik offered a dedicated medical contact or Personal Health Support Nurse with whom he could discuss his condition and treatment regimen. Mr. Vanusanik repeatedly requested this support, but it was never provided.

89.     While this is a benefit on the medical side of the Policy SPD and not the pharmacy side, PWC and ESI, as co-Plan Administrators, were responsible for ensuring "appropriate medical care" for the Plan participant in general. PWC and ESI, as fiduciaries had an affirmative duty to provide Mr. Vanusanik, the Plan participant, material information affecting his interest and well-being.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

90.     When Mr. Vanusanik contacted Accredo about obtaining his hemophilia medication, which requires a sophisticated understanding of the correct dosage amounts, drug interactions, blood clotting concerns, and the amount of injections of medication that can only be administered intravenously, he was always connected to a general customer service representative who had no knowledge of hemophilia medication requirements and risk factors.

91.     Accredo, being a pharmacy that dispenses specialty medications for complex and chronic conditions, undoubtedly recognizes that extraordinary care is required for hemophiliacs, yet it failed to provide such services to Mr. Vanusanik.

92.     Mr. Vanusanik has been denied the specific benefit of receipt of "appropriate medical care" guaranteed under the Policy SPD.

**B.      The Health Plan's Policy Provides Mr. Vanusanik The Right To Obtain His Medication From An In-Network Pharmacy Provider**

93.     In addition to the above guarantee, the Health Plan's Policy SPD assures existing and prospective participants that prescription medication will be covered by the Health Plan and that such prescriptions will be appropriately and timely filled by pharmacies in the network. The Policy SPD provides for coverage of such prescription medication at in-network pharmacies. It additionally provides for protections against disclosure of protected health information.

94.     Specifically, among other things, the Health Plan's Policy SPD provides the following:

a.   Allowance for Covered drugs up to a "30-day supply . . . [as] Covered drugs include . . . drugs that require a prescription by law." *Id.* at 174.

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

b. "Prescription drug coverage provides up to a 30-day supply of medication when filled through a participating retail pharmacy." *Id.* at 170.

c. "[Insureds] may refill [their] prescription at a retail pharmacy when [they] have used 75% of the medication since [their] last fill (for example, [they] may refill a 30 day supply of medication after 23 days have passed since [their] last fill)." *Id.*

d. "If [insureds] use long-term medications for a chronic condition . . . [they] ***can*** have [their] prescriptions filled through the Express Scripts Pharmacy home delivery service." *Id.* at 172 (emphasis added) (making clear that there is no requirement to have the prescriptions filled through Accredo under the Plan).

e. "The Plans and their business associates have developed reasonable and appropriate safeguards to protect the privacy and security of [insureds'] health information. These individuals are trained on appropriate protections for [insureds'] information. **[The Plan and Plan Sponsor] restrict access to [insureds'] [Personal Health Information ("PHI")] to authorized individuals who need that information for specific permitted purposes. [The Plan and Plan Sponsor] maintain technical, physical and administrative safeguards to ensure the privacy of your PHI.**" *Id.* at 155 (emphasis added).

95.     Contrary to repeated representations in the Policy SPD that insureds can rely on the Health Plan and pharmacies in the ESI network, PWC and ESI repeatedly failed to

27

abide by their fiduciary and contractual obligations by attempting to limit Mr. Vanusanik to obtaining his medication only from Accredo.

96.     Accordingly, Mr. Vanusanik has been denied benefits under the Health Plan and seeks to enforce his rights under the terms of the Health Plan.  Mr. Vanusanik also wishes to clarify his rights to future benefits under the terms of the Health Plan.

97.     To the extent that the Health Plan does not explicitly define situations in which a Plan participant can obtain specialty medications from a pharmacy other than Accredo, Mr. Vanusanik seeks to enjoin PWC and ESI from denying his ability to use another pharmacy and to reform the Health Plan accordingly.

## VI.     DEFENDANTS' CONDUCT VIOLATES NUMEROUS STATUTORY PROVISION OF FEDERAL LAW

98.     By requiring Mr. Vanusanik, a disabled individual suffering from Hemophilia, to obtain his medications from Accredo, despite explicit statements and representations that he can use another pharmacy so long as that pharmacy is will to dispensing the medications at a "cost lower than through the ESI Pharmacy" and where PWC and ESI knew Accredo was not and could not deliver Mr. Vanusanik's medications as required, PWC and ESI deliberately targeted and discriminated against Mr. Vanusanik because of his disease.

99.     Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against any individual on the condition of their disability. The Supreme Court has specified that the relevant inquiry under the Rehabilitation Act for determining if discrimination has occurred is whether "meaningful access" has been provided to individuals with disabilities. *Alexander v. Choate*, 469 U.S. 287 (1985). The meaningful access inquiry asks "whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled."

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003). As detailed herein, the Policy SPD does not provide meaningful access to hemophilia medications.

100.    PWC's and ESI's conduct, as detailed herein, violates various provisions of ERISA. PWC and ESI have failed to appropriately distribute benefits to Mr. Vanusanik pursuant to the terms of the Health Plan in violation of 29 U.S.C. § 1132(a)(1)(B).

101.    Under the relevant provisions of ERISA, benefits to Plan participants must be distributed pursuant to the terms of the ERISA Health Plan and not work a reduction or elimination of benefit in the provision of those benefits. 29 U.S.C. § 1132(a)(1)(B).

102.    ERISA further requires that fiduciaries not put their own interests above their beneficiaries. 29 U.S.C. § 1132(a)(2). In fulfilling fiduciary duties, an ERISA fiduciary must act with undivided loyalty and prudence in managing and administering the plans. 29 U.S.C § 1104.

103.    PWC and ESI have breached their fiduciary duties under ERISA by failing to act with undivided loyalty and prudence in managing and administering the Plan benefits in violation of 29 U.S.C. § 1132(a)(2). In controlling and administering the Plan, PWC and ESI owe a duty to act solely for the benefit of Mr. Vanusanik. Both PWC and ESI have put their own interests ahead of Mr. Vanusanik's, through their continued discrimination and self-dealing by mandating he only use of Accredo despite explicit representations and actions to the contrary and restricting Mr. Vanusanik's choice of pharmacy to fill his hemophilia prescriptions, all the while profiting as a result. ESI has also put its own interests ahead of Mr. Vanusanik's by seeking to increase their own profits through its ownership of Accredo at the expense of Mr. Vanusanik, as set forth above.

29

## COUNT I
## 29 U.S.C. § 1132(A)(1)(B)
## DENIAL OF BENEFITS AND ENFORCEMENT AND CLARIFICATION OF
## RIGHTS UNDER THE HEALTH PLAN
## (PLAINTIFF V. PWC AND ESI)

104.    Mr. Vanusanik restates and realleges paragraphs 1-103 as if set forth in full herein.

105.    In his appeals and letters to the Plan Sponsor, Mr. Vanusanik properly made a claim for benefits under the terms of the Policy and under ERISA.

106.    Mr. Vanusanik has exhausted all of his internal, administrative appeals processes due to the Health Plan's persistent failure to provide for and describe such processes in response to Mr. Vanusanik's claims for benefits.

107.    Mr. Vanusanik has been improperly denied benefits under the Policy to which he is entitled by the Health Plan as interpreted and implemented by the Plan Sponsor and ESI.

## COUNT II
## 29 U.S.C. §§ 1132(A)(3), 1104
## BREACH OF FIDUCIARY DUTIES UNDER ERISA
## (PLAINTIFF V. PWC AND ESI)

108.    Mr. Vanusanik restates and realleges paragraphs 1-103 as if set forth in full herein.

109.    Pursuant to 29 U.S.C. § 1104(a)(1)(D), fiduciaries of qualifying employee benefits plans are required to act "in accordance with the documents and instruments governing the plan" insofar as the documents are consistent with ERISA.

110.    The Health Plan is a qualifying employee benefits plan.

DUANE MORRIS LLP
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

111.    The Plan Sponsor is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) because it exercises discretion over whether and which pharmacy benefit manager to select for administrating the pharmacy benefits of the Health Plan in which its employees and beneficiaries are enrolled.

112.    ESI is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) and thus co-fiduciaries with the Plan Sponsor.  ESI exercises significant (if not sole) discretionary authority with respect to the management of the prescription drug benefit of the Health Plan.  For example, ESI (i) is given the discretion to interpret benefits, terms, conditions, limitations, and make factual determinations related to the Health Plan's prescription drug  benefits, which includes the power to mandate that hemophilia factor medication must be filled at its wholly-owned affiliate pharmacy, Accredo, and (ii) provides financial inducements to the Plan Sponsor incentivizing the use of ESI's wholly-owned affiliate pharmacy, Accredo.  How Mr. Vanusanik obtains his medications and from what particular pharmacy, the mix-ups and delays caused by ESI-owned Accredo, and the decision to not allow Mr. Vanusanik to obtain his medications from an in-network pharmacy provider of his choice are all decisions within ESI's control.  Accordingly, ESI owes Mr. Vanusanik, an individual beneficiary participating in the Health Plan, a duty to act with loyalty and prudence in managing and administering the prescription drug benefits of the Health Plan.

113.    The Plan Sponsor and ESI are subject to the requirements of 29 U.S.C. § 1104(a)(1)(D).

114.    The Plan Sponsor and ESI breached their duty of loyalty and prudence under ERISA and duty to act in accordance with the terms of the Health Plan by engaging in self-

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

dealing and requiring Mr. Vanusanik to obtain his medication from the ESI-owned

pharmacy, Accredo, which did not properly provide benefits to Mr. Vanusanik, and by not

allowing Mr. Vanusanik to fill his prescriptions with pharmacies in ESI's network, such as

InfuCare.  By these actions, the Plan Sponsor and ESI implemented a policy that does not

satisfy minimum standards of care and constitutes self-dealing.

     115.    By requiring Mr. Vanusanik to obtain his factor medication through ESI-

owned Accredo, ESI is not acting solely in the interest of its beneficiaries, like Mr.

Vanusanik, which has stripped Mr. Vanusanik of the prescription drug benefits he is owed

under the Policy.  ESI has denied Mr. Vanusanik the Health Plan's drug benefits by requiring

Mr. Vanusanik to use only Accredo, ESI's wholly-owned subsidiary, to access his lifesaving

factor medication.

     116.    ESI has put its own interests before Mr. Vanusanik's by inducing the Plan

Sponsor to enroll Mr. Vanusanik in a drug benefit plan that requires him to obtain his

specialty medication from Accredo.

     117.    ESI has further breached its duties by failing to meet the requisite standards of

prudence under 29 U.S.C. § 1104, which requires ESI to discharge its duties "with the care,

skill, prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims[.]"  29 U.S.C. § 1104(a)(1)(B).  ESI is not

new to the health insurance industry and thus is acutely aware of its obligations as a health

care entity, yet it has engaged in conduct that risks violations of its participants' and

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

beneficiaries' health rights and acted in direct contravention of ERISA's prudent person standard.

118.    As a result of this wrongful conduct, which amounts to a breach of fiduciary duties, Mr. Vanusanik has suffered a reduction in the quality and continuity of the care he receives, and an overall denial of benefits of the Health Plan that he pays for.

119.    This breach is a direct and proximate cause of Mr. Vanusanik's injuries.

120.    As a result, Mr. Vanusanik has been wrongly denied benefits.

**COUNT III**
**29 U.S.C. §§ 1132(A)(3), 1105**
**BREACH OF FIDUCIARY DUTIES –**
**FAILURE TO MONITOR; CO-FIDUCIARY LIABILITY**
**(PLAINTIFF V. PWC AND ESI)**

121.    Mr. Vanusanik restates and realleges paragraphs 1-103 as if set forth in full herein.

122.    ESI is a co-fiduciary of the Health Plan, and the Health Plan is a co-fiduciary of ESI, as described above.

123.    The Plan Sponsor breached its fiduciary duty by failing to abide by the Policy's terms.  The Plan Sponsor knowingly participated in ESI's breach of its fiduciary duties through its agreement with ESI, which allows ESI to determine the formulary for specialty medications, including whether to include factor medication.  The Plan Sponsor also knowingly allowed ESI to require Mr. Vanusanik to obtain this medication from Accredo, which directly benefitted ESI and harmed Mr. Vanusanik as detailed above.

124.    The Plan Sponsor has a duty to monitor the activities of co-fiduciaries to the Policy pursuant to 29 U.S.C. § 1104(a)(1)(A)-(B).

33

125.     The Plan Sponsor failed to prudently monitor the activities of ESI, which served the role as Prescription Drug Benefits Administrator.

126.     Further, the Plan Sponsor knew of ESI's breach of its fiduciary duties and failed to make reasonable efforts to remedy the breach.

127.     The Plan Sponsor's failure is a breach of fiduciary duty and enabled the co-fiduciary, ESI, to commit a breach of its fiduciary duty by failing to provide benefits to Mr. Vanusanik provided for under the Policy.

128.     This breach is the direct and proximate cause of Mr. Vanusanik's injuries.

129.     As a result of the Plan Sponsor's and ESI's breach, Mr. Vanusanik has been wrongly denied benefits.

**COUNT IV**
**29 U.S.C. § 794**
**FEDERAL DISABILITY DISCRIMINATION –**
**VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**
**(PLAINTIFF V. PWC AND ESI)**

130.     Mr. Vanusanik restates and realleges paragraphs 1-103 as if set forth in full herein.

131.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

132.     The Plan Sponsor and ESI are recipients of federal funds and have been recipients of federal funds at all relevant times.

34

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

133.    Mr. Vanusanik's condition renders him an "individual with a disability" under the Rehabilitation Act. *See* 29 U.S.C. §§ 794, 705(A).

134.    Hemophilia patients like Mr. Vanusanik are prescribed specialty medication called factor medication to control their bleeds.

135.    The Plan Sponsor and ESI have designated factor medication as a specialty drug on ESI's formulary, which is a decision entirely within their own discretion and control.

136.    Upon information and belief, the Plan Sponsor and ESI force individuals who are prescribed specialty medications to obtain those medications, including factor medication, from the ESI-owned pharmacy, Accredo.  At the same time, individuals who do not suffer from hemophilia, and who do not need specialty medication such as factor medication, are permitted to fill their prescriptions at pharmacies of their choice that are within ESI's network.

137.    The Plan Sponsor and ESI have required Mr. Vanusanik to obtain his hemophilia factor medication from the ESI-owned pharmacy, Accredo, without an option to obtain his medication from a pharmacy of his choice within ESI's network, such as InfuCare.

138.    By requiring Mr. Vanusanik to obtain his hemophilia factor medication from the ESI-owned pharmacy, Accredo, without an option to obtain his factor medication from pharmacies of his choice within ESI's network, the Plan Sponsor and ESI have specifically and intentionally targeted Mr. Vanusanik on the basis of his disability, hemophilia, and therefore have affirmatively discriminated against him on the basis of his disability.

139.    The Plan Sponsor and ESI's discriminatory actions have denied Mr. Vanusanik full and equal enjoyment of benefits available under the Health Plan in terms of

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

being able to access a pharmacy of his choice within ESI's network. The Plan Sponsor and ESI's discriminatory actions requiring Mr. Vanusanik to obtain his factor medication solely from Accredo effectively bar Mr. Vanusanik from consultations, advice, and monitoring by pharmacists knowledgeable about hemophilia, including factor medication and dosages.

140.    The Plan Sponsor and ESI directly control Mr. Vanusanik's access to pharmacies and his life-saving medication. The Plan Sponsor contracts with ESI, who sets up its pharmacy provider network and the drug formulary and is able to put limits on where and how Mr. Vanusanik can fill his prescriptions and at what cost. The Plan Sponsor and ESI have the power to decide whether Mr. Vanusanik's filling of his hemophilia prescriptions at any pharmacy other than Accredo would be "out-of-network" and therefore would cost Mr. Vanusanik more money to obtain from pharmacies other than Accredo. Notably, the Plan Sponsor and ESI have expressly refused to allow Mr. Vanusanik to obtain his factor medication from the pharmacy of his choice even though the pharmacy of Mr. Vanusanik's choosing previously agreed to refill the medication and do so at a lower cost than the ESI-owned pharmacy, Accredo. Because Mr. Vanusanik is of limited financial means, the Plan Sponsor and ESI have given Mr. Vanusanik no choice but to obtain his medication from the ESI-owned Accredo because he cannot afford pay out-of-pocket for the medication from a pharmacy of his choice within ESI's network (InfuCare).

141.    At the same time, individuals who do not need specialty medication are free to fill their prescriptions at any in-network pharmacy of their choice.

142.    Under the Rehabilitation Act, any person who is subjected to discrimination by being denied benefits by reason of his or her disability may seek appropriate remedies.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

143.     Mr. Vanusanik has been harmed and will continue to be harmed by the Plan Sponsor and ESI's actions through the loss of access to pharmacies of his choice within ESI's network and pharmacists who are knowledgeable about his life-threatening disease. The Policy subjects Mr. Vanusanik to potentially life-threatening delays caused by Accredo's inefficiencies.

144.     The Plan Sponsor and ESI's actions are the cause of the harm to Mr. Vanusanik. The Plan Sponsor and ESI control the formulary of specialty drugs and whether that formulary includes factor medication, which pharmacies are allowed to fill specialty drugs without monetary penalty, and the self-interested policy put in place here that requires Mr. Vanusanik to obtain his factor medication from the ESI-owned pharmacy, Accredo.

145.     Mr. Vanusanik seeks an order enjoining the Plan Sponsor and ESI from continuing to only permit Mr. Vanusanik to obtain his hemophilia medications from Accredo.

146.     As a proximate result of the Plan Sponsor's and ESI's conduct, Mr. Vanusanik was forced to seek legal representation.  Mr. Vanusanik also seeks appropriate monetary relief to the extent available, attorneys' fees and costs, and all other additional appropriate relief as may be available under this cause of action.

**COUNT V**
**28 U.S.C. § 2201**
**DECLARATORY JUDGMENT**
**(PLAINTIFF V. PWC AND ESI)**

147.     Mr. Vanusanik restates and realleges paragraphs 1-103 as if set forth in full herein.

37

148.    The Plan Sponsor has claimed that Mr. Vanusanik must obtain his medication only from ESI-owed pharmacy, Accredo, despite verbal and written representations from its agent, ESI, that he can obtain medication from another pharmacy at a "cost lower than through the ESI pharmacy[,]" and that PWC and ESI permitted Mr. Vanusanik, for over a year, to obtain medications from a pharmacy other than Accredo.

149.    An actual, present and justiciable controversy has arisen between the Plan Sponsor, its agent ESI and Mr. Vanusanik regarding Mr. Vanusanik's right to obtain his medication from another pharmacy.

150.    Mr. Vanusanik seeks a declaratory judgment from this Court that he can obtain his medication from a pharmacy other than Accredo so long as that medication can be obtained at a "cost lower than through the ESI pharmacy."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Vitalij Vanusanik respectfully demands judgment in his favor and against Defendants Pricewaterhouse Coopers LLP and Express Scripts, Inc. and respectfully requests the following relief:

A.    Permanent injunctive relief enjoining the Plan Sponsor and any of its agents including, but not limited to ESI, from, directly or indirectly, requiring Mr. Vanusanik to obtain his medication from ESI-owned pharmacy, Accredo, and preventing him from using the ESI in-network pharmacy of his choice to obtain his medication;

B.    Declaring that, pursuant to the Health Plan, Mr. Vanusanik is permitted to obtain his medication from any pharmacy in ESI's network, including, specifically, InfuCare;

C.    Awarding Mr. Vanusanik his benefits wrongfully denied by permitting him to obtain his medication from any pharmacy in ESI's network, including, specifically, InfuCare;

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

      D.     Awarding Mr. Vanusanik his attorneys' fees and costs pursuant to 29 U.S.C. §1132(g) and any such other and further relief as the Court deems just and equitable.

Respectfully submitted this 29th day of January, 2021.

                        **DUANE MORRIS LLP**

                        /s/ Harvey W. Gurland, Jr.
                        Harvey W. Gurland, Jr.
                        Florida Bar No.:  284033
                        Morgan L. Swing
                        Florida Bar No.: 17092
                        201 South Biscayne Boulevard, #3400
                        Miami, Florida 33131
                        Telephone: (305) 960-2200
                        Facsimile:  (305) 397-1874
                        hwgurland@duanemorris.com
                        mlswing@duanemorris.com

                        -and-

                        Jonathan L. Swichar
                        (*pro hac vice* motion pending)
                        Bradley A. Wasser
                        (*pro hac vice* motion pending)
                        DUANE MORRIS LLP
                        30 South 17th Street
                        Philadelphia, Pennsylvania 19103
                        Telephone: (215) 979-1000
                        Facsimile: (215) 979-1020
                        jlswichar@duanemorris.com
                        bawasser@duanemorris.com

                        *Counsel for Plaintiff Vitalij Vanusanik*

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 29, 2021, the foregoing document was electronically filed with the Clerk of the Court via CM/ECF which will send notice of electronic filing to all counsel of record.

<u>/s/ Harvey W. Gurland, Jr.</u>
Harvey W. Gurland, Jr.

DM1\11748729.2

40

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 · Tel: 305.960.2200
