**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| VITALIJ VANUSANIK<br><br>Plaintiff,<br><br>V.<br><br>PRICEWATERHOUSECOOPERS LLP AND EXPRESS SCRIPTS, INC. | Case No. 8:20-cv-02839-CEH-TGW |

**EXPRESS SCRIPTS, INC.'S RULE 12(B)(6) MOTION TO DISMISS**

Express Scripts, Inc. ("Express Scripts") moves to dismiss Plaintiff's Amended Complaint against Express Scripts, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Introduction & Background Allegations

Mr. Vanusanik filed this lawsuit under the Employee Retirement Income Security Act of 1974 ("ERISA"), which allows plan participants to sue to enforce their rights to benefits provided under an employee benefit plan. Mr. Vanusanik, however, has not identified any benefit under the Plan to which he is entitled. His assertion that he can have his prescription filled at any pharmacy he chooses is contrary to the express terms of the Plan, and cannot state a plausible claim.

Mr. Vanusanik participates in an employee health benefit plan (the "Plan") through PricewaterhouseCoopers ("PwC", or the "Plan Sponsor"). Am. Compl., ¶¶ 1, 12. Express Scripts is a pharmacy benefits manager ("PBM") and has contracted with PwC to provide certain administrative services with respect to pharmacy

benefits under the Plan. *Id.*, ¶¶ 14, 19. The controlling Plan document is the Summary Plan Description ("SPD"). *See* Am. Compl. ¶ 1; SPD, Exhibit A to Am. Compl. (ECF 27-1) at p. 1[1] (stating that the SPD "describes the terms and conditions of, and the health Benefits available to you" under the Plan, and "serves as the Plan document for the Health & Welfare Benefits Plan").

Mr. Vanusanik has hemophilia and takes certain "specialty medications." Am. Compl. ¶¶ 2-3. Specialty medications are "used to treat complex conditions," including hemophilia, and are dispensed through specialty pharmacies, which provide different services than ordinary retail pharmacies. *See* SPD, p. 168 (ECF 27-1, p. 177). The Plan unambiguously provides that Specialty medications must be filled at Accredo, Express Scripts' Specialty pharmacy, to be covered. *Id.*

Mr. Vanusanik does not want to fill his prescriptions at Accredo. He brings this lawsuit against Express Scripts and PwC, asking this Court to grant him the right to fill his prescriptions from a "pharmacy of his choice." Am. Compl. ¶ 7, and Prayer for Relief. Mr. Vanusanik admits that the Plan terms require him to fill his specialty medications at Accredo, but he points to alleged communications *outside* of the Plan and asks the Court to rewrite the Plan to provide this alleged "benefit." Am. Compl. ¶¶ 27-28, 48. However, the "benefit" Mr. Vanusanik seeks is simply not allowed by the Plan, as the Plan's plain terms require Mr. Vanusanik to fill his prescriptions for Specialty medications at Accredo.

---

[1] Express Scripts cites herein to the page number appearing on the SPD, consistent with the citations used in the Amended Complaint. Page 1 of the SPD is at ECF 27-1, page 10.

This indisputable fact is fatal to all of Mr. Vanusanik's claims. Mr. Vanusanik has failed to state a plausible claim for relief, and his claims should be dismissed.

**Legal Standard**

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Argument**

**I. Count I fails to state a claim because the Plan does not offer the benefits that Mr. Vanusanik requests.**

Mr. Vanusanik brings Count I under ERISA, which provides that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(b). Mr. Vanusanik alleges that he "has been improperly denied benefits under the Policy to which he is entitled by the Health Plan."[2] Am. Compl. ¶ 107. Mr. Vanusanik fails

[2] As exemplified by the statute's language, a § 1132(a)(1)(b) claim revolves around "the terms of the plan." The SPD here is the Plan document. *See* SPD, p. 1 (stating that the SPD "serves as the Plan document"). *See also Alday v. Container Corp. of Am.*, 906 F.2d 660, 666 (11th Cir. 1990) (holding SPD "functioned as the plan document required by ERISA"). !

to state a claim because he does not allege any benefits owed to him under the Plan.

**1. The Plan does not offer the benefits that Mr. Vanusanik seeks, as the Plan only covers the cost of Specialty medications filled at Accredo.**

Mr. Vanusanik's claim for benefits under § 1132(a)(1)(B) must be dismissed for the fundamental reason that he has not alleged that the Plan covers the benefits he seeks – to the contrary, he admits that the benefits are not covered.

It is well-established that a "plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question . . . The failure to do so results in a failure to state a claim under ERISA." *Bryant v. Hasbro, Inc.*, No. 8:18-CV-1336-T-36CPT, 2020 WL 224513, at *6 (M.D. Fla. Jan. 15, 2020) (citation omitted) (dismissing claim where "Plaintiff failed to identify the ERISA plan terms that entitle her to benefits that she is not receiving.").

"[B]enefits payable under an ERISA plan are limited to the benefits specified in the plan. To state a plausible claim under ERISA, then, a plaintiff must provide the court with enough factual information to determine whether the [services] were indeed covered services under the plan." *H.H. v. Aetna Ins. Co.*, 342 F. Supp. 3d 1311, 1316–17 (S.D. Fla. 2018) (citing *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, 2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013)) (internal quotations omitted) (dismissing claim where plaintiff did not allege facts showing that provider met requirements to be a covered facility under the plan). "A plaintiff must identify a specific term of the plan that covers the services at issue and must provide facts sufficient to show that the services meet whatever requirements the

plan imposes for coverage." *Id.* (citing *Coles v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 3:14-CV-142-J-39JRK, 2014 WL 12617587, at *3 (M.D. Fla. June 18, 2014), *report and recom. adopted,* 2014 WL 12617586 (M.D. Fla. July 15, 2014)).

In Count I, Mr. Vanusanik does not identify any Plan term that provides the benefit to which he alleges he is entitled. *See* Am. Compl. ¶¶ 104-107. Instead, he incorporates the preceding 103 paragraphs and summarily concludes that he "has been improperly denied benefits under the Policy to which he is entitled by the Health Plan." *Id.* ¶ 107. This claim does not identify what "benefit" Mr. Vanusanik believes has been denied, much less identify any Plan provision entitling him to such benefits. This alone requires dismissal of his Complaint. *See H.H.,* 342 F. Supp. 3d at 1316–17; *Sanctuary Surgical,* 2013 WL 149356, at *3.

But the problem with this claim goes far beyond a pleading defect. Mr. Vanusanik cannot plausibly allege that the benefit he seeks is covered under the Plan, because it isn't. In his Prayer for Relief, Mr. Vanusanik indicates that the purported "benefit" he seeks is the ability to "obtain his medication from any pharmacy in ESI's network, including, specifically InfuCare." *See* Am. Compl. Prayer for Relief, ¶ C. But he does not – and cannot – plead any provision of the Plan that entitles him to the "benefit" of choosing which pharmacy to dispense his Specialty medication, because the Plan specifically provides that all Specialty medications must be dispensed by Accredo in order to be covered.

The medications that Mr. Vanusanik takes to treat his hemophilia are "Specialty medications." Am. Compl. ¶¶ 3, 27; SPD, p. 168. Under the Plan,

Specialty medications are only covered if they are dispensed by Accredo:

> After the first fill, you are required to use Accredo, Express Scripts' Specialty pharmacy . . . You will be responsible for the entire cost of Specialty medications if you continue to purchase them at a retail pharmacy after the first purchase.

SPD, p. 168.

Mr. Vanusanik acknowledges that the Plan requires him to fill his Specialty medication at Accredo. He alleges: "The Policy SPD provided to Mr. Vanusanik states that specialty medications (medications 'that are used to treat complex conditions') (*See* Exhibit A at 168), such as hemophilia, must be obtained by Plan participants from ESI-owned pharmacy, Accredo." *See* Am. Compl., ¶ 27. But despite admitting that the SPD "require[s] that specialty medications be obtained from Accredo," Mr. Vanusanik argues that he should not be bound by these terms. *Id.*, ¶ 28. However, "[t]he award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1203 (11th Cir. 2020) (citation omitted).

While Mr. Vanusanik dislikes this Plan provision, federal courts are clear that an employer is free to limit benefits however it chooses. As the U.S. Supreme Court has repeatedly stated, "[n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan. Rather, employers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) (citing *Lockheed Corp.*

*v. Spink,* 517 U.S. 882, 887 (1996)). *See also Schwade v. Total Plastics, Inc.*, 837 F. Supp. 2d 1255, 1264 (M.D. Fla. 2011), *aff'd sub nom. Fla. Health Scis. Ctr., Inc. v. Total Plastics, Inc.*, 496 F. App'x 6 (11th Cir. 2012) (same) (citation omitted).

"Employers or plan sponsors of benefit plans can define the level of benefits they will offer along with exclusions to those benefits." *Chaudhry v. Neighborhood Health P'ship, Inc.*, No. 04-22819-CIV, 2005 WL 6103746, at *3 (S.D. Fla. May 4, 2005), *aff'd,* 178 Fed. Appx. 900 (11th Cir. 2006); *see also Owens v. Storehouse, Inc.*, 984 F.2d 394, 400 (11th Cir. 1993) ("ERISA does not require an employer to provide any particular level of coverage once a medical benefits plan is established") (citing cases). "To hold otherwise would impair Congress' express intent that employers be free to fashion medical benefit plans as costs, technology, and the marketplace dictate." *Owens*, 984 F.3d at 400. In *Fogle v. IBM Corp.*, No. 8:19-CV-2896-T-33JSS, 2020 WL 1873567 (M.D. Fla. Apr. 15, 2020), plaintiff brought suit complaining about a lifetime maximum benefit contained within his ERISA benefit plan. The Court dismissed his claim, holding:

> Fogle essentially dislikes how the Plan was constructed to include [certain lifetime maximum benefits]. But ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Rather, ERISA gives employers large leeway to design disability and other welfare plans as they see fit.

*Id.* at *10 (citations and quotations omitted).

Therefore, Mr. Vanusanik cannot state a § 1132(a)(1)(B) claim for the alleged "benefit" of using some other pharmacy, because this alleged "benefit" is simply not provided under the terms of the Plan.

### 2. None of the communications or conduct Mr. Vanusanik alleges can override the Plan terms.

Despite acknowledging that the terms of the Plan SPD require that specialty medications be filled at Accredo, *see* Am. Compl. ¶¶ 3, 27-28, Mr. Vanusanik claims that the Court should not enforce these Plan terms because ESI and PwC allegedly told him that he could use another pharmacy and they allowed overrides in the past. *Id.* ¶¶ 28, 48-49. However, the law is clear that neither oral or written communications nor alleged prior conduct can override the Plan terms.

Mr. Vanusanik's allegations regarding what Defendants told him cannot change the plain terms of the Plan, because the law is well-established that oral representations cannot modify the terms of an ERISA plan. In *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986), the Eleventh Circuit held that ERISA "expressly requires that employee benefit plans be 'established and maintained pursuant to a written instrument'. . . [T]his requirement that ERISA plans be 'maintained' in writing precludes oral modifications of the Plans." *Id.* (citing 29 U.S.C. § 1102(a)(1)). *Accord Alday v. Container Corp. of Am.*, 906 F.2d 660, 665 (11th Cir. 1990) ("oral representations or promises cannot modify the clear terms of an employee benefit plan") (citing *Nachwalter*, 805 F.2d at 960); *Keys v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 420 F. Supp. 3d 1277, 1285 (M.D. Fla. 2019) ("Because ERISA specifically requires that plans be maintained in writing, oral modifications of unambiguous plans are precluded") (citations omitted).[1]

Similarly, Mr. Vanusanik's allegations regarding written communications

sent to him by Express Scripts do not alter the Plan terms. Mr. Vanusanik points to language in letters denying his request to use another pharmacy, arguing that Express Scripts stated that he can use another pharmacy if they provided his medication at a lower price. Am. Compl. ¶ 28, and Exhibits B-C. But these letters are not plan documents, and they cannot alter the unambiguous terms of the Plan. "In general, benefits determination notices are themselves not plan documents." *Wallace v. Beaumont Healthcare Employee Welfare Benefit Plan*, No. CV 16-10625, 2017 WL 193551, at *4 (E.D. Mich. Jan. 18, 2017), *aff'd sub nom. Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879 (6th Cir. 2020) (citation omitted).

The Eleventh Circuit has consistently held that written communications do not modify the plan. In *Alday,* the Court rejected the plaintiff's claim based on communications from the employer which contradicted the SPD language. 906 F.2d at 665. The Court held that a right to benefits "can only be found if it is established by contract under the terms of the ERISA-governed benefit plan document," because "Congress expressly prohibited informal *written* amendments of ERISA plans under 29 U.S.C. § 1102(b)(3)." *Id.* Thus, when "the SPD unambiguously set out the rights of the parties . . . the terms of the SPD are controlling and other documents must be ignored." *Id.* at 666;[3] *see also Snyder v.*

[3] In any event, letters written by Express Scripts could not modify the Plan or supersede its terms, because PwC is the Plan Sponsor and has the "sole discretion, to modify, change, revise, amend or terminate the Plan." SPD, at p. 4, 147. Express Scripts simply performs "claims administration of the prescription drug Benefits." *Id.* at 156. An "administrator lacks discretion to rewrite the Plan." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996) (citing *Florence Nightingale Nursing Serv. v. Blue Cross/Blue Shield of Alabama,* 41 F.3d 1476, 1484 (11th Cir. 1995)).

*Fed.-Mogul Corp.*, 996 F. Supp. 2d 1253, 1266 (M.D. Fla. 2014) (ruling that settlement agreement and other non-Plan documents "are not ERISA-governed benefit plan documents, and therefore under the law of this Circuit, cannot operate to create vested health benefits.") (citing *Alday*, 906 F.2d at 666).

Here, the SPD specifically informs participants that it is the governing Plan document and controls over any benefit summaries: "If there is a conflict between this SPD and any benefit summaries (other than Summaries of Material Modifications) provided to you, this SPD will control." SPD, p. 1, 5. Under Eleventh Circuit law, any alleged communications cannot alter the terms of the Plan.[4]

Finally, Mr. Vanusanik alleges that since he was previously allowed "overrides" to use his pharmacy of choice, he is now forever entitled to use his pharmacy of choice so long as it charges less than Accredo. This claim fails as well, as an alleged "course of conduct cannot supersede the written provisions of a plan." *Cummings v. City of New York*, 302 F. Supp. 3d 511, 523 (S.D.N.Y. 2017) (citation omitted); *accord Lott v. Hertz Custom Ben. Program*, 961 F.2d 220, at *2 (10th Cir. 1992) (unpublished) ("[D]efendants' course of conduct cannot amend or modify the terms of this ERISA-governed employee benefit plan.").

[4] To the extent Mr. Vanusanik seeks to obtain coverage through some sort of estoppel theory, which he has not pled, any attempt to do so must fail. The Eleventh Circuit has repeatedly held that "an equitable estoppel theory" is a "very narrow" exception that can only apply if the "provisions of the plan at issue are ambiguous." *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 854 (11th Cir. 2013) (citation omitted) (holding that "[b]ecause the terms of the plans were unambiguous, the plaintiffs' equitable estoppel claims necessarily fail."). Further, "[e]stoppel may not be relied upon to enlarge or extend the coverage specified in a contract." *Id.* (citation omitted). Mr. Vanusanik does not and cannot allege that the Plan terms are ambiguous, and he cannot use estoppel to "override" unambiguous Plan terms.

Mr. Vanusanik simply cannot state a claim for benefits that are not provided by his Plan. As the Eleventh Circuit recognized:

> This rigorously enforced rule that we not look outside formal plan documents can have harsh results in some cases, but it serves important purposes. . . .
>
> Were all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

*Schena v. Metropolitan Life Retirement Plan for U.S. Employees*, 244 F. Appx. 281, 284 (11th Cir. 2007) (citation and quotation omitted).

**3. None of the other provisions Mr. Vanusanik cites in his Complaint provide the purported benefits he seeks.**

As discussed above, Mr. Vanusanik has not alleged any Plan term that allows the benefits he seeks. Count I should be dismissed for that reason alone.

In the "Factual Background" of his Amended Complaint (§§ V (A-B)), Mr. Vanusanik discusses two Plan provisions. It is unclear whether these provisions are part of Mr. Vanusanik' s claim for "benefits," because Count I incorporates en masse the allegations of the preceding 103 paragraphs, without identifying which Plan provisions actually form the basis for this claim. This shotgun pleading is insufficient, as it is the Plaintiff's responsibility to "ensure that the facts applicable to each of his claims are clearly stated and referred to in the appropriate claim," and it is not the Court's role to "scour the Complaint for facts to support each claim." *Foster v. Select Med. Corp.*, No. 6:11-CV-1234-J-37GJK, 2012 WL 1415499,

at *11 (M.D. Fla. Apr. 24, 2012). *See also Erickson v. Merck & Co.*, No. 5:17-CV-562-OC-30PRL, 2017 WL 9938491, at *2 (M.D. Fla. Dec. 8, 2017) (dismissing a complaint for "impermissible shotgun pleading").

Express Scripts nevertheless addresses these provisions because, no matter how pled, the provisions Mr. Vanusanik cites do not provide the alleged benefits that he seeks, and he has not stated any plausible claim for benefits.[5]

**a. UnitedHealthcare's Personal Health Support program is inapplicable to Mr. Vanusanik's prescription claim.**

Mr. Vanusanik invokes an isolated and inapplicable phrase from the medical portion of the SPD to argue that PwC and Express Scripts have denied him the purported "benefit of receipt of 'appropriate medical care.'" Am. Compl. ¶¶ 83-92. Mr. Vanusanik admits that this phrase appears "on the medical side of the Policy SPD," administered by UnitedHealthcare, "and not the pharmacy side" administered by Express Scripts. *Id.* ¶ 89. Nevertheless, he alleges that Express Scripts was a "co-fiduciary" and was "responsible for ensuring 'appropriate medical care'" for Plan participants under United Healthcare's program. *Id.* Each of these allegations is belied by the plain terms of the Plan.

***First***, as Mr. Vanusanik acknowledges, Section 4 of SPD has nothing to do with Express Scripts or the prescription drug program. The SPD makes clear that

[5] Mr. Vanusanik also alleges that Accredo violated HIPAA by revealing his personal health information. Am. Compl. ¶ 71. Even if this was pled as a claim in Count I, and if Accredo were a party, "of the numerous mentions of the term 'benefit' in ERISA, none suggest that protecting customer [Personal Identification Information] should be considered an ERISA benefit." *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *47 (N.D. Cal. May 27, 2016).

the Personal Health Support program is offered by UnitedHealthcare, the Claims Administrator, under the medical plan. SPD, p. 23. Section 4 refers to case management services provided by UnitedHealthcare under PwC's medical plan, and states that "Personal Health Support Nurses will provide a variety of different services to help you and your covered family members receive appropriate medical care," and lists the case management services those nurses can provide. SPD, p. 23. On its face, this provision has nothing to do with the level or quality of health care provided by any pharmacy or other healthcare provider. Mr. Vanusanik's allegation that this phrase, taken completely out of context, somehow obligates Express Scripts to guarantee that he receive a certain level of care from a pharmacy provider twists this language beyond recognition and is frivolous.

***Second***, Express Scripts had no duty (much less a fiduciary duty) with respect to PwC's medical program. The SPD describes the limited role of Express Scripts: "For purposes of claims administration of the prescription drug Benefits, the Plan Administrator has assigned fiduciary responsibility for claim determinations to Express Scripts." SPD, p. 147. There is nothing in this delegation to Express Scripts under the Prescription Drug Benefits that would give Express Scripts any authority – or, indeed, ability – to administer or enforce an alleged benefit which is, in Mr. Vanusanik's words, "a benefit on the medical side of the Policy SPD and not the pharmacy side." *See* Am. Compl. ¶ 89.

This term relating to United Healthcare's Personal Health Support program does not apply to Express Scripts, pharmacies, or prescription drug coverage, and

it does not change the Plan term requiring Specialty medications to be filled at the designated pharmacy.

**b. The Plan does not allow the use of another pharmacy to dispense Specialty medications.**

Mr. Vanusanik argues he has a right to use any in-network pharmacy, but the provisions he cites refer to retail prescriptions, not specialty medications. Am. Comp. ¶ 94 (citing SPD p. 170-74). The SPD makes clear that "retail medications" are treated differently than "Specialty medications." SPD, p. 167-68, 170. For retail medications, members can obtain a 30-day supply through a participating in-network retail pharmacy (e.g., a pharmacy chain or local drugstore). *Id* at p. 170. Members can also obtain a 30-day supply of retail medications at a non-participating pharmacy, but "out-of-network Benefits will apply." *Id.*

Members who "use long-term medications for a chronic condition, such as high blood pressure or diabetes," can have a 90-day supply "filled through the Express Scripts Pharmacy home delivery service." *Id.* at p. 172-73. Mr. Vanusanik argues this means there is no requirement to fill Specialty medications through Accredo. Am. Compl. ¶ 94(d). However, this provision has nothing to do with Specialty medications. The refills through Express Scripts Pharmacy (a different entity than Accredo) allow members who take long-term medication on an ongoing basis for "a chronic condition" to receive refills by mail every 90 days. SPD, p. 172. But the SPD makes clear that for "Specialty medications," specifically including those to treat "hemophilia," participants are "required to use Accredo." *Id.*, p. 168.

To the extent there is any conflict between the Specialty medication provision and this general provision, which Express Scripts denies, the Specialty medication provision controls because it specifically references hemophilia, the condition at issue here. *See U.S. v. Pielago*, 135 F.3d 703, 710 (11th Cir. 1998) ("When two contract terms conflict, the specific term controls over the general one.").

Further, even if this provision had any applicability, it would not support Mr. Vanusanik's argument that he can fill his prescription at *any* pharmacy, because it provides that the "Plan provides no Benefits for using a home delivery service other than the Express Scripts Pharmacy." SPD p. 170, 173. There is nothing in this provision, or anywhere else in the Plan, that would allow Mr. Vanusanik to have his Specialty medications dispensed by any pharmacy he chooses.

## II. Count II fails to state a claim for breach of fiduciary duty.

Count II, alleging breach of fiduciary duty, fails for at least the following reasons, each of which independently warrants dismissal.

***First***, Count II is entirely duplicative of Count I. A claim for breach of fiduciary duty cannot stand when it is duplicative of a claim for benefits and seeks the same relief. *See Chiroff v. Life Ins. Co. of N. Am.*, 142 F. Supp.2d 1360 (S.D. Fla. 2000) (dismissing claim for breach of fiduciary duty when plaintiff had also asserted a claim for benefits under § 1132(a)(1)(B)) (citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996)); *see also Harrison v. Digital Health Plan,* 183 F.3d 1235, 127 n.1 (11th Cir. 1999) *(*affirming "dismissal of plaintiff's claim for breach of fiduciary duty as duplicative of Count I for recovery of medical benefits under 29 U.S.C. §

1132(a)(1)(B).”); *Kindred Hosp. E. L.L.C. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:05CV995J32TEM, 2007 WL 601749, at *3 (M.D. Fla. Feb. 16, 2007) (dismissing claim for breach of fiduciary duty where it was duplicative of claim for benefits); *Griffin v. Blue Cross & Blue Shield Healthcare Plan of Ga., Inc.*, 157 F. Supp. 3d 1255, 1258 (N.D. Ga. 2015) (same).

The entire basis of Count II, and the only relief sought, is Mr. Vanusanik's claim that he “has been wrongly denied benefits.” *See* Am. Compl. ¶¶ 118, 120. Count II should be dismissed because the same allegations and relief underlying a claim for benefits cannot also give rise to a breach of fiduciary duty claim.

***Second***, while Mr. Vanusanik alleges a fiduciary duty to act “in accordance with the documents and instruments governing the plan,” 29 U.S.C. § 1104(a)(1)(D), he has not plausibly alleged any <u>breach</u> because PwC and Express Scripts acted in accordance with the Plan terms. As explained above with respect to Count I, Mr. Vanusanik admits that the Plan requires Specialty medications to be filled at Accredo, but he believes that he should not be bound by this Plan term. In *Fogle*, the Court dismissed plaintiff's claim alleging that defendants breached a fiduciary duty by applying a cap on certain benefits, holding that while plaintiff “does not like this limitation within the plan . . . the allegations make plain that [defendants] administered the Plan in accordance with its terms by enforcing the 24-month cap.” 2020 WL 1873567, at *11. *Accord Heffner v. Blue Cross Blue Shield of Alabama, Inc.*, No. 2:00-cv-900-WTH, 2009 WL 10727576, at *4 n.4 (M.D. Ala. Mar. 13, 2009) (“[T]here can be no breach of fiduciary obligation when Blue Cross

did not [sic] nothing more than follow and apply the governing provisions of the Plan."), *aff'd*, 366 F. App'x 975 (11th Cir. 2010). Mr. Vanusanik cannot state a claim for breach of fiduciary duty for actions that follow the Plan.

***Third***, the remainder of Count II is directed at the *design* of the Plan, which is not a fiduciary function. Mr. Vanusanik's claim is that the Plan should allow him to fill his medication wherever he wants. But Mr. Vanusanik's dislike of the terms of the Plan cannot give rise to a claim for breach of fiduciary duty against Express Scripts. "ERISA fiduciary status is not an all or nothing concept. A court must ask whether a person is a fiduciary with respect to the particular activity in question." *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1330 (N.D. Ala. 2004), *aff'd,* 461 F.3d 1325 (11th Cir. 2006) (citation and quotation omitted). "Even if an entity is an ERISA fiduciary for some purposes . . . not every action will subject it to fiduciary liability under section 502(a)(3)." *Id.* (citation omitted).[6]

"An employer owes no fiduciary duty under ERISA when it makes what are known as 'plan design decisions,' which include decisions regarding the level(s) of benefits to be afforded to plan participants." *Burns v. Rice*, 39 F. Supp. 2d 1350, 1355-56 (M.D. Fla. 1998), *aff'd*, 210 F.3d 393 (11th Cir. 2000) (citations omitted) (dismissing breach of fiduciary duty claim based on "plan design decisions," as "it is clear that these actions are not subject to ERISA's fiduciary standards.").

---

[6] Under the Plan, "For purposes of claims administration of the prescription drug Benefits, [PwC] has assigned fiduciary responsibility for claim determinations to Express Scripts." SPD, p. 147. This limited delegation of fiduciary authority for the purpose of prescription claim administration does not make Express Scripts a fiduciary for any other purpose.

"Design decisions that concern the substance of the plan, unlike benefit determination decisions, do not trigger fiduciary obligations." *Chaudhry*, 2005 WL 6103746 at * 4; *see also Fogle,* 2020 WL 1873567, at *11 ("[T]o the extent Fogle seeks to bring a claim . . . for breach of fiduciary duty with respect to the initial design of the Plan, such a claim must be dismissed.").

Moreover, the design of the plan is the responsibility of the Plan Sponsor (here, PwC), and not Express Scripts. *See* SPD, p. 4, 147; *Snow v. Bos. Mut. Life Ins. Co.*, 590 F. App'x 832, 835 (11th Cir. 2014) ("[T]he design and adoption of an ERISA Plan is a settlor function" performed by the Plan Sponsor"). A PBM's "execution of the plan design adopted by [employer] is immune from fiduciary liability." *Moeckel v. Caremark, Inc.,* 622 F. Supp. 2d. 663, 684 (M.D. Tenn. 2007).

While Mr. Vanusanik peppers his claim with allegations that Express Scripts engaged in "self-dealing" in "requiring" that Specialty medications be filled at Accredo, Am. Compl. ¶¶ 112, 114-15, the fact remains that this requirement is set forth in the Plan. "[W]hen a service provider or PBM acts pursuant to the terms of a contract, it . . . does not act as an ERISA fiduciary." *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 679 (S.D.N.Y. 2018), *aff'd,* 2020 WL 7133860 (2d Cir. Dec. 7, 2020). Mr. Vanusanik simply cannot state a claim for breach of fiduciary duty based on his dislike of the Plan terms.

## III. Count III is not directed at Express Scripts.

Although Count III lists in the caption that it is directed at PwC and Express Scripts, the allegations within that count are directed solely at the "Plan Sponsor"—

that is, PwC—for allegedly "fail[ing] to prudently monitor the activities of" Express Scripts. Am. Compl. ¶ 123-127. The "Plan Sponsor" is "PricewaterhouseCoopers LLP." *See* Am. Compl., p. 1; *accord* SPD, p. 142, 147. Express Scripts is not the subject of Count III, and it should be dismissed as to Express Scripts. Even if Count III were directed at Express Scripts, Count III is based on Count II and suffers from the same deficiencies as Count II (and in turn Count I), requiring dismissal.

## IV. Count IV Fails to State a Claim under the Rehabilitation Act.

In his Amended Complaint, Mr. Vanusanik asserts a new claim under 29 USC § 794, a federal statute captioned "Nondiscrimination under Federal grants and programs" (referred to as "§ 504" of the "Rehabilitation Act"). This claim is outside the purview of the Rehabilitation Act and should be dismissed.[7]

***First***, by its plain terms, the Rehabilitation Act only applies to discrimination "under any program or activity ***receiving Federal financial assistance*** or under any program or activity conducted by any Executive agency . . ." 29 U.S. C. § 794 (emphasis added) (cited in Am. Compl. ¶ 131). "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds." *U.S. Dep't of Transp. v.*

---

7 "The elements of a claim under the Rehabilitation Act are: (1) that [plaintiff] is a 'handicapped individual' under the Act, (2) that [plaintiff] is 'otherwise qualified' for the benefit sought, (3) that [plaintiff] was discriminated against ***solely*** by reason of [his] handicap, and (4) that the ***program or activity in question receives federal financial assistance***." *Schiavo ex rel Schindler v. Schiavo*, 358 F. Supp. 2d 1161, 1165–66 (M.D. Fla.), *aff'd,* 403 F.3d 1289 (11th Cir. 2005) (internal brackets omitted) (emphases added).

*Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986).

Mr. Vanusanik has not pled any facts making it plausible that the Rehabilitation Act applies to his employee benefit prescription drug plan, provided and funded by PwC (a Big-Four accounting firm) and administered by Express Scripts (a Fortune 500 Company). The Eleventh Circuit defines "'federal financial assistance' . . . as used in the Rehabilitation Act to mean the federal government's provision of a subsidy to an entity." *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005) (citing *DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir. 1990)). "Generally, to determine the applicability of the Rehabilitation Act, a court must determine whether the government intended to give the defendant a subsidy, as opposed to compensation." *Shotz*, 420 F.3d at 1135 (quotations and citations omitted) (dismissing claim for lack of subject matter jurisdiction, holding that airlines that received federal funds after September 11 attacks were not subject to Rehabilitation Act, as "Congress intended to compensate, not subsidize, airline carriers").

The Amended Complaint contains only a conclusory allegation that the "Plan Sponsor [PwC] and ESI are in receipt of federal funds." Am. Compl., ¶ 132. Even accepting this allegation as true on a motion to dismiss, Mr. Vanusanik does not allege what program or activity allegedly received funds or whether it had any connection to his prescription plan; nor does he allege any facts establishing that those "funds" were "a subsidy as opposed to compensation." *Schotz*, 420 F.3d at 1135. For example, if PwC or Express Scripts contracted with a government agency,

any funds earned under a service contract would not be "financial assistance." *See DeFrank v. Army Fleet Support, L.L.C.*, 363 F. Appx. 732, at *1 (11th Cir. 2010) ("The law is well-established that payments by a government agency, acting as a market participant, do not constitute subsidies which subject the recipient thereof to Section 504 requirements") (citing cases). A bare allegation that Defendants are "in receipt of federal funds" does not make it more plausible than not that any funds are subsidies that subject these private entities to the Rehabilitation Act.

Indeed, because Mr. Vanusanik has not identified any "federal funds" he believes Defendants received, the Court cannot even evaluate whether any purported funds would subject Defendants to the Rehabilitation Act. "[T]he relevant inquiry is whether Congress intended for such aid to constitute a subsidy and subject the recipients to the provisions of the Rehabilitation Act." *Schotz,* 420 F.3d at n. 1 (citation omitted); *DeVargas*, 911 F.2d at 1382 ("in determining which programs are subject to the civil rights laws, court should focus not on market value but on *the intention of the government* to give a subsidy, as opposed to government intent to provide compensation") (citation omitted). Absent any allegations regarding what federal "funds" Defendants supposedly received and why, the Court cannot assess whether Congress "intended for the recipient of such financial benefits to be subject to the Rehabilitation Act." *Schotz*, 420 F.3d at 1136.

Mr. Vanusanik's bare allegation that Defendants are "recipients of federal funds" is not sufficient to state a claim that has "facial plausibility" under *Twombly*. A complaint must "do more than formulaically recite, in conclusory

fashion, the elements of a cause of action under § 504," and "[b]road allegations that all Defendants received public funding, without more, cannot support a cause of action under Section 504." *McElroy v. Tracy Unified Sch. Dist.*, No. 207CV00086MCE-EFB, 2008 WL 4754831, at *5 (E.D. Cal. Oct. 29, 2008) (dismissing Section 504 claim). *See also Lee v. Corr. Corp. of Am.*, 61 F. Supp.3d 139, 144 (D.D.C. 2014) (granting motion to dismiss, holding "[b]ecause plaintiff does not allege that defendant receives subsidies from the federal government, the Court will dismiss his Rehabilitation Act claim. . . Although defendant receives federal funding through its contracts with [government], it does not receive 'Federal financial assistance' within the meaning of the Rehabilitation Act."); *Goodman v. The Robert A. Deyton Det. Facility*, No. 1:15-CV-1724-TWT, 2015 WL 5480046, at *4–5 (N.D. Ga. Sept. 15, 2015), *appeal dismissed* (11th Cir. 15-14293) (Dec. 8, 2015) (applying *Lee* and dismissing claims under Rehabilitation Act); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908–09 (9th Cir. 2013) (citations omitted) ("Congress intended to strictly limit the scope of the [Rehabilitation Act] solely to those who actually '"receive" federal financial assistance' . . . Because Castle has not alleged facts which plausibly demonstrate that Eurofresh receives federal financial assistance, Castle's RA claim against Eurofresh was properly dismissed").

***Second***, Mr. Vanusanik fails to state a claim under the Rehabilitation Act because he does not allege that the Plan's requirement that Specialty medications be dispensed by Accredo is discrimination "solely by reason of" his alleged disability. "Plaintiffs claiming intentional discrimination under the

Rehabilitation Act must show that they were discriminated against '*solely* by reason of [their] disability,'" as opposed to a "lesser 'but for' standard of causation." *Ctr. v. Sec'y, Dep't of Homeland Sec.*, No. 8:15-CV-2097-T-36TBM, 2017 WL 5618102, at *5, n.4 (M.D. Fla. Sept. 7, 2017), *aff'd*, 895 F.3d 1295 (11th Cir. 2018) (citation omitted); *accord Wade v. Fla. Dep't of Juvenile Justice*, 745 F. Appx. 894, 896 (11th Cir. 2018) ("The burden of establishing causation is higher under the Rehabilitation Act, requiring proof that the individual was discriminated against solely by reason of her disability").

Nowhere does Mr. Vanusanik allege that he was discriminated against <u>solely</u> by reason of his disability. To the contrary, he alleges that the Plan requires Specialty medications to be filled by Accredo out of "self-interest" to "steer" members to the allegedly "ESI-owned" specialty pharmacy. Am. Compl. ¶¶ 69, 103, 144. This defect is also fatal to Count IV. *See J.A.M. v. Nova Se. Univ., Inc.*, 646 F. Appx. 921, 927 (11th Cir. 2016) (affirming dismissal of Section 504 claim where plaintiff did not allege facts demonstrating that defendant acted "solely by reason of . . . his disability."); *Garrett v. Postmaster Gen. U.S. Postal Servs.*, 725 F. Appx. 782, 784 (11th Cir. 2018) (affirming dismissal of Rehabilitation Act claim where plaintiff "failed to plead facts showing that that decision was 'solely by reason of' his disability, as opposed to other reasons.").

In *Doe v. BlueCross BlueShield of Tennessee, Inc.*, the court dismissed plaintiff's claim that his health benefit plan discriminated against him under the Rehabilitation Act by requiring him to obtain specialty medications used to treat

HIV/AIDS through a designated pharmacy. No. 217CV02793TLPCGC, 2018 WL 3625012 (W.D. Tenn. July 30, 2018), *aff'd,* 926 F.3d 235 (6th Cir. 2019). The Court held that since Plaintiff alleged that "Defendant's motivation for providing allegedly substandard services for disabled patients is profit," plaintiff could not show there was discrimination *solely* based upon his disability. 2018 WL 3625012, at *4. The Sixth Circuit affirmed, concluding, "the plan's specialty medications program did not discriminate against him based on disability." 926 F.3d at 241.

In *Lange v. Houston Cty., Georgia*, No. 5:19-CV-392 (MTT), 2020 WL 6372702, at *7 (M.D. Ga. Oct. 30, 2020), plaintiff alleged that her health care plan discriminated against her based on her gender dysphoria because it excluded coverage for gender reassignment surgery. *Id.* at *1. The Court dismissed her claim, holding: "Lange has access to the same health plan as everyone else, and the fact the health plan provides more adequate treatment for some conditions than for others does not show discrimination. Because [defendant] does not, through the Exclusion, deny Lange access to health care or discriminate against her within the meaning of the Rehabilitation Act, she fails to state a claim." *Id.* at *7. ‼

Similarly, here, Mr. Vanusanik does not allege that he was discriminated against solely because of his disability, and he does not allege that he was treated any differently than any other plan member taking Specialty medications. Mr. Vanusanik's claim that the Plan requires all members to fill Specialty medications at a designated pharmacy for financial reasons does not state a claim for disability discrimination under the Rehabilitation Act, as a matter of law.

## V. Count V fails to state a claim because it asks this Court to impermissibly rewrite the SPD.

Count V is more of the same, seeking "a declaratory judgment from this Court that [Mr. Vanusanik] can obtain his medication from a pharmacy other than Accredo." Am. Compl. ¶ 148. Count V mirrors Count I and must be dismissed. *See Publix Super Markets, Inc. v. Figareau*, No. 8:19-CV-545-T-27AEP, 2019 WL 6311160, at *3 (M.D. Fla. Nov. 25, 2019) ("even if a declaratory judgment is available in an ERISA action, the claim is duplicative and unnecessary."); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-CV-6551 TPG, 2014 WL 4058321 at *5 (S.D.N.Y. Aug. 15, 2014) ("plaintiffs' declaratory judgment claim is duplicative of its claim for benefits under ERISA § 502 (a)(1)(B). Defendants' motion to dismiss the declaratory judgment claims is granted.").

Moreover, Mr. Vanusanik cannot be entitled to the relief sought because, as explained with respect to Count I, the Plan requires that Specialty medications be dispensed by Accredo. The Court cannot issue a declaratory judgment granting Mr. Vanusanik a right to benefits that simply are not provided under his plan.

## Conclusion

Express Scripts respectfully requests that this Court dismiss the Complaint.

## Local Rule 3.01(g) Certification

Counsel for Express Scripts has conferred with counsel for Mr. Vanusanik in a good faith effort to resolve this motion. The parties do not agree on a resolution. The conference occurred via telephone on February 25, 2021.

Dated: February 26, 2021

By: /s/ *Kyle Seelbach*

Shari Gerson
Florida Bar No. 17035
GRAYROBINSON, P.A.
401 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL 33301
Telephone: (954) 761-8111
Facsimie: (954) 761-8112
Shari.gerson@gray-robinson.com

Kyle P. Seelbach (admitted *pro hac vice*)
Mohsen Pasha (admitted *pro hac vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1550
kyle.seelbach@huschblackwell.com
mohsen.pasha@huschblackwell.com

*Attorneys for Defendant*
*Express Scripts, Inc.*

.

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing document to be electronically served through the Court's CM/ECF system on all users registered with that system on February 26, 2021.

/s/*Kyle Seelbach*