**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| VITALIJ VANUSANIK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:20-cv-02839-CEH-TGW |
| | ) | |
| v. | ) | Hon. Charlene Edwards Honeywell |
| | ) | |
| PRICEWATERHOUSE COOPERS LLP AND EXPRESS SCRIPTS, INC., | ) | Dispositive Motion |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

Defendant PricewaterhouseCoopers LLP ("PwC"), pursuant to Rules 12(b)(1) and 12(b)(6), moves this Court to dismiss the Amended Complaint with prejudice.

## I. Introduction

Plaintiff Vitalij Vanusanik, who alleges that he is a participant in PwC's Staff Medical Plan (the "Plan"), asserts ERISA claims seeking a benefit to which he is not entitled under the Plan—namely, the ability to fill his prescriptions for Specialty medications at any "in-network" pharmacy of his choosing. But under the terms of the Plan, Plaintiff must obtain Specialty medications from specialty pharmacy Accredo. Based on the same allegations, Plaintiff claims that PwC has breached fiduciary duties and discriminated against him because of his disability in violation of the Rehabilitation Act. All of these claims fail as a matter of law.

*First*, in Count I, Plaintiff asserts he was denied Plan benefits in violation of ERISA § 502(a)(1)(B) but Plaintiff does not identify "the specific plan terms that confer the benefits sought." *RMP Enters., LLC v. Connecticut Gen. Life Ins. Co.*, 2018 WL 6110998, at *6 (S.D. Fla. Nov. 21, 2018). To the contrary, Plaintiff admits that the Plan does *not* confer the benefit he seeks, namely coverage for his Specialty medications obtained from a pharmacy other than Accredo.

*Second*, Counts II and III for breach of fiduciary duty, failure to monitor, and co-fiduciary liability fail because they are impermissibly duplicative; Plaintiff fails to plausibly allege a breach of fiduciary duty by PwC; and Plaintiff fails to adequately allege that PwC failed to monitor co-defendant Express Scripts, Inc. ("ESI") or that ESI breached a duty for which PwC may be liable as a co-fiduciary.

*Third*, Count IV for violation of the Rehabilitation Act fails because the Amended Complaint does not plausibly allege that the Act applies to PwC or that PwC discriminated against Plaintiff "solely by reason" of his alleged disability.

*Fourth*, Count V for declaratory relief should be dismissed because declaratory relief is a remedy, not a stand-alone claim, and upon the dismissal of Counts I, II, III, and IV, there will be no actual controversy between PwC and Plaintiff. For these reasons. Plaintiff's claims should be dismissed with prejudice.

## II. Summary of Plaintiff's Allegations[1] and Relevant Plan Terms

Medical benefits under the Plan are administered by non-party UnitedHealthcare, Inc. ("UHC"). Amended Complaint ("Am. Compl.") ¶ 12. ESI administers the Plan's prescription drug benefits as its pharmacy benefit manager ("PBM"). *Id.* ¶¶ 14, 19, 24. Non-party Accredo Health Group, Inc. ("Accredo") is a specialty pharmacy owned by ESI. *Id.* ¶¶ 15, 23.

### A. The Plan Requires Specialty Medications Be Obtained Only at Accredo

The Plan's summary plan description (the "SPD"), which is attached to the Amended Complaint, Am. Compl., ¶ 1 and Ex. A,[2] states: "For purposes of claims administration of the prescription drug Benefits, the Plan Administrator has assigned fiduciary responsibility for claim determinations to Express Scripts." SPD, p. 147; Am. Compl., ¶ 14. Prescription drugs are divided into four categories in the SPD: generic, preferred brand, non-preferred brand, and Specialty. SPD, p. 167. The SPD defines "Specialty medications" to include those medications used to treat hemophilia (applicable here), SPD, p. 168, and provides:

> After the first fill, you are required to use Accredo, Express Scripts' Specialty pharmacy . . . . You will be responsible for the entire cost of Specialty medications if you continue to purchase them at a retail pharmacy after the first purchase. Further, if you do not use Accredo after the first fill, charges will not apply toward your Annual Deductible or your Out-of-Pocket Maximum. To avoid paying more for these medications, use Accredo.

[1] These facts, which exclude Plaintiff's legal conclusions, are presumed to be true for purposes of PwC's Motion to Dismiss only.
[2] Because the SPD was attached to the Amended Complaint, the Court may consider it on a motion to dismiss. *Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, 1058 (S.D. Fla. 1997).

SPD, p. 168; *see also* Am. Compl., ¶ 27.

Notwithstanding the definition in the SPD of Specialty medications as including prescription drugs for the treatment of "complex conditions" including the hemophilia from which Plaintiff suffers, SPD, p. 168, Plaintiff incorrectly alleges that "there is no requirement to have the prescriptions filled through Accredo . . . ." Am. Compl., ¶ 94 (citing SPD). But the SPD provisions Plaintiff cites do *not* address Specialty medications, but, rather, non-Specialty medications, and the SPD requires that Specialty medications be filled at Accredo. SPD, p. 168.

### B. Plaintiff Demands Benefits Not Provided Under the Plan

Upon becoming a Plan participant, Plaintiff was required to utilize Accredo to obtain his hemophilia-related Specialty medication. Am. Compl., ¶¶ 26-27. Plaintiff alleges that Accredo "failed to timely and accurately fill and deliver his medication"; that Accredo initially invoiced him incorrectly for his medication (although he does not contend that he ever paid incorrect or excessive amounts); that Plaintiff suffered bleeds in July 2018 and June 2020; and that Plaintiff "was forced to go to a local hospital on multiple occasions." *See id.* ¶¶ 29-44, 78. From November 2018-February 2020 and again in March and April 2020, ESI allegedly gave him an "override" of Plan terms to fill his prescriptions at a non-Accredo pharmacy, and Plaintiff obtained his medications at "InfuCare," which Plaintiff says is an in-network retail and specialty pharmacy. *Id.* ¶¶ 47-50, 54. Plaintiff says that ESI granted "overrides" because Accredo allegedly "recogniz[ed] its inability to properly care for" and "provide life-sustaining medication to" him. *Id.* ¶¶ 47, 54.

Plaintiff also alleges that the SPD entitles him to a Personal Health Support Nurse (Am. Compl., ¶ 46 (citing SPD, p. 23)) and complains that "no representative of Accredo ever called or otherwise contacted him to see how he was doing" and in calls to Accredo, he was "connected to a general customer service representative who had no knowledge of hemophilia medication requirements and risk factors." *Id.* ¶¶ 45, 90. As a result, Plaintiff alleges he was denied "appropriate medical care." *Id.* ¶¶ 46, 84, 92. But the Plan provisions describing "appropriate medical care" and Personal Health Support Nurses (*id.* ¶ 46), are part of the medical benefits program administered by UHC, not ESI. *See* SPD, p. 23. A participant who wants a Personal Health Support Nurse is directed to call UHC at a designated phone number. *See id.* at 24. Plaintiff does not allege that he made such a call.

Plaintiff further alleges that in his appeal denial letters, ESI stated: "Your plan's benefit only allows retail refills beyond the limit in situations where a member is able to obtain the drug at a retail pharmacy for a lower cost than through the ESI Pharmacy." Am. Compl., ¶¶ 58, 67, Ex. B, D. Plaintiff does not identify any SPD provision permitting him to obtain Specialty medications from any pharmacy other than Accredo. *See generally* Am. Compl.; SPD.[3]

Plaintiff ultimately seeks injunctive and declaratory relief allowing him to obtain his Specialty medications from an "in-network" pharmacy of his choice and

[3] Plaintiff also alleges that Accredo improperly disclosed his medical information in violation of HIPAA. Am. Compl., ¶¶ 71-72. Plaintiff does not allege that PwC had any involvement in the purported disclosure, nor does he appear to base any of his claims on these allegations. *See also Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010) ("We decline to hold that HIPAA creates a private cause of action . . . .").

an order "[a]warding [him] his benefits wrongfully denied by permitting him to obtain his medication from any pharmacy in ESI's network, including, specifically, InfuCare." Am. Compl., p. 38. These benefits are not available under the Plan.

## III. Applicable Legal Standards

Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). And, absent a true case or controversy, Plaintiff's claim for declaratory relief lacks subject matter jurisdiction under Rule 12(b)(1). *FedEx Corp. Servs., Inc. v. Eclipse IP LLC*, 15 F. Supp. 3d 1346, 1347-48 (N.D. Ga. 2013).

## IV. Count I for Denial of Benefits Fails to State a Claim

In Count I for denial of benefits and clarification of rights under ERISA Section 502(a)(1)(B), Plaintiff alleges that he was improperly denied: the ability to obtain Specialty medications from a pharmacy other than Accredo, a Personal Health Support Nurse, and "appropriate medical care." This claim fails.

### A. Count I Fails To the Extent Based on the Denial of Plaintiff's Request to Obtain Specialty Medications from a Pharmacy Other Than Accredo

Count I fails because under the Plan, Plaintiff is not entitled to the benefit he seeks—namely, the ability to obtain his Specialty medications from InfuCare or any pharmacy other than Accredo. *See* Am. Compl., p. 38, Prayer for Relief.

#### 1. Plaintiff is Not Entitled to Obtain Specialty Medications at a Pharmacy of His Choice Because the Plan Does Not Provide for This Benefit

Section 502(a)(1)(B) allows a participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). "The law is clear that 'benefits payable under an ERISA plan are limited to the benefits specified in the plan.'" *Living Tree Labs., LLC v. United Healthcare Servs., Inc.*, 2018 WL 1536609, at *2 (S.D. Fla. Mar. 29, 2018) (quotation omitted). Indeed, the relevant "statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011). "To state a plausible claim under ERISA, then, a plaintiff must provide the court with enough factual information to determine whether the services were indeed covered services under the plan. A plaintiff must identify a specific term of the plan that covers the services at issue and must provide facts sufficient to show that the services meet whatever requirements the plan imposes for coverage." *H.H. v. Aetna Ins. Co.*, 342 F. Supp. 3d 1311, 1316 (S.D. Fla. 2018) (internal citations and punctuation omitted). A court

may not award a benefit not provided under the plan by making judgments on what should have been covered. *See Floyd Med. Ctr. v. Warehouse Home Furnishings Distribs., Inc.*, 2012 WL 1438470, at *6 (M.D. Ga. Apr. 25, 2012).

Here, Plaintiff seeks the ability "to obtain his medication from any pharmacy in ESI's network, including, specifically, InfuCare . . . ." Am. Compl., p. 38. But he has not identified any Plan term that confers this benefit, and in fact, Plaintiff concedes that this benefit is *not* covered under the Plan. *See* SPD, p. 168; Am. Compl. ¶ 27. Because the Plan does not provide the benefit Plaintiff seeks, he fails to state a claim under § 502(a)(1)(B). *See Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 850 (11th Cir. 2013) (affirming dismissal of § 502(a)(1)(B) claim where complaint did not create plausible inference that benefit was covered); *RMP Enters.*, 2018 WL 6110998, at *6 ("To state a claim for benefits under ERISA, a plaintiff must plead facts showing that there are 'benefits due' to them 'under the terms of' an ERISA plan. This means Plaintiffs are required to identify the specific plan terms that confer the benefits sought.") (citations omitted).

The Ninth Circuit recently affirmed the dismissal of a similar claim. In *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020), the plaintiffs were required by their plans, to obtain specialty medications from a specific specialty pharmacy. The plaintiffs alleged under Section 502(a)(1)(B) that they were denied the benefit of obtaining specialty medications at any in-network pharmacies. *Id.* at 1213. The Ninth Circuit affirmed dismissal of this claim, noting that plaintiffs "have not identified any provision in their plans conferring" the benefit they sought. *Id.*

### 2. Plaintiff's Wholly Unsupported Speculation About Other Plan Documents Cannot Save Count I

Despite admitting that the SPD terms do not entitle him to the benefit he seeks (*see* Am. Compl., ¶ 27), Plaintiff tries to save Count I by alleging "[u]pon information and belief" that additional document(s) make up the Plan. *Id.* ¶ 48. This unsupported allegation cannot salvage Count I. The SPD clearly states:

> PwC is pleased to provide you with this Summary Plan Description (SPD), which describes the terms and conditions of, and the health Benefits available to you and your covered family members under the Staff Medical Plan (Plan), which is a component of the PricewaterhouseCoopers LLP Health & Welfare Benefits Plan. *This SPD*, together with the SPDs of each other component benefit of the Health & Welfare Benefits Plan, *serves as the Plan document for the Health & Welfare Benefits Plan*.

SPD, p. 1 (emphasis added). It is plain from the SPD that there is no other plan document for the Staff Medical Plan. Furthermore, allegations made "upon information and belief" need not be taken as true and are insufficient to avoid dismissal. *See Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (affirming dismissal and declining to consider allegation made upon information belief: "for purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief'") (citations omitted).

### 3. Plaintiff's References to Extra-Plan Documents and Past Conduct Cannot Save Count I

Plaintiff also suggests that the claim and appeal denial letters (Am. Compl. ¶¶ 58, 67, Exhs. B, D) allow him to obtain his Specialty medications at an "in-network" pharmacy of his choice. But this does not establish a viable Section 502(a)(1)(B) claim. First, the SPD states that "[i]f there is a conflict between this

SPD and any benefit summaries (other than Summaries of Material Modifications) provided to you, this SPD will control." SPD, p. 5. Thus, the SPD – which Plaintiff admits does not allow the use of a Specialty pharmacy of his choice, Am. Compl. ¶ 27 – trumps any purportedly inconsistent language in the letters.

Second, Exhibits B and D are mere claims determinations, which are *not* plan documents. *See, e.g.*, *Alday v. Container Corp. of Am.*, 906 F.2d 660, 665-66 (11th Cir. 1990) (letters sent to employees, summary booklet, and retirement seminar papers did not constitute plan documents); *Potter v. Blue Shield of California Life & Health Ins. Co.*, 2017 WL 1334289, at *6 (C.D. Cal. Apr. 7, 2017) ("[T]he initial denial letter is not a Plan document"). And, these communications cannot amend the unambiguous terms of a written plan document. *See In re Fairchild Indus., Inc. & GMF Invs., Inc., ERISA Litig.*, 768 F. Supp. 1528, 1533 (N.D. Fla. 1990) (finding purchase agreement did not amend plan "[b]ecause ERISA prohibits the amendment of an employee benefit plan through informal written documents, or by any other means except as specified in the plan documents themselves pursuant to ERISA"). The Eleventh Circuit rejected the invocation of communications to contradict and override an SPD's provisions. *Alday*, 906 F.2d at 665-66 (finding "no need to refer to other communications between the parties" where SPD "clearly functioned as the plan document required by ERISA" and "unambiguously set out the rights of the parties").

Plaintiff also alleges based on his prior receipt of an "override" that he has been denied benefits under the Plan "as interpreted and implemented by" PwC and

ESI. *See, e.g.*, Am. Compl., ¶¶ 48, 49, 54, 62, 65. But a course of conduct cannot amend a Plan or lead to an award of benefits contrary to Plan terms, and thus the alleged "overrides" cannot salvage Count I. *See Lott v. Hertz Custom Ben. Program*, 961 F.2d 220, at *2 (10th Cir. 1992) (unpublished) ("[D]efendants' course of conduct cannot amend or modify the terms of this ERISA-governed employee benefit plan."); *In re Fairchild*, 768 F. Supp. at 1533.

Finally, if Plaintiff wants the Court to "reform" the Plan to offer a benefit it does not currently offer, Am. Compl. ¶ 97, such relief is unavailable under Section 502(a)(1)(B). *See, e.g.*, *Marquez v. Flextronics Am., LLC*, 2013 WL 5448072, at *7 (S.D. Fla. Sept. 30, 2013) ("Reformation is not available to Marquez under claim 5 because he bases this claim on ERISA § 502(a)(1)(B) and the Supreme Court has held that this section—which 'speaks of "enforcing" the "terms of the plan," not of changing them'—does not authorize a court to reform a plan.") (citation omitted). Instead, under Section 502(a)(1)(B), Plaintiff may only enforce the Plan's terms as written. Because he identifies no Plan provision permitting him to obtain Specialty medications from a non-Accredo pharmacy, Count I must be dismissed.

### B. Count I Fails to the Extent it is Based on the Other Benefits Referenced in the Amended Complaint

Plaintiff also alleges he was denied a Personal Health Support Nurse, which is part of a program to help provide "appropriate medical care." *See, e.g.*, Am. Compl., ¶¶ 46, 84, 85, 88, 89, 92. This cannot be the basis of Count I, either. First, Plaintiff does not seek an award of this alleged benefit. *See* Prayer for Relief.

Second, the Personal Health Support Nurse program is not a benefit administered by ESI or part of the prescription drug coverage under the Plan. Instead, it is a program that non-party UHC can make available in its discretion to a Plan participant. SPD, p. 23. Plaintiff does not allege he sought these benefits from UHC, as the Plan requires (*id.* p. 24) or that UHC, to which PwC delegated fiduciary responsibility for deciding medical claims (*id.* p. 147), denied any such request.

Furthermore, Plaintiff does not allege that he exhausted his administrative remedies with respect to receiving the appointment of a Personal Health Support Nurse for receipt of "appropriate medical care." Thus, any claim based on the alleged denial of these benefits fails. *See Cousins v. United Healthcare, Inc.*, 2020 WL 1666628, at *3 (S.D. Fla. Apr. 3, 2020) ("Plaintiff must set forth the claims for which he has exhausted his administrative remedies, and how he has done so.").

In short, the Personal Health Support Nurse and the "appropriate medical care" language cited by Plaintiff have nothing to do with the pharmacy from which he can obtain Specialty medications. He cannot base a Section 502(a)(1)(B) claim on Plan language taken out of context or programs unrelated to the benefit he claims he was denied. *See, e.g.*, *Stidham v. Solutia, Inc.*, 215 F. Supp. 2d 1268, 1272 (N.D. Ala. 2002) (criticizing "misplaced" argument based on plaintiff taking SPD "attachment out of context and ignor[ing] the other language of the SPD.").

## V. Count II Fails to State a Claim for Breach of Fiduciary Duty

In Count II, Plaintiff alleges that PwC breached its fiduciary duties to him. That claim fails for multiple reasons.

### A. Count II is Impermissibly Duplicative of Count I

Count II, which is brought pursuant to ERISA Section 502(a)(3) (Am. Compl., p. 30), is impermissibly duplicative of Count I as both claims seek the same remedy: the right to obtain Specialty medications at a pharmacy of Plaintiff's choosing. As such, Count II is merely a repackaged claim for benefits, and Plaintiff may not seek the same remedy for an alleged breach of fiduciary duty that he seeks under Section 502(a)(1)(B). *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *Morrison v. Life Ins. Co. of N. Am.*, 2008 WL 11425362, at *7 (N.D. Ala. June 17, 2008) (dismissing Section 502(a)(3) claim because "based on the same allegations of misconduct, specifically, the denial of benefits" as Section 502(a)(1)(B) claim).

### B. Count II Fails Because Plaintiff Complains that PwC/ESI Followed the Plan

Count II still fails even if viewed as distinct from Count I. To state a claim under Section 502(a)(3), Plaintiff must allege a substantive violation of the Plan or ERISA. *See* 29 U.S.C. § 1132(a)(3); *see also Moore v. Am. Fed'n of Television & Radio Artists*, 216 F.3d 1236, 1247 (11th Cir. 2000) (affirming dismissal of 502(a)(3) claim that "contains no allegation, within the four corners of that count, that the [defendants] violated a substantive provision of ERISA or the terms of the [plan]"). Here, consistent with the Plan, Plaintiff was not permitted to obtain Specialty medications from a non-Accredo pharmacy. In other words, Plaintiff complains that the fiduciary followed the Plan documents and denied him a benefit not provided by the Plan. That cannot be the basis of a breach of fiduciary duty

claim. *See Heffner v. Blue Cross Blue Shield of Alabama, Inc.*, 2009 WL 10727576, at *4 n.4 (M.D. Ala. Mar. 13, 2009) ("[T]here can be no breach of fiduciary obligation when Blue Cross did not [sic] nothing more than follow and apply the governing provisions of the Plan."), *aff'd*, 366 F. App'x 975 (11th Cir. 2010).

**C. Count II Fails As Plaintiff Complains About Plan Design**

Plaintiff's overarching allegation in Count II is that that PwC breached its fiduciary duties by insisting he obtain his Specialty medications from Accredo because this Plan requirement results in PwC "engaging in self-dealing" and "put[ting its] own interests ahead of" Plaintiff's interests. *See, e.g.*, Am. Compl., ¶¶ 69, 103, 114. However, the decision to require participants to obtain Specialty medications from Accredo is one of *plan design*, which is a non-fiduciary settlor function and thus cannot serve as the basis for a breach of fiduciary duty claim.

ERISA recognizes that a party can wear multiple hats and its fiduciary provisions only apply to a party to the extent it is acting in a fiduciary capacity in relation to a plan. 29 U.S.C. § 1002(21)(A). "In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

"[I]t is well-established that an employer's decisions regarding whether, how much, and to whom to provide benefits, known generally as 'plan design' decisions, do not fall within the scope of the defined functions of an ERISA fiduciary, and thus that an employer can make such decisions without being subject to liability

for breach of fiduciary duty under ERISA." *Burns v. Rice*, 39 F. Supp. 2d 1350, 1356 (M.D. Fla. 1998) (citations omitted). Indeed, "[n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (citations omitted). Therefore, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans," and "[w]hen employers undertake those actions, they do not act as fiduciaries . . . ." *Id.* at 890 (citations omitted). "ERISA's fiduciary duty requirement simply is not implicated where [an employer] . . . makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts . . . ." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). Courts dismiss breach of fiduciary duty claims based on plan design. *See Fogle v. IBM Corp.*, 2020 WL 1873567, at *11 (M.D. Fla. Apr. 15, 2020) (dismissing breach of fiduciary duty claim based on "the initial design of the Plan"); *Burns*, 39 F. Supp. 2d at 1358 (dismissing breach of fiduciary duty claim: "because it is clear that Defendant's challenged actions . . . were in the nature of plan design decisions, it is clear that these actions are not subject to ERISA's fiduciary standards."), *aff'd*, 210 F.3d 393 (11th Cir. 2000).

Here, Plaintiff dislikes how the Plan was constructed and disapproves of the decision to require participants to obtain Specialty medications from Accredo. But this is a plan design decision and cannot constitute a breach of fiduciary duty. *Moeckel v. Caremark, Inc.,* 622 F. Supp. 2d 663, 678 (M.D. Tenn. 2007) ("decision

to enter into the PBM Agreement with Caremark, and to agree to the various terms contained therein, was a plan design decision, exempt from fiduciary review."); *In Re ExpressScripts/Anthem ERISA Litigation,* 285 F. Supp. 3d 655, 681-82 (S.D.N.Y. 2018) (finding company did not act as fiduciary in negotiating PBM agreement). Thus, Count II must be dismissed against PwC at it is based on the Plan's design requiring that he obtain his Specialty medications at Accredo.

### D. Count II Fails to the Extent Plaintiff Complains About the Alleged Failure to Notify Him of Plan Benefits

Plaintiff also alleges that PwC breached its fiduciary duty by failing to individually notify him of Plan benefits to which he was purportedly entitled, namely a Personal Health Support Nurse for the provision of "appropriate medical care." Am. Compl., ¶¶ 8, 32, 46, 53. But, Plaintiff acknowledges that PwC provided him with the SPD, *id.* ¶¶ 1, 46 and Ex. A, and ERISA does not require notice of benefits beyond the SPD. "[C]ourts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances." *Barrs v. Lockheed Martin*, 287 F.3d 202, 207-08 (1st Cir. 2002) (citations omitted); *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 817-18 (7th Cir. 1997) ("ERISA does not require plan administrators to investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees."); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405, 406 (6th Cir. 1998) (fiduciary not liable "for a failure to disclose information that it is not required to

be disclosed."). Plaintiff's assertion that PwC did not separately inform him of benefits described in the SPD cannot underlie a breach of fiduciary duty claim.

### E. Count II Fails Because the Remedy Sought is Unavailable

Finally, the remedy sought by Plaintiff is unavailable under ERISA. Plaintiff seeks permanent injunctive relief prohibiting PwC and ESI from requiring him to obtain his Specialty medications from Accredo and preventing him from using another in-network (non-Specialty) pharmacy of his choice. Am. Compl., p. 38. But under ERISA, PwC may amend or terminate the Plan at any time, *see, e.g.*, *Lockheed*, 517 U.S. at 890; *Mohalley v. Kendall Health Care Prod. Co.*, 903 F. Supp. 1530, 1537 (M.D. Ga. 1995), and the Plan specifically says that it may be amended or terminated at any time for any reason. SPD, p. 4. A permanent injunction would deny PwC the ability to amend the Plan, and thus is inconsistent with ERISA.

## VI. Count III Fails to State a Breach of Fiduciary Duty Claim Based Upon Failure to Monitor or Co-Fiduciary Liability

In Count III, Plaintiff invokes ERISA Sections 502(a)(3) to allege breach of fiduciary duty based on PwC's alleged failure to monitor ESI and PwC's alleged co-fiduciary liability for ESI's purported breach. With respect to co-fiduciary liability, a fiduciary is liable for another fiduciary's breach of fiduciary duty:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). Plaintiff also alleges that PwC "has a duty to monitor the activities of co-fiduciaries to the Policy pursuant to 29 U.S.C. § 1104(a)(1)(A)-(B)." Am. Compl., ¶ 124.

Count III fails for multiple reasons. First, it is based on allegations that ESI required Plaintiff to obtain his medication from Accredo, *id.* ¶ 123, and PwC either failed to monitor ESI or is liable as a co-fiduciary. As such, Count III is impermissibly duplicative of Count I and should be dismissed. *See* Section V.A *supra*. And, if Plaintiff is complaining that hemophilia medication is designated a Specialty medication, Am. Compl. ¶ 123, or that utilizing Accredo "directly benefited ESI," *id.*, those allegations relate to plan design, a non-fiduciary function that cannot underlie a breach of fiduciary duty claim. *See* Section V.C *supra*.

Second, to sustain a co-fiduciary liability or breach of the duty to monitor claim, there must be an underlying breach of fiduciary duty. *See, e.g.*, *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1351-52 (N.D. Ga. 2010) (finding co-fiduciary claim failed without underlying breach); *see also Cervantes v. Invesco Holding Co. (US), Inc.*, 2019 WL 5067202, at *7 (N.D. Ga. Sept. 25, 2019) (dismissing failure to monitor and co-fiduciary liability claims for lack of underlying breaches of fiduciary duty); *Spear v. Fenkell*, 2015 WL 3643571, at *22 (E.D. Pa. June 12, 2015) ("[I]f there is no fiduciary violation, there is no failure to monitor claim."); *In re Nokia Erisa Litig.*, 2011 WL 7310321, at *5 (S.D.N.Y. Sept. 6, 2011) ("Having failed to sufficiently allege an antecedent breach of a fiduciary

duty by the monitored parties in this case, Plaintiffs necessarily fail to state a plausible claim for breach of the duty to monitor."). Here, Count III alleges that PwC "failed to prudently monitor" ESI. Am. Compl., ¶¶ 125-27. But ESI cannot breach a fiduciary duty by following Plan documents to deny benefits to which Plaintiff is not entitled. *See supra*; ESI Motion to Dismiss. Without an underlying breach by ESI, PwC is not liable as co-fiduciary or for failing to monitor ESI.

Third, even if Plaintiff adequately alleged that ESI breached a fiduciary duty, there are no factual allegations that PwC knowingly participated in or knowingly concealed ESI's breach, or knew about ESI's alleged breach and did nothing, as required by Section 1105(a)(1) or (3). Nor does Plaintiff state a claim under Section 1105(a)(2) based on PwC's delegation to ESI of the fiduciary responsibility to make claims decisions where he admits that ESI has the requisite experience (*see, e.g.*, Am. Compl., ¶ 21). As a result, Plaintiff's conclusory assertion that PwC is liable as a co-fiduciary fails. *See, e.g.*, *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 988 (C.D. Cal. 2004) (dismissing co-fiduciary claim where no factual allegation showed that "Defendants knew of the breaches, participated in the breaches, or made no effort to remedy them"); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1230-31 (D. Kan. 2004) (dismissing "conclusory" co-fiduciary claim where plaintiffs "simply parrot[ed] the language of the co-fiduciary liability statute"); *Herrington v. Household Int'l, Inc.*, 2004 WL 719355, at *10 (N.D. Ill. Mar. 31, 2004) (dismissing "conclusory" co-fiduciary claim based on allegation that defendants "knowingly undert[ook] to conceal" alleged breach of fiduciary duty);

*Stein v. Smith*, 270 F. Supp. 2d 157, 175 (D. Mass. 2003) (co-fiduciary claims dismissed due to inadequately pled allegations regarding defendants' knowledge).

Finally, with respect to failure to monitor, there are no factual allegations that PwC failed to review ESI's activities or had a deficient monitoring system. Consequently, Count III must be dismissed. *See, e.g.*, *Guididas v. Cmty. Nat. Bank Corp.*, 2012 WL 1656771, at *5 (M.D. Fla. May 10, 2012) (dismissing failure-to-monitor claim where complaint "does not contain sufficient factual allegations to comply with *Iqbal*."); *see also Romero v. Nokia, Inc.*, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (same, where "Plaintiff does not present any specific facts regarding the monitoring process or how it was deficient.").

## VII. Count IV Fails to State a Claim Under the Rehabilitation Act

In Count IV, Plaintiff alleges violation of Section 504 of the Rehabilitation Act, which provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). Count IV also fails as a matter of law for multiple reasons.

### A. Plaintiff Fails to Plausibly Allege that PwC Received "Federal Financial Assistance" In the Relevant Time Period

The Eleventh Circuit has held that the term "federal financial assistance" as used in Section 504 means "the federal government's provision of a subsidy to an entity," *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005), and so "to determine the applicability of the Rehabilitation Act, a court must determine

whether the government intended to give the defendant a subsidy, as opposed to compensation." *Id.* (internal punctuation and citations omitted). Federal regulations further clarify that "federal financial assistance" does *not* include "a procurement contract or a contract of insurance or guaranty". 45 C.F.R. § 84.3(h). As a result, to state a claim under Section 504 of the Act, it is insufficient to allege that defendant had a federal contract or received federal compensation; rather, a plaintiff must plausibly allege that a defendant received a government *subsidy*. Failure to so plead requires dismissal of a complaint for lack of subject matter jurisdiction. *Shotz*, 420 F.3d at 1338 (affirming dismissal for lack of subject matter jurisdiction where plaintiff did not establish federal financial assistance).

Here, the Amended Complaint falls far short of this pleading standard. Plaintiff does not allege that PwC received federal financial assistance and asserts only that PwC received "federal funds." Am. Compl., ¶ 132. This vague, conclusory, and wholly unsupported allegation fails to even parrot the statutory language, let alone plead facts establishing PwC's receipt of a federal subsidy. *See Shotz*, 420 F.3d at 1335. Consequently, Count IV fails. *See id.*; *Dana v. Baker Hughes, Inc.*, 2015 WL 1932086, at *3 (M.D. Pa. Apr. 28, 2015) (dismissing Section 504 claim: "Plaintiff avers upon information and belief, that the Defendant is a recipient of federal funding and provides no other facts to support this allegation"); *see also I.H. v. Oxnard Sch. Dist.*, 2019 WL 8012378, at *5 (C.D. Cal. Nov. 27, 2019) (same; conclusory allegation of federal financial assistance insufficient); *Hunt v. Univ. of Pittsburgh Med. Ctr.*, 2019 WL 3776545, at *5 (M.D. Pa. Aug. 12, 2019) (same);

*Purcell v. Tulane Univ.*, 2016 WL 6649220, at *4 (E.D. La. Nov. 10, 2016) (same, where plaintiffs merely recited statutory language); *McElroy v. Tracy Unified Sch. Dist.*, 2008 WL 4754831, at *5 (E.D. Cal. Oct. 29, 2008) (same, where plaintiff alleged defendants received "federal funds" without factual allegations).

Nor has Plaintiff sufficiently alleged that PwC received federal financial assistance *during the time period* of the alleged discrimination. *See, e.g.*, *Dana v. Baker Hughes, Inc.*, 2015 WL 5576880, at *6 (M.D. Pa. Sept. 21, 2015). Here, the Amended Complaint contains only a vague and conclusory allegation that PwC and ESI "have been recipients of federal funds at all relevant times." This is insufficient.

### B. Plaintiff Fails to Plausibly Allege that PwC is a "Program or Activity" Covered by Section 504

Plaintiff also fails to adequately allege that PwC is a "program or activity" covered by Section 504. As set forth above, Section 504 applies only to a "program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Section 504 defines "program or activity" in relevant part as follows:

> For the purposes of this section, the term "program or activity" means all of the operations of . . .
>
> (3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship--(i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or (B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship;
> . . .
> any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b). Thus, to state a Section 504 claim, "Plaintiff must also show that she was subject to discrimination under the program or activity for which those funds were received." *Dana*, 2015 WL 5576880, at *11 (citation omitted).

The Amended Complaint does not allege that PwC *as a whole* received federal financial assistance; is principally engaged in education, health care, housing, social services, or parks and recreation; or that a *geographically separate PwC plant or facility* received federal financial assistance and subsequently discriminated against Plaintiff. As such, there is no basis to infer that PwC falls within the conditions allowing Section 504 to reach private corporations. *See Bamat v. Glenn O. Hawbaker, Inc.*, 2019 WL 1125817, at *3 (M.D. Pa. Mar. 12, 2019) (granting judgment where plaintiff failed to adequately allege a "program or activity" receiving "federal financial assistance"); *Dana*, 2015 WL 5576880, at *14 (dismissing Section 504 claim: "Plaintiff has alleged no facts whatsoever detailing the scope, purpose, extent, or place of performance for any of the claimed grant awards."); *McBay v. City of Decatur*, 2014 WL 1513344, at *7 (N.D. Ala. Apr. 11, 2014) ("Without even a bare allegation that they actually were discriminatorily affected by a specific program or activity that receives federal financial assistance, plaintiffs cannot support a claim under the Rehabilitation Act.").

### C. Plaintiff Fails to Plausibly Allege that He Was Discriminated Against "Solely by Reason of" His Disability

A plaintiff bringing a Section 504 claim must plausibly allege that he was discriminated against "solely by reason of his or her disability". 29 U.S.C. § 794(a);

*Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability . . . . Rather, under the Rehabilitation Act, a plaintiff must prove that he suffered an adverse employment action 'solely by reason of' his handicap."). Here, Plaintiff does not allege that the Plan's requirement to obtain Specialty medications at Accredo is "solely by reason of" his alleged disability. To the contrary, he alleges that this requirement is motivated by profit. *See, e.g.*, Am. Compl., ¶¶ 69, 103, 144 (describing "profit," "self-dealing," and "self-interest[]" as reasons for requirement). This defect is fatal to Count IV. *See J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 927 (11th Cir. 2016) (affirming dismissal of Section 504 claim where no facts alleged showing defendant acted "solely by reason of . . . his disability."); *see also Garrett v. Postmaster Gen. U.S. Postal Servs.*, 725 F. App'x 782, 784 (11th Cir. 2018) (same); *Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992) (affirming dismissal of Section 504 claims where discrimination attributed to two reasons); *Datto v. Fla. Int'l Univ. Bd. of Trustees,* 2020 WL 3963713, at *6 (S.D. Fla. July 13, 2020) (dismissing Section 504 claim where complaint alleged basis for discrimination beyond disability).

## VIII. Count V Fails to State a Claim for Declaratory Relief

Finally, Plaintiff's Count V for declaratory relief should be dismissed with prejudice. A declaratory judgment is a remedy, not a stand-alone cause of action. *Feingold v. Budner*, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008). And, the "operation of the Declaratory Judgment Act is procedural only," *Aetna v. Haworth*,

300 U.S. 227, 240 (1937), and does not give rise to a cause of action. Here, because Plaintiff's Counts I, II, III, and IV fail, *see supra*, so, too, does Count V.

Additionally, a court has jurisdiction under the Declaratory Judgment Act to entertain a claim for declaratory relief only if an "actual controversy" exists. *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017). Without an actual controversy, a court's declaration of the rights and obligations of parties would violate the Constitution's prohibition on advisory opinions. *See United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) (noting Article III prohibits advisory opinions, including as to declaratory judgments). Here, dismissal of Counts I-IV against PwC dooms Count V for lack of an "actual controversy" between Plaintiff and PwC. *See Taylor v. Opteum Fin. Servs., LLC*, 2018 WL 6726056, at *7 (N.D. Ga. Oct. 25, 2018).

## IX. Conclusion

For the foregoing reasons, PwC respectfully requests that this Court dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

## Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g) of the United States District Court for the Middle District of Florida, the undersigned conferred with counsel for Plaintiff and counsel for Defendant ESI on February 25, 2021 via phone and is authorized to represent that Plaintiff opposes the entry of an order granting this motion.

Dated: February 26, 2021

Respectfully submitted,

By: */s/ Peter W. Zinober*

Peter W. Zinober
Florida Bar No. 121750
S. Kathleen Massing
Florida Bar No. 722219
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.
100 N Tampa Street, Suite 3600
Tampa, Florida 33602-5867
Telephone: (813) 289-1247
Facsimile: (813) 289-6530
peter.zinober@ogletree.com
kathleen.massing@ogletree.com

Stephen Sheinfeld
(*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
ssheinfe@winston.com

Aviva Grumet-Morris
*(admitted pro hac vice)*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
agmorris@winston.com

*Attorneys for PricewaterhouseCoopers LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2021, the foregoing was filed via CM/ECF and was thereby served upon all counsel of record, including:

Morgan Swing
Harvey W. Gurland, Jr.
Duane Morris, LLP
201 S Biscayne Blvd Ste 3400
Miami, Florida 33131-2318

Shari Gerson
GrayRobinson, P.A.
401 East Las Olas Blvd., Suite 1000
Fort Lauderdale, Florida 33301

*/s/ Peter W. Zinober*
Attormey

46190503.1