### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

VITALIJ VANUSANIK,

      Plaintiff,

v.                            Case No: 8:20-cv-2839-CEH-TGW

PRICEWATERHOUSECOOPERS
LLP and EXPRESS SCRIPTS, INC.,

      Defendants.

_____/

## **O R D E R**

This matter comes before the Court on Defendant Express Scripts, Inc.'s ("Express Scripts") Rule 12(b)(6) Motion to Dismiss (Doc. 39), and Defendant PricewaterhouseCoopers LLP's ("PWC") Motion to Dismiss Amended Complaint (Doc. 40). In the motions to dismiss, Defendants argue that Plaintiff's Amended Complaint fails to state a cause of action against Defendants because Plaintiff has not identified a benefit under the employee medical benefit plan to which he is entitled. Plaintiff filed a response in opposition (Doc. 46). Express Scripts replied (Doc. 52), to which Plaintiff filed a sur-reply. Doc. 55. The Court, having considered the submissions, and being fully advised in the premises, will grant in part and deny in part Defendants' motions.

## I.    BACKGROUND[1]

This is an action brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). On July 1, 2018, Plaintiff, Vitalij Vanusanik, ("Plaintiff") became a participant in PWC's Staff Medical Plan ("the Plan"), which is administered by non-party United Healthcare, Inc. Doc. 27 ¶¶ 1, 12, 26. Plaintiff attaches a copy of the Plan's summary plan description ("Policy SPD") to his Amended Complaint. Doc. 27-1.

PWC is alleged to be the "Plan Sponsor." Doc. 27 at 1. PWC engaged Express Scripts to serve as its agent and pharmacy benefit manager. *Id.* ¶ 14. Express Scripts is a subsidiary of Express Scripts Holding Company. *Id.* Accredo is a specialty and mail order pharmacy owned by Express Scripts Holding Company, and Express Scripts benefits from every prescription dispensed by Accredo. *Id.* ¶¶ 15, 23.

Plaintiff suffers from severe Hemophilia A disease, a bleeding disorder in which an individual lacks a blood-clotting factor. Doc. 27 ¶ 2. It is critical for hemophiliacs to have access to a pharmacist who specializes in hemophilia to provide guidance on dealing with hemophilia complications, side effects, and medications to prevent and/or stop bleeds in an efficient and timely manner. *Id.*

Hemophilia is a condition designated by PWC and its agent, Express Scripts, as requiring specialty medication. *Id.* ¶ 3. The Policy SPD states participants, like

---

[1] The following statement of facts is derived from the Plaintiff's Amended Complaint (Doc. 27), the allegations of which the Court must accept as true in ruling on the instant motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Plaintiff, who require specialty medication to treat complex conditions such as hemophilia, must obtain specialty medications through Accredo. *Id.* ¶ 27; Doc. 27-1 at 177. The Plan required Plaintiff to utilize Accredo to refill his hemophilia prescriptions. *Id.* ¶ 27. According to Plaintiff, however, Accredo repeatedly failed to provide Plaintiff with the medications he needs. *Id.* ¶¶ 3, 29, 44. Accredo failed to timely and accurately fill and deliver his medication, resulting in life-threatening complications. *Id.* ¶ 29.

In July 2018, it took Plaintiff nearly a week, speaking daily with Accredo representatives, to determine whether Accredo would accept copayment assistance, to which Plaintiff is entitled and relies. *Id.* ¶ 30. Further, Accredo failed to connect him with a representative who understood his hemophilia medication regimen despite the requirement of the Plan's Policy SPD that he be provided "personal health support." *Id.* ¶ 31. As a specialty pharmacy, Accredo should be aware of Plaintiff's need for timely receipt of life-saving hemophilia medication. *Id.* As Plan Sponsor, PWC is responsible for the acts of its agents and should have also been aware of the support Plaintiff required. *Id.* ¶ 32. Yet, neither PWC nor Express Scripts advised Plaintiff of his entitlement under the Plan to have personal health support for a participant "living with a chronic condition or dealing with complex health care needs." *Id.*

In July 2018, Plaintiff experienced a bleed because he ran out of his medication and Accredo did not timely fill his medication. *Id.* ¶ 33. The manufacturer of the

medication agreed to provide Plaintiff an emergency supply until Accredo, PWC, and Express Scripts dispensed the medication to him. *Id.* ¶ 34.

In August 2018, when Plaintiff contacted Accredo about refilling his medication, he was again told there would be a delay because his medication was out of stock for two weeks. *Id.* ¶ 36. When Plaintiff finally received his hemophilia medication approximately two weeks later, he also received an invoice for one-hundred thousand dollars for the medication, even though the medication was covered by the Plan. *Id.* ¶ 37. Plaintiff has limited financial means and receipt of this invoice caused him severe emotional stress. *Id.* Two weeks of phone calls later, Plaintiff was able to convince Accredo he was invoiced in error. *Id.* Notwithstanding, Accredo again billed him one-hundred thousand dollars in September 2018, which took a week of daily phone calls to convince Accredo to withdraw the erroneous bill. *Id.* ¶ 38. From August to September 2018, Accredo told Plaintiff his medication was out of stock and would have to be ordered from its supplier. *Id.* ¶ 44. Plaintiff's refills were repeatedly delayed. *Id.* Additionally, during this time, Accredo dispensed the wrong dosage of Plaintiff's medication. *Id.* ¶ 41. Between July and October 2018, Accredo representatives never contacted Plaintiff to see how he was doing despite other pharmacies providing such level of service to Plaintiff. *Id.* ¶¶ 45, 46.

In November 2018, Express Scripts and PWC deviated from the statement in the Policy SPD and allowed Plaintiff to transfer his hemophilia prescription from Accredo to another pharmacy, Factor One Source Pharmacy d/b/a InfuCareRx

4

("InfuCare"). *Id.* ¶ 49. InfuCare is an in-network retail and specialty pharmacy with Express Scripts. *Id.* ¶ 50. InfuCare is a pharmacy dedicated to hemophilia treatment, and InfuCare has always provided Plaintiff with his medication in a timely manner. *Id.* ¶ 52. Accredo does not provide any of the support services provided by InfuCare although the Policy SPD allows for such benefits. *Id.* ¶ 53.

Due to Accredo's lack of support and inability to timely provide Plaintiff with his hemophilia medication, Plaintiff requested Express Scripts allow InfuCare to fill his medication. *Id.* ¶ 54. The Plan Sponsor and Express Scripts allowed Plaintiff to obtain his medication from InfuCare for a period of one year between February 2019 and February 2020. *Id.* While the Plan provided that Plaintiff was required to obtain his specialty medications from Accredo, PWC and Express Scripts repeatedly represented to Plaintiff in writing and by phone that he could obtain his hemophilia medication at a pharmacy other than Accredo so long as that pharmacy will provide the hemophilia medication at a "cost lower than through the [Express Script] pharmacy." *Id.* ¶¶ 25, 28.

In March 2020, when InfuCare attempted to refill Plaintiff's monthly medication, Express Scripts denied, without explanation, the request. *Id.* ¶ 56. On March 17, 2020, a formal appeal of Express Script's denial was submitted by Plaintiff's physician on Plaintiff's behalf. *Id.* ¶ 57. The denial of his appeal indicated that retail refills were permitted only where a member is able to obtain the drug for a lower cost than through the Express Scripts' pharmacy. *Id.* ¶ 58. InfuCare was prepared and able

to fill Plaintiff's medication for a lower cost than through Express Scripts' pharmacy. *Id.* ¶ 59.

Despite previously allowing Plaintiff to obtain his medication through InfuCare, Defendants took the position in March 2020 that Plaintiff could only fill his hemophilia prescriptions through Accredo. *Id.* ¶ 60. Accordingly, Plaintiff attempted to place his prescription order through Accredo, but he was told there would be a seven-day delay, again leaving Plaintiff without medication and at risk of a bleed. *Id.* ¶ 61. Plaintiff pleaded to Express Scripts who ultimately allowed Plaintiff to obtain his medication from InfuCare in March 2020 while his appeal was pending. *Id.* ¶ 62.

In April, Accredo contacted Plaintiff's doctor's office without his permission. *Id.* ¶ 63. Subsequently, Plaintiff reluctantly gave Accredo permission to obtain the prescription directly from his doctor. Notwithstanding, Accredo again informed Plaintiff there would be a seven to ten-day delay in obtaining the medication. Accordingly, Express Scripts permitted an override, and Plaintiff was allowed to fill his April 2020 prescription through InfuCare. *Id.* ¶¶ 63–65.

On April 15, 2020, Plaintiff again submitted an appeal to Express Scripts, requesting that InfuCare be permitted to fill his prescriptions for hemophilia medication at a lower cost than Accredo. *Id.* ¶ 66. His appeal was denied April 16, 2020, stating his plan benefit only allows retail refills in situations where a member can get the prescription at a lower cost than through the Express Scripts pharmacy. *Id.* ¶ 67. Defendants deny this, claiming that Plaintiff may only fill his prescriptions through Accredo per his Policy SPD. *Id.* ¶ 68. On May 6, 2020, Plaintiff submitted an

urgent appeal which was also denied. *Id.* ¶ 70. Additionally, in May 2020, Plaintiff learned Accredo violated his rights protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Policy's guarantee of confidentiality of protected health information ("PHI") by leaving his diagnosis and PHI on a voice mail message retrieved by an individual whom Plaintiff would not disclose his PHI. *Id.* ¶¶ 71, 72.

In June 2020, Plaintiff again sought an override to obtain his prescription medication from InfuCare and he was told he would no longer be permitted overrides. *Id.* ¶ 74. Thereafter, Accredo shipped Plaintiff only one week's worth of medication. *Id.* The medication was dosed in smaller increments requiring Plaintiff to inject multiple doses in order to get the full dosage. The increased number of required injections caused Plaintiff pain and greater health risks. *Id.* ¶¶ 74, 75. When Plaintiff contacted Accredo to obtain the remainder of the month's medication, the Accredo help desk employee advised him the prescription could not be filled in time and suggested Plaintiff switch medications. *Id.* ¶ 76. Plaintiff declined to discuss his medical situation with the help desk employee and requested an override to fulfill his prescription, which was declined. *Id.* ¶ 77.

Plaintiff asked Accredo what he should do in the event of a bleed and given that Accredo failed to provide enough medication. *Id.* He was told by Accredo to go to the emergency room. *Id.*

Plaintiff did suffer a bleed in June 2020 due to the shortage of medications provided by Accredo, which led to severe swelling of his knee, unbearable pain, an

inability to walk for seven days, and an inability to properly work, eat, or sleep. *Id.* ¶ 78. Had the co-Plan administrator provided him with the benefit of a dedicated Personal Health Support Nurse or allowed him to obtain medication from another network pharmacy, these occurrences would not have happened. *Id.* ¶¶ 80, 81. Express Scripts continuously denied Plaintiff's appeals despite InfuCare's willingness to charge less for the medication. *Id.* ¶ 82.

Pursuant to the Policy SPD, Plaintiff was entitled to Personal Health Care Support, which provides members with access to nurses to help guide participants living with chronic conditions, such as Plaintiff, through their treatment. *Id.* ¶ 85. The Policy SPD also provides for risk management services which includes access to medical specialists, medication information, and coordination of equipment and supplies. *Id.* ¶ 86. At no time did Express Scripts contact Plaintiff to determine if extra support services were needed. *Id.* ¶ 88. Plaintiff repeatedly requested such support, but these support services were never provided to him under the Policy SPD. *Id.* Plaintiff has been denied the receipt of "appropriate medical care" guaranteed under the Policy SPD because Accredo never connected him with knowledgeable representatives who were aware of hemophilia medication requirements, risk factors, and concerns. *Id.* ¶¶ 90–92. The Policy SPD also assured that prescriptions would be covered and timely filled by in-network pharmacies. *Id.* ¶ 93. Additionally, the Policy SPD provided for nondisclosure of PHI. *Id.*

Plaintiff alleges he has been denied benefits under the Plan and seeks to clarify his rights and future benefits under the Plan. *Id.* ¶ 96. He further alleges he has been discriminated against because of his disability, as he has been denied access to benefits, *i.e.*, covered hemophilia medications.

ERISA requires that fiduciaries not put their own interests above plan participants. *Id.* ¶ 102. Plaintiff alleges that Defendants put their own financial self-interests ahead of Plaintiff's interests through their continued discrimination and by requiring him to only use Accredo pharmacy to fill his hemophilia prescriptions. *Id.* ¶ 103.

Plaintiff sues Defendants in a five-count complaint alleging claims for wrongful denial of benefits under ERISA (Count I), breach of fiduciary duties under ERISA (Counts II and III), violations of Section 504 of the Rehabilitation Act (Count IV), and for declaratory judgment (Count V). The instant motions followed.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that

is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   DISCUSSION

Defendants primarily argue Plaintiff cannot prevail on his claims because he seeks to enforce benefits not provided for under the terms of the Plan. In response, Plaintiff contends Defendants conflate his cause of action for improper denial of benefits with his requested equitable remedy to receive the medication from a pharmacy capable of reliably fulfilling his prescriptions. For the reasons that follow, the Court will grant in part and deny in part Defendants' motions.

### A.   *Denial of Benefits – Count I*

In Count I, Plaintiff sues Defendants for improper denial of benefits in violation of 29 U.S.C. § 1132(a)(1)(B). Under 29 U.S.C. § 1132, a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). Defendants argue that Plaintiff claims entitlement to the benefit of filling specialty medications by a pharmacy other than Accredo, but such benefit is not available under the Plan. Defendants contend that the Plan only covers the cost of Specialty medications filled by Accredo. Plaintiff responds

that he has adequately alleged a claim for improper denial of benefits allowed under the Plan.

Defendants are correct that "a plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question." *Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, No. 10-81589-CIV, 2013 WL 149356, at *3 (S.D. Fla. Jan. 14, 2013) (quoting *Stewart v. Nat'l Educ. Assn.*, 404 F. Supp. 2d 122, 130 (D.D.C. 2005)). The failure to do so results in a failure to state a claim under ERISA. *Id.* at *6. However, Defendants oversimplify Plaintiff's allegations, and their reading of the Amended Complaint is too narrow.

Plaintiff alleges more than a desire to fill his hemophilia medication with a pharmacy other than Accredo. Plaintiff alleges he has been denied the benefit of receiving his hemophilia medication which is covered under the Plan. Taking Plaintiff's allegations as true, the Plan includes the benefit of receiving specialty medications, including medications to treat hemophilia. Notwithstanding the Plan's allowance for such specialty medication benefit, Plaintiff alleges that Defendants failed to provide this benefit, as Accredo—the Plan's exclusive specialty medication pharmacy—failed and refused to provide Plaintiff with his necessary medication. Plaintiff alleges Accredo failed to timely and accurately fill and deliver his life-saving medication. Accordingly, he claims he has been denied a benefit under the Plan, and he seeks to enforce his rights under the Plan. Plaintiff has adequately alleged the denial of a benefit to which he is entitled under the Plan, and thus, the motion to dismiss Count I is due to be denied.

11

Plaintiff alternatively asserts he is entitled to obtain his hemophilia medication from other pharmacies. In that regard, Plaintiff urges that it may be necessary for this Court to consider other manifestations of the parties' intent, including the fact that Express Scripts initially agreed to override the denial of his request for InfuCare to fill his prescription and its representation that Plaintiff could obtain his medication from other pharmacies provided it was obtained at a lower cost than Accredo. Defendants argue that none of the communications can override Plan terms. Indeed, this Court has recognized that because ERISA "specifically requires that plans be 'maintained' in writing," oral modifications of unambiguous plans are precluded. *Keys v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 420 F. Supp. 3d 1277, 1285 (M.D. Fla. 2019) (quoting *Wright v. Aetna Life Ins. Co.*, 110 F.3d 762, 764 (11th Cir. 1997)). However, while "[t]he words of [an ERSIA] plan may speak clearly, . . . they may also leave gaps. And so a court must often 'look outside the plan's written language' to decide what an agreement means." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) (citing *Cigna Corp. v. Amara*, 563 U.S. 421, 436 (2011)). The Court need not decide on the instant motions whether the Plan is ambiguous or contains a gap. The Court merely acknowledges that Plaintiff has alleged such. Accordingly, the motions to dismiss Count I are due to be denied.

B.     *Breach of Fiduciary Duty – Counts II and III*

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must first allege that the defendant was a fiduciary with respect to a plan. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005). Under ERISA, a defendant is a

"fiduciary" of a plan "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets...or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Plaintiff alleges that PWC, as Plan Sponsor, is a fiduciary under 29 U.S.C. § 1002(21)(A) because it exercises discretion over which pharmacy benefit manager to select for administration of pharmacy benefits. Doc. 27 ¶ 111. Regarding Express Scripts, Plaintiff alleges it is a fiduciary because it exercises discretionary authority with respect to the management of the prescription drug benefit of the Plan. *Id.* ¶ 112. Taking Plaintiff's allegations as true, he alleges that Defendants are fiduciaries with respect to the Plan.

1. Count II

Section 1104 provides that a fiduciary must discharge his duties with respect to a plan "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a). Plaintiff alleges that Defendants breached their fiduciary duties and requirement to act in accordance with the terms of the Plan, pursuant to 29 U.S.C. § 1004(a)(1)(D), by engaging in self-dealing and requiring plan participants such as Plaintiff to obtain medications solely from a pharmacy from which Defendants would profit, notwithstanding the pharmacy's failure to properly provide benefits.

Express Scripts and PWC argue that Count II fails because it is duplicative of Count I. Courts in this Circuit have recognized that "the statute does not limit the

number of ERISA provisions a plaintiff may sue under, nor does it prevent a plaintiff from suing for violations of multiple ERISA provisions when the conduct underlying those violations overlap." *Gamache v. Hogue*, 446 F. Supp. 3d 1315, 1327 (M.D. Ga. 2020).

Express Scripts and PWC next argue that because Plaintiff has failed to allege a breach in Count I, Count II's claim that the fiduciary failed to follow the Plan similarly fails. The Court found, above, that Count I states a cause of action for improper denial of benefits, and thus, Defendants' arguments are unavailing.

Express Scripts and PWC's third argument is premised on the principle that an employer owes no fiduciary duty under ERISA when it makes "plan design decisions." Doc. 39 at 17 (citing *Burns v. Rice*, 39 F. Supp. 2d 1350, 1355–56 (M.D. Fla. 1998), *aff'd* 210 F.3d 393 (11th Cir. 2000)). Here, Defendants assert that the decision to require participants to obtain specialty medications from Accredo is one of plan design, which is not a fiduciary function and therefore is nonactionable against these Defendants. Again, Defendants seek to narrowly frame Plaintiff's allegations as a dislike of the requirement that only Accredo be allowed to fill specialty medications. But, as stated above, Plaintiff's allegations go beyond Defendants' simplification. Plaintiff alleges the Defendants breached their fiduciary duties by putting their own interests before that of Plaintiff's, which alleges a violation of 29 U.S.C. § 1104(a)'s requirement that fiduciaries must discharge their duties "solely in the interest of the participants and beneficiaries." Count II states a claim against Defendants for breach of fiduciary duty.

14

2.    Count III

A party may sue a plan fiduciary, under ERISA, for failing to monitor other plan fiduciaries. *See* 29 U.S.C. 1105(a). To state a claim for breach of the duty to monitor, an ERISA plaintiff must allege "that an appointing fiduciary 'knew or should have known' of underlying breaches and that 'such knowledge should have triggered an investigation to determine whether [other] fiduciaries were administrating the Plan in accordance with ERISA and the terms of the Plan.'" *Gamache*, 446 F. Supp. 3d at 1328 (quoting *Perez v. Geopharma*, Inc., No. 2014 WL 3721369, at *4 (M.D. Fla. July 25, 2014)).

Here, Plaintiff's only allegations regarding a failure to monitor are directed to the conduct of Defendant PWC. Specifically, Plaintiff alleges that PWC, as Plan Sponsor, had the duty to monitor activities of its co-fiduciaries; PWC failed to prudently monitor the activities of Express Scripts; PWC knew of Express Scripts' breach of its duties and failed to remedy the breach; PWC's failure to remedy Express Scripts' breach constitutes a breach; and PWC's breach of its fiduciary duties caused Plaintiff's injuries.  *See* Doc. 27 ¶¶ 124–28. Plaintiff states a cause of action against PWC in Count III for failure to monitor other plan fiduciaries.

PWC responds that this claim is duplicative of Count I. Next PWC argues there must be an underlying breach of fiduciary duty. Finally, PWC states that even if Plaintiff alleged a breach of fiduciary duty, there are no factual allegations that PWC knew about the breach or knowingly concealed it. Doc. 40 at 18–20. PWC's arguments are unavailing. As noted above, a plaintiff is not precluded from pursuing multiple

15

claims under ERISA. Next, the Court has determined Plaintiff alleged a claim for breach of fiduciary duty. Finally, taking Plaintiff's allegations as true, he alleges that PWC knew about Express Scripts' breach because it knowingly participated and condoned the breach through its agreement with Express Scripts. Doc. 27 ¶¶ 123. Thus, PWC's motion is due to be denied as to Count III.

Although the heading of Count III indicates that it is against both PWC and Express Scripts, Plaintiff does not allege any conduct by Express Scripts for failing to monitor PWC or any other plan fiduciary. Accordingly, Express Scripts' motion to dismiss will be granted as to Count III.

C.    *Federal Disability Discrimination - Section 504 of the Rehabilitation Act – Count IV*

Section 504 of the Rehabilitation Act provides, "No otherwise qualified individual with a disability ... shall, *solely* by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794 (emphasis added). In order to state a claim under Section 504, a plaintiff must allege that he is an individual with a disability; that he was denied participation in a federally funded program because of his disability; and that he was otherwise qualified for participation in the program. *Atakpa v. Perimeter OB-GYN Assocs.*, P.C., 912 F. Supp. 1566, 1575–76 (N.D. Ga. 1994).

Defendants argue that Plaintiff fails to allege he was discriminated against solely because of his disability. "[T]he regulations interpreting the Rehabilitation Act . . . define 'disability' as (A) a physical or mental impairment that substantially limits one

16

or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (internal quotations marks and citations omitted). Courts are guided by the Equal Employment Opportunity Commission's regulations, which state that "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* (quoting 29 C.F.R. § 1630.2(i)). As a preliminary matter, it is unclear whether Plaintiff has alleged a disability as defined by the regulations. *See, e.g., Bridges v. City of Bossier*, 92 F.3d 329, 336 n.11 (5th Cir. 1996) ("hemophilia is not a disability *per se* under the ADA").[2]

However, even if his hemophilia can be considered as substantially limiting a major life activity, Plaintiff fails to allege that he was discriminated against solely because of it. Rather, Plaintiff's allegations suggest that financial renumeration, not an intention to discriminate, was the motivating factor for Defendants' mandate that Accredo be the exclusive supplier of specialty medications. Perhaps tellingly, Plaintiff's response does not address Defendants' arguments that he failed to allege the discrimination is due solely because of a disability. Plaintiff's allegations fall short of stating a claim under the Rehabilitation Act, and the claim is due to be dismissed.

Defendants also argue that Plaintiff's claim must fail because the Rehabilitation Act applies only to programs that receive federal assistance. As PWC is a "Big Four

---

[2] "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

Accounting Firm" and Express Scripts a "Fortune 500 Company," Defendants submit the Rehabilitation Act is inapplicable to them because Plaintiff does not allege Defendants received federal financial assistance. Doc. 39 at 20; Doc. 40 at 21. The fact that Defendants are large private companies is not an allegation contained in the Amended Complaint. Here, Plaintiff alleges that the Defendants are recipients of federal funds at all material times. Doc. 27 ¶ 132. At this stage of the proceedings, this may be sufficient to allege the applicability of the Rehabilitation Act to these Defendants. However, because the Court is dismissing this claim for other reasons and Plaintiff will be permitted the opportunity to amend, to the extent he attempts to reassert a claim under the Rehabilitation Act in an amended complaint, Plaintiff must allege facts to clearly demonstrate that the Rehabilitation Act applies to these Defendants.

D.     *Declaratory Judgment – Count V*

In Count V of the Amended Complaint, Plaintiff seeks a declaration as to his rights to obtain his prescription medication from another pharmacy at a cost lower than through Accredo in accordance with verbal and written representations from Express Scripts. Under § 1132(a)(1)(B), a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[T]hree distinct remedies" are available to a participant or beneficiary who initiates a section 1132(a)(1)(B) action: (1) the recovery of accrued benefits; (2) a declaratory judgment that he or she is entitled to

benefits under the provisions of the plan; and (3) an order enjoining the plan administrator from improperly refusing to pay future benefits. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).

PWC argues that because the claims in Counts I through IV fail, the claim for declaratory relief must necessarily fail, because there is no case or controversy. The Court has concluded above that at least some of Plaintiff's claims survive. Accordingly, this argument is unpersuasive.

Express Scripts argues that Plaintiff's declaratory judgment claim should be dismissed as duplicative of Count I. In support, Express Scripts cites *Publix Super Markets, Inc. v. Figareau*, No. 8:19-cv-545-JDW-AEP, wherein the district court found that even if the declaratory judgment was available in an ERISA action, the claim was duplicative and unnecessary. The *Publix* case is factually distinguishable for two reasons. First, the *Publix* plaintiff was the fiduciary, not a plan participant, and even that court noted "Congress did not intend ERISA fiduciaries to use declaratory judgment actions to determine the benefit rights of participants/beneficiaries." *Id.* at *5 (quoting *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987)). The Eleventh Circuit in *Gulf Life* specifically observed, "Congress stated in section 1132(a)(1) that a participant or beneficiary could bring a civil suit not only to recover benefits, but also to clarify his rights to future benefits under the plan. Obviously, this section expressly acknowledges the right of participants/beneficiaries to seek a declaratory judgment; just as obviously, fiduciaries are omitted as parties that can bring such an action regarding benefits." *Gulf Life Ins.*, 809 F.2d at 1524 (internal

citations and quotations marks omitted). Second, Plaintiff argues the claim in Count V is not duplicative of his claim in Count I as Defendants argue that the Court is prohibited in Count I from considering documents outside the ERISA Plan and he is relying on verbal and written representations from Express Scripts to support his claim for declaratory relief. Although there is some overlap between the claims in Counts I and V, it is not clear that they are entirely duplicative of one another and, at this stage in the litigation, the Court will exercise its discretion to allow both claims to move forward. *See Turco v. Ironshore Ins.*, 2:18-cv-634-SPC-MRM, 2018 WL 6181348, at *2 (M.D. Fla. Nov. 27, 2018).

Plaintiff has alleged that an actual, present controversy exists between him and Defendants regarding his rights to obtain his prescription medications. Taking Plaintiff's allegations as true, he has stated a claim in Count V for a declaratory judgment. Accordingly, it is

**ORDERED**:

1.      Defendant Express Scripts, Inc.'s Rule 12(b)(6) Motion to Dismiss (Doc. 39), is **GRANTED, in part**, to the extent that Counts III and IV of Plaintiff's Amended Complaint are **DISMISSED** as to Express Scripts. In all other respects, Express Scripts' Motion to Dismiss (Doc. 39) is **DENIED**.

2.      Defendant PricewaterhouseCoopers LLP's Motion to Dismiss Amended Complaint (Doc. 40) is **GRANTED, in part**, to the extent that Count IV of Plaintiff's

Amended Complaint is **DISMISSED** against PWC. In all other respects, PWC's Motion to Dismiss (Doc. 40) is **DENIED**.

3.      Plaintiff is granted leave to file a Second Amended Complaint within **fourteen (14) days** from the date of this Order. Failure to file a Second Amended Complaint within the time provided will result in this action proceeding on the claims in the Amended Complaint that have not been dismissed.

4.      If no Second Amended Complaint is timely filed, Defendants shall file and serve their answers to the Amended Complaint by **October 8, 2021**. In that circumstance, Defendant Express Scripts shall answer Counts I, II, and V. PWC shall answer Counts I, II, III, and V.

**DONE AND ORDERED** in Tampa, Florida on September 17, 2021.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

21